## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HON. CLAIRE R. KELLY, *JUDGE*

SPIRIT AEROSYSTEMS, INC.,       )
                              )
                Plaintiff,     )
v.                             )
                              )
UNITED STATES; DEPARTMENT OF   )  Court No.  20-00094
HOMELAND SECURITY; UNITED     )
STATES CUSTOMS AND BORDER     )
PROTECTION; MARK A. MORGAN,   )
IN HIS OFFICIAL CAPACITY AS      )
ACTING COMMISSIONER, UNITED   )
STATES CUSTOMS AND BORDER     )
PROTECTION,                     )
                Defendants.   )

## JUDGMENT ORDER

Having considered Plaintiff's motion for summary judgment, Defendants' response, and all other papers and proceedings in this action, and after due deliberation, it is hereby:

**ORDERED** that Plaintiff's motion for summary judgment be and hereby is granted; and it is further

**ORDERED** that the responsible United States Customs and Border Protection officials shall correct its ACE Drawback Module to allow for substitution unused merchandise drawback claims where the imported and exported merchandise are classifiable under HTSUS statistical reporting number 8803.30.0030; shall approve Plaintiff's Drawback Claim No. AA6 03265726; and shall refund the excess duties collected on the subject merchandise to the Plaintiff, with lawful interest.

 

                                   _____
                                        **JUDGE**

DATED: _____
      New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HON. CLAIRE R. KELLY, *JUDGE*

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC.,        ) | |
|        Plaintiff,   ) | |
| v.         ) | |
|        ) | Court No.  20-00094 |
| UNITED STATES; DEPARTMENT OF  ) | |
| HOMELAND SECURITY; UNITED    ) | |
| STATES CUSTOMS AND BORDER    ) | |
| PROTECTION; MARK A. MORGAN,   ) | |
| IN HIS OFFICIAL CAPACITY AS     ) | |
| ACTING COMMISSIONER, UNITED   ) | |
| STATES CUSTOMS AND BORDER    ) | |
| PROTECTION,         ) | |
|      Defendants.   ) | |

## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to U.S. Court of International Trade Rules 7(g) and 56(a), Plaintiff, Spirit

AeroSystems, Inc., through its undersigned attorneys, respectfully moves for summary judgment

in its favor. A judicial decision on this motion would dispose of this case on its merits.

Plaintiff believes there is no genuine issue of material fact in this case and that summary

judgment is appropriate. Plaintiff submits the attached Memorandum of Law and Statement of

Material Facts Not in Issue in support of this motion.

Respectfully submitted:

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Spirit AeroSystems, Inc.
320 S. Canal Street
Suite 3300
Chicago, IL 60606
Telephone (312) 569-1000

By:   /s/ Wm. Randolph Rucker

Dated: March 24, 2023          Wm. Randolph Rucker

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HON. CLAIRE R. KELLY, *JUDGE*

| | | |
|---|---|---|
| SPIRIT AEROSYSTEMS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES; DEPARTMENT OF | ) | Court No.  20-00094 |
| HOMELAND SECURITY; UNITED | ) | |
| STATES CUSTOMS AND BORDER | ) | |
| PROTECTION; MARK A. MORGAN, | ) | |
| IN HIS OFFICIAL CAPACITY AS | ) | |
| ACTING COMMISSIONER, UNITED | ) | |
| STATES CUSTOMS AND BORDER | ) | |
| PROTECTION, | ) | |
| Defendants. | ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN ISSUE

In accordance with Rule 56.3 of the Rules of the United States Court of International Trade,

Plaintiff, Spirit AeroSystems, Inc. ("Spirit"), identifies the following material facts for which it

contends there are no genuine issues to be tried.

## STATEMENT OF FACTS

1.      This case concerns U.S. Customs and Border Protection's ("CBP") decision under

Section 1515 of the *Tariff Act of 1930* (19 U.S.C. § 1515) to deny Spirit's protest of CBP's

rejection of Plaintiff's substitution unused merchandise drawback claim. ECF No. 6, Pl.'s Compl.

("Compl.") at ¶ 47; ECF No. 19, Def.'s Answer ("Answer") at ¶ 47.)

### A.      Unused Merchandise Drawback

2.      The U.S. Government allows exporters to claim a refund of duties and fees paid on

merchandise imported into the United States when certain conditions are met (*e.g.*, merchandise is

exported or destroyed). 19 U.S.C. § 1313. This refund is known as "drawback." 19 C.F.R. § 190.2

(stating that drawback is "the refund, in whole or in part, of the duties, taxes, and/or fees paid on

imported merchandise, which were imposed under Federal law upon entry or importation …");
*see also Modernized Drawback*, 83 FR 37886 (Aug. 2, 2018); *Modernized Drawback*, 83 FR
64942 (Dec. 18, 2018).

3.     Historically, drawback has been available for imported merchandise that was not
used in the United States and was exported or destroyed within a certain time (unused merchandise
drawback). *Modernized Drawback*, 83 Fed. Reg. 37,886, 37,887 (Aug. 2, 2018) (referencing the
*Tariff Act of 1789*). The purpose of drawback is to help U.S. companies compete globally and to
encourage manufacturing and exporting in the U.S., as well as domestic production. S. Rep 114-
45, Senate Finance Committee Report on Trade Facilitation and Trade Enforcement Act of 2015,
pg. 12.

4.     In certain circumstances, other merchandise may be substituted for the imported
merchandise subject to an unused merchandise drawback claim. 19 U.S.C. § 1313(j)(2).

5.     The *Trade Facilitation and Trade Enforcement Act of 2015* ("TFTEA") expanded
the availability of unused merchandise drawback. Pub. L. 114–125, 130 Stat. 122 (2016) (codified,
in relevant part, at 19 U.S.C. § 1313); *Modernized Drawback*, 83 Fed. Reg. 64942, 64959 (Dec.
18, 2018) ("CBP agrees that Congress has supported substitution drawback. In fact, the . . . statute
expand[s] the availability of substitution for drawback claims.").

6.     TFTEA "liberalize[d] the merchandise substitution standard, simplifie[d]
recordkeeping requirements, extend[ed] and standardiz[ed] timelines for filing drawback claims,
and require[d] the electronic filing of drawback claims." *Id.* at 64942; 19 U.S.C. § 1313; Exhibit
1, Def.'s Resp. to Pl.'s Am. Interr. ("Exhibit 1") at pgs. 27-28; Exhibit 2, Transcript of 30(b)(6)
Deposition of Sarita Singh (hereinafter "Singh Dep. Tr.") at 65:9-66:18.

7.     Prior to TFTEA, exporters could only claim substitution unused merchandise drawback on merchandise that was "commercially interchangeable" with the imported merchandise. *See* 19 U.S.C. § 1313(j)(2)(b) (2015).

8.     TFTEA replaced the commercial interchangeability standard with a standard for substitution claims that is based, generally, on the *Harmonized Tariff Schedule of the United States* ("HTSUS") 8-digit subheading number of the imported merchandise and the substituted merchandise. 19 U.S.C. § 1313(j)(b) (stating that unused merchandise drawback is allowed for "other merchandise" that is "classifiable under the same 8-digit HTS subheading number as such imported merchandise"); Exhibit 1 at pg. 25 ("The procedures to claim drawback on substituted unused merchandise are detailed in 19 U.S.C. § 1313(j)(2)").

9.     Eligibility under the new standard for substitution unused merchandise drawback is limited by 19 U.S.C. § 1313(j)(5)(A), which provides:

> (5)(A) For purposes of paragraph (2) and except as provided in subparagraph (B), merchandise may not be substituted for imported merchandise for drawback purposes based on the 8-digit HTS subheading number if the article description for the 8-digit HTS subheading number under which the imported merchandise is classified begins with the term "other".

*See also* Exhibit 1 at pg. 26.

10.     The only exception to the substitution limitation under 19 U.S.C. § 1313(j)(5)(A) is the following:

> (B) In cases described in subparagraph (A), merchandise may be substituted for imported merchandise for drawback purposes if—(i) the other merchandise and such imported merchandise are classifiable under the same 10-digit HTS statistical reporting number; and (ii) the article description for that 10-digit HTS statistical reporting number does not begin with the term "other".

19 U.S.C. § 1313(j)(5)(B); Exhibit 1 at pg. 26.

**B.**   **Implementation of CBP's Modernized Drawback Regulations for Substitution Unused Merchandise Drawback**

11.      CBP issued regulations to implement TFTEA at 19 CFR Part 190 – Modernized Drawback. *Modernized Drawback*, 83 Fed. Reg. 64942 (Dec. 18, 2018); 19 C.F.R. § 190.0 *et. seq.*

12.      In the *Federal Register* Notice implementing the final Modernized Drawback regulations, CBP acknowledged that TFTEA "expanded the availability of substitution for drawback claims" as follows:

> [CBP] agrees that Congress has supported substitution drawback. In fact, the rule and statute expand the availability of substitution for drawback claims . . . This practice continues under TFTEA, which also allows for substitution unused merchandise drawback claims when the imported and substituted merchandise are classifiable under the same 8-digit (or, in some cases, 10-digit) HTSUS subheading number, as provided for in 19 U.S.C. 1313(j)(2) and (5).

*Modernized Drawback*, 83 Fed. Reg. 64942, 64959 (Dec. 18, 2018).

13.      The Modernized Drawback regulations also confirm, in accordance with 19 U.S.C. § 1313(j)(5)(A), that substitution unused merchandise drawback is limited when the article description for the 8-digit HTSUS subheading "begins with the term 'other'", stating:

> Substituted merchandise or articles means merchandise or articles that may be substituted as follows:
>
> ***
>
> For unused merchandise drawback pursuant to section 1313(j)(2), substituted merchandise must be classifiable under the same 8-digit HTSUS subheading number as the designated imported merchandise except for wine which may also qualify pursuant to § 190.32(d), **but when the 8-digit HTSUS subheading number under which the imported merchandise is classified begins with the term "other," then the other merchandise may be substituted for imported merchandise for drawback purposes if the other merchandise and such imported merchandise are classifiable under the same 10-digit HTSUS statistical reporting number and the article description for that 10-digit HTSUS statistical reporting number does not begin with the term "other";** …

4

19 C.F.R. § 190.2 (2023) (emphasis added); Exhibit 1 at pgs. 26-27.

14.     The definitions for various terms used within the Modernized Drawback regulations appear in Section 190.2, but the terms "article description" and "begins with" are not defined in these regulations. *See* 19 C.F.R. § 190.2.

15.     The terms "article description" and "begins with" are not defined in TFTEA. Pub. L. 114–125, 130 Stat. 122 (2016) (codified, in relevant part, at 19 U.S.C. § 1313); Exhibit 1 at pg. 26; *see also* Exhibit 2, Singh Dep. Tr. 52:10-53:19 (acknowledging that the respective meaning of the terms "article description" and "begins with" is the same in the U.S.C. § 1313 and the Modernized Drawback regulations).

16.     "The term 'article description' refers to the descriptive language accompanying a tariff number in the HTSUS column titled 'Article Description.'" Exhibit 1 at pg. 11.

**C.    CBP's ACE Drawback Module**

17.     To implement the limitations on substitution unused merchandise drawback eligibility imposed by 19 U.S.C. § 1313(j)(5)(A), CBP added programming to its Automated Commercial Environment ("ACE") system, which is the exclusive method by which exporters may file a drawback claim. *See* CBP, Drawback in ACE (https://www.cbp.gov/trade/automated/news/drawback) (last visited Mar. 22, 2023); Exhibit 1 at pg. 27 (stating that 19 U.S.C. § 1313(j)(2), 19 C.F.R. § 190.2, 19 C.F.R. § 190.32, and 83 Fed. Reg. 37,886 (Aug. 2, 2018) form "the basis for the programming of the ACE drawback module.").

18.     The ACE Drawback Module electronically validates drawback claims and will automatically reject the claim if a data element does not match its programming. Exhibit 1 at pgs. 17-20.

19.     The limitation on substitution unused merchandise drawback eligibility imposed by 19 U.S.C. § 1313(j)(5)(A) is programmed with a specific "Error Code"—*i.e.*, "Error Code F519"— to reject any unused merchandise drawback claim for merchandise that is classified under certain "basket provisions." *Id.* (citing "Ace Drawback Error Dictionary" (Sept. 21, 2020) (https://www.cbp.gov/document/guidance/ace-drawback-error-dictionary) (last visited Mar. 22, 2023).

20.     When a substitution unused merchandise drawback claim is rejected on the basis of Error Code F519, ACE generates the following error message: "HTS NBR NOT ALLOWED UNDER BASKET PROVISION." *Id.*; *see also* Ace Drawback Error Dictionary" (Sept. 21, 2020) (https://www.cbp.gov/document/guidance/ace-drawback-error-dictionary) (last visited Mar. 22, 2023) (noting that Error Code F519 provides the following troubleshooting message: "[F]or basket provisions, description of 8-digit and 10-digit HTS used on the claim cannot start with 'Other.'").

21.     CBP programmed the ACE Drawback Module so that it automatically rejects any substitution unused merchandise drawback claim when, in the *Harmonized Tariff Schedule of the United States* ("HTSUS"), the term "other" appears as the first word in the article description column on the same line as the 8-digit subheading number and the term "other" appears as the first word in the article description column on the same line as the 10-digit statistical reporting number. Exhibit 1 at pgs. 11-12, 17-20.

22.     The ACE Drawback Module is not programmed to recognize article description language that is not on the same line as the 8-digit subheading number or the 10-digit statistical reporting number.  Exhibit 1 at pgs. 11-12.

**D.    Plaintiff's Unused Merchandise Drawback Claim**

23.    Spirit imports and exports a variety of aircraft parts, as its core business is to design and manufacture aerostructures for commercial airplanes, defense platforms, and business/regional jets. ECF No. 18, Am. Summons; Exhibit 3, Drawback Claim No. AA6 03265726 ("Exhibit 3"); Spirit Website (https://www.spiritaero.com/company/overview/overview/) (last visited Mar. 10, 2023).

24.    On January 29, 2018, Spirit imported aircraft parts classifiable under HTSUS statistical reporting number 8803.30.0030, which provides for "*Parts of goods of heading 8801 or 8802: Other parts of airplanes or helicopters: For use in civil aircraft: Other*" (the "Subject Merchandise"). ECF No. 18, Am. Summons; Compl. at ¶ 9; Answer at ¶ 9.)

25.    Spirit paid the applicable duties and fees when the Subject Merchandise was imported into the United States.  Compl. at ¶ 10; Answer at ¶ 10.)

26.    On January 29, 2020, Spirit filed a substitution unused merchandise drawback claim for the Subject Merchandise in ACE. *See* Exhibit 3.

27.    On January 29, 2020, CBP's ACE Drawback Module rejected Plaintiff's Drawback Claim No. AA6 03265726 as a result of Error Code F519. Compl. at ¶ 16; Answer at ¶ 16; Exhibit 1 at pgs. 20-21.

28.    CBP'S ACE Drawback Module is programmed to identify HTSUS 8-digit subheading 8803.30.00 as beginning with the term "other." Exhibit 1 at pgs. 20-21.

29.    CBP'S ACE Drawback Module is also programmed to recognize that the article description for HTSUS 10-digit statistical reporting number 8803.30.0030 begins with the term "other". Exhibit 1 at pgs. 20-21 ("For all purposes, the article description for HTSUS subheading 8803.30.00 is 'Other parts of airplanes or helicopters,' and thus begins with the word 'Other.'").

7

### E. Scope of Ten-Digit Statistical Reporting Number 8803.30.0030

30.     CBP considers all of the article description language in the "article description" column of the HTSUS to determine tariff classification. *Id.* at 94:24-95:8, 110:9-18, 136:22-25.

31.     The "For use in civil aircraft:" article description language must be considered for statistical purposes when classifying goods under SRN 8803.30.0030. *Id.* at 126:14-127:6.

32.     Merchandise classified under HTSUS 10-digit statistical reporting number 8803.30.0030 must be aircraft parts that are "[f]or use in civil aircraft." Exhibit 2, Singh Dep Tr. 30:19-31:10, 102:5-19.

### F. CBP's Interpretation of the Article Description for Ten-Digit Statistical Reporting Number 8803.30.0030

33.     "Goods that are classifiable in HTSUS subheading 8803.30.00 and constitute parts '[f]or use in civil aircraft' are classifiable in SRN 8803.30.0030 if they are not '[f]or use by the Department of Defense or the United States Coast Guard.'" Exhibit 1 at pgs. 4-5.

34.     CBP acknowledges that "For use in civil aircraft:" is part of the article description column for HTSUS heading 8803. *Id.* at 72:22-73:12, 87:2-88:5, 98:21-99:11.

35.     CBP does not recognize the phrase "For use in civil aircraft:" to be part of the article description for HTSUS 10-digit statistical reporting number 8803.30.0030. *Id.* at 21:2-8, 30:19-31:10 (stating the phrase "for use in civil aircraft" is "not on the 10-digit line" because "it's an article description of the 9-digit"); *see also id.* at 102:20-103:10 (acknowledging that the 'article description" is the same for both drawback and tariff classification purposes).

36.     According to CBP, the "article description" for an 8-digit subheading or 10-digit statistical reporting number only appears on the "same line" as or "next to" an "8- or 10-digit tariff number." Exhibit 1 at pgs. 11-12; Exhibit 2, Singh Dep. Tr. 83:11-85:13; *see also id.* at 24:2-10,

39:22-41:8, 85:10-11 (discussing the use of a "ruler" to determine if the 8-or 10-digit tariff number is on the "same line" or "next to" the article description).

37.    CBP interprets the article description for HTSUS 10-digit statistical reporting number 8803.30.0030 to be "Other." Exhibit 1 at pgs. 5-6.

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Spirit AeroSystems, Inc.
320 S. Canal Street
Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

By:    /s/ Wm. Randolph Rucker

Dated: March 24, 2023                    Wm. Randolph Rucker

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, *JUDGE***

| | | |
|---|---|---|
| SPIRIT AEROSYSTEMS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES; DEPARTMENT OF | ) | Court No.  20-00094 |
| HOMELAND SECURITY; UNITED | ) | |
| STATES CUSTOMS AND BORDER | ) | |
| PROTECTION; MARK A. MORGAN, | ) | |
| IN HIS OFFICIAL CAPACITY AS | ) | |
| ACTING COMMISSIONER, UNITED | ) | |
| STATES CUSTOMS AND BORDER | ) | |
| PROTECTION, | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

By:      /s/ Wm. Randolph Rucker

Wm. Randolph Rucker

Dated: March 24, 2023

**FAEGRE DRINKER BIDDLE & REATH LLP**

Attorneys for Plaintiff
Spirit AeroSystems, Inc.
191 N. Wacker Drive
Suite 3700
Chicago, IL 60606
Telephone (312) 569-1000

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ISSUE PRESENTED ....................................................................................................... 2

SUMMARY OF ARGUMENT ........................................................................................ 2

STATEMENT OF FACTS ............................................................................................... 3

      A.    Background on Spirit ...................................................................... 3

      B.    Unused Merchandise Drawback ................................................... 3

      C.    TFTEA's Expansion of Unused Merchandise Drawback ........... 3

            1.    TFTEA Background ........................................................... 3

            2.    TFTEA Implementation ..................................................... 4

      D.    Plaintiff's Unused Merchandise Drawback Claim ...................... 6

APPLICABLE LEGAL STANDARDS OF REVIEW ..................................................... 7

      A.    Summary Judgment Is Appropriate in this Case ......................... 7

      B.    CBP's Interpretation of the Drawback Statute Is Not Entitled to a Presumption of Correctness or Deference ................................ 8

      C.    CBP's Interpretation of the Article Description of HTSUS Statistical Reporting Numbers Is Not Entitled to a Presumption of Correctness or Deference ........................................................ 9

ARGUMENT .................................................................................................................. 10

    I.    THE CANONS OF STATUTORY CONSTRUCTION GUIDE THE PROPER INTERPRETATION OF THE DRAWBACK STATUTE ............... 11

      A.    The Drawback Statute and the HTSUS Must Be Read *In Para Materia* ........................................................................................ 12

            1.    The Structure of the HTSUS ............................................ 13

      B.    The "Article Description" for SRN 8803.30.00 "Begins With" the Phrase "For Use in Civil Aircraft:" ...................................... 18

1.      Plaintiff's Interpretation of the Term "Begins With" Is
        Consistent with the Structure of the HTSUS ............................ 18

2.      Plaintiff's Interpretation of the Term "Begins With" Is in
        Accordance with the "Scope of Subparts" and
        "Punctuation" Canons............................................................. 25

3.      Plaintiff's Interpretation Is Consistent with Legislative
        Intent ...................................................................................... 29

II.     CBP HAS MISINTERPRETED THE SRN 8803.30.0030 LANGUAGE ......... 31

A.      CBP's Interpretation of the Drawback Statute Violates the Rule
        Against Surplusage.............................................................. 33

B.      CBP's Interpretation Leads to an Absurd Result that Is Inconsistent
        with the Statutory Context................................................... 37

C.      CBP's Interpretation Is Inconsistent With Prior Agency Decisions ....... 40

D.      CBP's Interpretation Draws an Erroneous Interpretative
        Distinction Between Legal and Non-Legal Text and Is Not Entitled
        to Deference....................................................................... 41

CONCLUSION.................................................................... 44

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

65 C.C.P.A. 90, 582 F.2d 622 (Cust. & Pat.App.1978) ........................................... 27

575 F.3d 1376 (Fed. Cir. 2009) ....................................................................... 23

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................ 7

*Barnhart v. Sigmon Coal Co.*,
   534 U.S. 438 (2002) ................................................................................ 8

*BASF Corp. v. United States*,
   482 F.3d 1324 (Fed. Cir. 2007) .............................................................. 14

*Blakley Corp. v. United States*,
   22 CIT 635, 15 F.Supp.2d 865 (1998) ...................................................... 8

*Bruckmann v. United States*,
   78 Cust.Ct. 155, 435 F.Supp. 1219 (1977) .............................................. 27

*Butler v. United States*,
   442 F.Supp.2d 1311 (Ct. Int'l Trade 2006) ............................................. 36

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................ 7

*Christensen v. Harris Cnty.*,
   529 U.S. 576 (2000) .............................................................................. 10

*Dart Exp. Corp. v. United States*,
   1956 WL 8339, 43 C.C.P.A. 64 (1956) .................................................... 33

*Davis v. Mich. Dept. of Treasury*,
   489 U.S. 803 (1989) .............................................................................. 12

*Diamond Tools Tech. LLC v. United States*,
   609 F.Supp. 1378 (Ct. Int'l Trade 2022) .................................................. 8

*Dong-A Steel Co. v. United States*,
   475 F.Supp.3d 1317 (Ct. Int'l Trade 2020) ............................................. 26

*Dupuch-Carron v. Sec'y of Health & Hum. Servs.*,
   969 F.3d 1318 (Fed. Cir. 2020) .............................................................. 37

*E.M. Chems. v. United States,*
    923 F. Supp. 202 (Ct. Int'l Trade 1996)..........................................................28

*Erlenbaugh v. United States,*
    409 U.S. 239 (1972)........................................................................................12

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000)................................................................................. 12, 33

*Ford Motor Co. v. United States,*
    926 F.3d 741 (Fed. Cir. 2019) .......................................................................41

*Former Emps. of Elec. Data Sys. Corp. v. U.S. Sec'y of Labor,*
    408 F.Supp.2d 1338 (Ct. Int'l Trade 2005)....................................................9

*Former Emps. of Murray Eng'g, Inc. v. Chao,*
    346 F.Supp.2d 1279 (Ct. Int'l Trade 2000)....................................................9

*Gazelle v. Shulkin,*
    868 F.3d 1006 (Fed. Cir. 2017) .....................................................................43

*Gen. Dynamics Land Sys. v. Cline,*
    540 U.S. 581 (2004)..........................................................................................8

*Genesco, Inc. v. United States,*
    102 F.Supp.2d 478 (Ct. Int'l Trade 2000) ............................................. 10, 43

*Goodman Mfg. L.P. v. United States,*
    69 F.3d 505 (Fed. Cir. 1995)...........................................................................8

*Gustafson v. Alloyd Co.,*
    513 U.S. 561, (1995)......................................................................................12

*Haggar Co. v. Helvering,*
    308 U.S. 389 (1940)......................................................................................37

*Hercules Inc. v. United States,*
    24 F.3d 188 (Fed. Cir. 1994).........................................................................13

*Lary v. Trinity Physician Fin. & Ins. Servs.,*
    780 F.3d 1101 (11th Cir. 2015) .....................................................................26

*Linquist v. Bowen,*
    813 F.2d 884 (8th Cir. 1987).........................................................................12

*Luggage and Leather Goods Mfrs. of Am., Inc. v. United States,*
    588 F.Supp. 1413 (Ct. of Int'l Trade 1984) ..................................................31

*Lynteq, Inc. v. United States,*

976 F.2d 693 (Fed. Cir. 1992) ........................................................................ 7, 11

*Marathon Oil Co. v. United States*,
93 F.Supp.2d 1277 (Ct. Int'l Trade 2000) ............................................... 8, 11, 18

*Marcel Watch Co. v. U.S.*,
11 F.3d 1054 (Fed. Cir. 1993) ................................................................... 15, 23

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371, 133 S.Ct. 1166 (2013) ................................................................. 33

*Merit Mgt. Grp., LP v. FTI Consulting, Inc.*,
⸺ U.S. ⸺, 138 S. Ct. 883 (2018) ................................................................ 13

*Michael Simon Design, Inc. v. United States*,
452 F.Supp.2d 1316 (Ct. Int'l Trade 2006) ....................................................... 11

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
559 U.S. 229 (2010) .......................................................................................... 37

*Motorola, Inc. v. United States*,
462 F.Supp.2d 1367 (Ct. Int'l Trade 2006) ....................................................... 33

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
414 U.S. 453 (1974) ..................................................................................... 12, 43

*Nielson v. Preap*,
139 S.Ct. 954 (2019) ......................................................................................... 34

*NLRB v. Lion Oil Co.*,
352 U.S. 282 (1957) .......................................................................................... 29

*Norfolk and W. Ry. Co. v. United States*,
869 F.Supp. 974 (Ct. Int'l Trade 1994) ............................................................ 29

*Otter Prods., LLC v. United States*,
834 F.3d 1369 (2016) ........................................................................................ 13

*Pillowtex Corp. v. United States*,
171 F.3d 1370 (Fed. Cir. 1999) .................................................................... 20-22

*Quaker Pet Grp., LLC v. United States*,
287 F. Supp. 3d. 1348 (2018) ........................................................................... 34

*Schlumberger Tech. Corp. v. United States*,
91 F.Supp.3d 1304 (Ct. Int'l Trade 2015) ................................................... 10, 29

*Schlumberger Tech. Corp. v. United States*,
845 F.3d 1158 (Fed. Cir. 2017) .................................................................... 14-15

*Shotz v. City of Plantation, Fla.*,
   344 F.3d 1161 (11th Cir. 2003) ..................................................... 31

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1994) ....................................................................... 9

*Solvay Fluorides, Inc. v. United States*,
   86 F.Supp.2d 1353 (Ct. Int'l Trade 2000) .............................. 15-16

*Amcor Flexibles Singen Gmbh v. United States*,
   425 F.Supp.3d 1287 (Ct. Int'l Trade 2020) ................................. 34

*Spirit AeroSystems, Inc. v. United States*,
   468 F.Supp.3d 1349 (Ct. Int'l Trade 2020) ................................... 1

*Strategic Hous. Fin. Corp. of Travis Cnty. v. United States*,
   608 F.3d 1317 (Fed. Cir. 2010) .................................................... 12

*Texas State Comm'n for the Blind v. United States*,
   796 F.2d 400 (Fed. Cir. 1986) ...................................................... 36

*Transpacific Steel LLC v. United States*,
   4 F.4th 1306 (Fed. Cir. 2021) ....................................................... 13

*U.S. Dept. of Def.*,
   2012 WL 12892788 (N.D. AL. Dec. 19, 2012) ............................. 10

*United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*,
   508 U.S. 439 (1993) ...................................................................... 26

*United States v. Ernest E. Marks Co.*,
   29 C.C.P.A. 77 (U.S.C.C.P.A. 1941) ............................................ 27

*United States v. Freeman*,
   44 U.S. 556 (1845) ........................................................................ 12

*United States v. Invicta Seeland, Inc.*,
   25 C.C.P.A. 300 (1938) ................................................................ 29

*United States v. Mead*,
   533 U.S. 218 (2001) ........................................................................ 9

*United States v. Menasche*,
   348 U.S. 528 (1955) ...................................................................... 36

*United States v. Trent*,
   654 F.3d 574 (6th Cir. 2011) ........................................................ 27

*United States v. UPS Customhouse Brokerage*,

558 F. Supp. 2d 1331 (Ct. Int'l Trade 2008)...........................................................15, 27-28

*Wilton Indus., Inc. v. United States,*
   741 F.3d 1263 (Fed. Cir. 2013) ...............................................................................13-14

*Windmoeller & Hoelscher Corp. v. United States,*
   31 C.I.T. 1780 (Ct. Int'l Trade 2007)...............................................................................7

**Statutes**

19 U.S.C. 1313(j)(2) and (5) ...............................................................................4, 5-6

19 U.S.C. § 2293 ...........................................................................................................19

19 U.S.C. § 1202 (HTSUS).....................................................................................2, 12

19 U.S.C. § 1313 ...................................................................................................*passim*

19 U.S.C. § 1313(j)...........................................................................................1-2, 7

19 U.S.C. § 1313(j)(1) and (2)..........................................................................................3

19 U.S.C. § 1313(j)(2) ...........................................................................................*passim*

19 U.S.C. § 1313(j)(2) & (5)(A).....................................................................................11

19 U.S.C. § 1313(j)(5)(A)......................................................................................*passim*

19 U.S.C. § 1313(j)(5)(B) .....................................................................................*passim*

19 U.S.C. § 1313(j)(b)......................................................................................................3

19 U.S.C. § 1313(z)(2)............................................................................................11, 13

19 U.S.C. § 1484(f) ............................................................................................10, 42-43

19 U.S.C. § 1515 ...............................................................................................................1

19 U.S.C. § 2272(a) ..........................................................................................................9

19 U.S.C. § 3004(c)(1) (2012)........................................................................................41

19 U.S.C. ¶¶ 1202-1683g................................................................................................13

28 U.S.C. § 1581(a)...........................................................................................................1

28 U.S.C. § 2639(a)(1)......................................................................................................8

Pub. L. 114–125, 130 Stat. 122 (2016) .................................................................2, 5, 3

Pub. Law 104-295 ......................................................................................... 39

U.S.C. § 1313 ................................................................................................. 5

§ 1313(j)(5)............................................................................................ 4, 43-44

**Rules**

Rule 56.3 of the Rules of the United States Court of International Trade...................... 1

U.S. Court of International Trade Rules 7(g) and 56(a) .................................... 2

United States Court of International Trade Rule 56(c)........................................ 7

USCIT Rules 56 and 81 .............................................................................. 1

**Regulations**

19 C.F.R. § 4.7(c)(3)(ii) ........................................................................... 36

19 C.F.R. § 141.90(b) .............................................................................. 36

19 C.F.R. § 177.1(d)(1)(1999)................................................................... 9

19 C.F.R. § 190.0 ..................................................................................... 4

19 C.F.R. § 190.2 .................................................................................. 1, 5

19 C.F.R. § 190.32 ................................................................................... 5

19 C.F.R. § 190.51(a)(3) .......................................................................... 36

19 CFR Part 190...................................................................................... 4

*Modernized Drawback,*
   83 FR 37886 (Aug. 2, 2018)..........................................................2-3, 5

*Modernized Drawback,*
   83 FR 64942 (Dec. 18, 2018) .................................................... 2, 4-5, 39

**Other Authorities**

2B Sutherland Statutory Construction § 51:3 (7th ed.)...................................... 13

S. Rep 114-45 ........................................................................................ 3

HQ H307063 (Mar. 10, 2020)................................................................... 42

HRL 963663 (Jul. 30, 2001)..................................................................... 41

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, *JUDGE*

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC.,        ) | |
|            Plaintiff,    ) | |
| v.                  ) | |
| UNITED STATES; DEPARTMENT OF    ) | Court No. 20-00094 |
| HOMELAND SECURITY; UNITED    ) | |
| STATES CUSTOMS AND BORDER    ) | |
| PROTECTION; MARK A. MORGAN,    ) | |
| IN HIS OFFICIAL CAPACITY AS    ) | |
| ACTING COMMISSIONER, UNITED    ) | |
| STATES CUSTOMS AND BORDER    ) | |
| PROTECTION,                ) | |
|            Defendants.    ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case concerns U.S. Customs and Border Protection's ("CBP") decision under Section

1515 of the *Tariff Act of 1930* (19 U.S.C. § 1515) denying Plaintiff, Spirit AeroSystems, Inc.'s

("Spirit"), protest against the denial of a claim for substitution unused merchandise drawback on

imported parts for civil aircraft. Pl.'s Statement of Material Facts Not in Issue (hereafter, "SMF")

at ¶ 1. The U.S. Court of International Trade has jurisdiction over this action pursuant to 28 U.S.C.

§ 1581(a). *See also Spirit AeroSystems, Inc. v. United States*, 468 F.Supp.3d 1349, 1352-55 (Ct.

Int'l Trade 2020).

There are no issues of disputed material facts to be resolved by trial and, therefore,

disposition by summary judgment is appropriate. For the reasons discussed below, Spirit

respectfully requests that this Court (1) declare that merchandise classifiable under 10-digit

statistical reporting number ("SRN") 8803.30.0030 of the *Harmonized Tariff Schedule of the*

*United States* ("HTSUS") is eligible for substitution unused merchandise drawback under 19

1

U.S.C. § 1313(j); (2) order CBP to correct its ACE Drawback Module to allow for substitution unused merchandise drawback claims where the imported and exported merchandise are classifiable under HTSUS SRN 8803.30.0030; and (3) order CBP to approve Spirit's Drawback Claim No. AA6 03265726 and refund excess duties paid, with interest as provided by law.

## ISSUE PRESENTED

Whether merchandise classified under HTSUS SRN 8803.30.0030 is eligible for substitution unused merchandise drawback pursuant to 19 U.S.C. § 1313(j).

## SUMMARY OF ARGUMENT

Based on the factual and legal considerations discussed herein, Plaintiff asserts that parts of civil aircraft properly classified under HTSUS SRN 8803.30.0030 are eligible for substitution unused merchandise drawback pursuant to 19 U.S.C. § 1313(j).

Substitution unused merchandise drawback can be claimed if both the imported and exported merchandise are classifiable under the same 8-digit HTSUS subheading and the "article description" does not "begin with" the term "other". 19 U.S.C. § 1313(j). In such case, drawback can be claimed if both the imported and exported merchandise are classified "under the same 10-digit HTS statistical reporting number[,]" so long as "the article description for that 10-digit HTS statistical reporting number does not begin with the term 'other.'" 19 U.S.C. § 1313(j)(5)(B).

When employing fundamental canons of statutory construction, Spirit's position—namely, that the "article description" for goods classified under SRN 8803.30.0030 "begins with" the phrase "For use in civil aircraft:"—is fully consistent with the common and popular meaning of the relevant language used, legislative intent, and the overall statutory scheme of the *Tariff Act of 1930*, which 19 U.S.C. § 1313 (Drawback Statute) and 19 U.S.C. § 1202 (HTSUS) are a part of.

## STATEMENT OF FACTS

### A.    Background on Spirit

Spirit, headquartered in Wichita, Kansas, is one of the world's largest non-OEM designers and manufacturers of aerostructures for commercial and defense aircraft. Spirit Website (https://www.spiritaero.com/company/overview/overview/) (last visited Mar. 10, 2023).

### B.    Unused Merchandise Drawback

Implemented under the first Tariff Act of the United States in 1789, drawback is "the refund of certain duties, internal revenue taxes and certain fees collected upon the importation of goods and refunded when the merchandise is exported or destroyed." CBP Website (https://www.cbp.gov/trade/programs-administration/entry-summary/drawback-overview) (last visited March 10, 2023); SMF at ¶ 3. The purpose of drawback is to help U.S. companies compete globally and to encourage manufacturing and exporting in the U.S., as well as domestic production. SMF at ¶ 4.

There are three main categories of drawback: (1) manufacturing drawback; (2) rejected merchandise drawback; and (3) unused merchandise drawback. *Modernized Drawback*, 83 Fed. Reg. 37,886, 37,887 (Aug. 2, 2018). Unused merchandise drawback—the category of drawback at issue in this case—may be claimed on "imported merchandise that was exported or destroyed without having been used within the United States (direct identification unused merchandise drawback), as well as on goods that were exported or destroyed without being used that were substituted for imported merchandise meeting the appropriate criteria (substitution unused merchandise drawback)." *Id.* (citing 19 U.S.C. § 1313(j)(1) and (2)).

### C.    TFTEA's Expansion of Unused Merchandise Drawback

#### 1.    TFTEA Background

The *Trade Facilitation and Trade Enforcement Act of 2015* ("TFTEA") (Pub. L. 114–125,

130 Stat. 122, Feb. 24, 2016) expanded the availability of unused merchandise drawback and made other, significant changes to the laws governing drawback. SMF at ¶ 5. Prior to TFTEA, exporters could only claim drawback on unused substitute merchandise that was "commercially interchangeable" with the imported merchandise. *Id.* at ¶ 7. However, TFTEA replaced the commercial interchangeability standard with a tariff classification-based standard for substitution claims. *Id.* at ¶ 8.

Under TFTEA, drawback can be claimed if both the imported and the exported merchandise are classified within the same HTSUS 8-digit subheading. *Id.*; 19 U.S.C. § 1313(j)(2). However, eligibility under this new standard is limited by § 1313(j)(5), which states: "merchandise may not be substituted for imported merchandise for drawback purposes based on the 8-digit HTS subheading number if the article description for the 8-digit HTS subheading number under which the imported merchandise is classified begins with the term 'other'". SMF at ¶ 9; 19 U.S.C. § 1313(j)(5)(A). The only exception to the limitation under § 1313(j)(5)(A) is the following:

> (B) In cases described in subparagraph (A), merchandise may be substituted for imported merchandise for drawback purposes if—(i) the other merchandise and such imported merchandise are classifiable under the same 10-digit HTS statistical reporting number; and (ii) the article description for that 10-digit HTS statistical reporting number does not begin with the term "other".

SMF at ¶ 10; 19 U.S.C. § 1313(j)(5)(B).

## 2.   TFTEA Implementation

In the *Federal Register* Notice implementing the final regulations for Modernized Drawback, CBP acknowledged that TFTEA "expand[s] the availability of substitution for drawback claims" by allowing for "substitution unused merchandise drawback claims when the imported and substituted merchandise are classifiable under the same 8-digit (or, in some cases,

10-digit) HTSUS subheading number, as provided for in 19 U.S.C. 1313(j)(2) and (5)." SMF at ¶ 12; 83 Fed. Reg. 64942.

The regulations also confirm, in accordance with § 1313(j)(5)(A), that substitution unused merchandise drawback is limited in cases where the 8-digit HTSUS subheading and the 10-digit HTSUS statistical reporting number "begins with the term 'other'":

> Substituted merchandise or articles means merchandise or articles that may be substituted as follows:
>
>                       ***
>
> For unused merchandise drawback pursuant to section 1313(j)(2), substituted merchandise must be classifiable under the same 8-digit HTSUS subheading number as the designated imported merchandise . . . but when the 8-digit HTSUS subheading number under which the imported merchandise is classified begins with the term "other," then the other merchandise may be substituted for imported merchandise for drawback purposes if the other merchandise and such imported merchandise are classifiable under the same 10-digit HTSUS statistical reporting number and the article description for that 10-digit HTSUS statistical reporting number does not begin with the term "other"[.]

SMF at ¶ 13; 19 C.F.R. § 190.2 (2022).

CBP's Automated Commercial Environment ("ACE") system is the exclusive method for exporters to file a drawback claim. SMF at ¶ 17. The ACE Drawback Module electronically validates drawback claims and will automatically reject the claim if a data element does not match its programming. *Id.* at ¶ 18.

To implement the limitations on drawback eligibility imposed by § 1313(j)(5)(A), CBP programmed a specific "Error Code" in ACE—*i.e.*, "Error Code F519"—to reject any unused merchandise drawback claim for merchandise that is classified under certain "basket provisions." *Id.* at ¶¶ 17 & 19. When a substitution unused merchandise drawback claim is rejected on the basis of Error Code F519, ACE generates the following error message: "HTS NBR NOT ALLOWED

UNDER BASKET PROVISION." *Id.* at ¶ 20

CBP programmed the ACE Drawback Module so that it automatically rejects a substitution unused merchandise drawback claim for certain 10-digit statistical reporting numbers ("SRN"). *Id.* at ¶ 21; *see also* <u>Exhibit 4</u> (list of 10-digit SRNs subject to automated claim rejection). Where the term "other" appears on the same line next to an 8-digit subheading in the HTSUS, CBP considers the article description to begin with "other". SMF at ¶ 21. Similarly, where the term "other" appears on the same line next to a 10-digit SRN in the HTSUS, CBP considers the article description to begin with "other". *Id.* Per CBP's implementation, a 10-digit SRN is ineligible for substitution unused merchandise drawback when the term "other" appears "next to" its corresponding 8-digit subheading and "next to" the 10-digit SRN in the HTSUS, even if there may be additional article description language in between the 8-digit subheading and the 10-digit SRN. *Id.* Any such additional article description language is ignored. *Id.* at ¶ 22. Thus, in such a case, if the first word of the article description on the "same line" as the 10-digit SRN is "other", the ACE Drawback Module is programmed to automatically reject the claim. *Id.* at ¶¶ 17-22.

### D. **Plaintiff's Unused Merchandise Drawback Claim**

Spirit was the importer of the civil aircraft parts at issue in this action (the "Subject Merchandise"). *Id.* at ¶ 24. Spirit classified the Subject Merchandise under SRN 8803.30.0030 of the HTSUS, which provides for "*Parts of goods of heading 8801 or 8802: Other parts of airplanes or helicopters: For use in civil aircraft: Other.*" *Id.*  Spirit paid applicable duties and fees when the Subject Merchandise was imported into the United States. *Id.* at ¶ 25.

On January 29, 2020, Spirit filed a substitution unused merchandise drawback claim for the Subject Merchandise in ACE. *Id.* at ¶ 26. That same day, CBP's ACE Drawback Module rejected Plaintiff's Drawback Claim No. AA6 03265726 as a result of Error Code F519. *Id.* at ¶ 27. Specifically, CBP's ACE system interprets 10-digit HTSUS SRN 8803.30.0030 to begin with the

term "other" and does not recognize the preceding modifying phrase "For use in civil aircraft." *Id.* at ¶¶ 28-29.

CBP admits that, unlike merchandise properly classified under HTSUS SRN 8803.30.0060, merchandise classified under SRNs 8803.30.0015 or 8803.30.0030 is distinguishable in that it must be "[f]or use in civil aircraft." Exhibit 2, Singh Dep. Tr. 30:19-31:10; SMF at ¶ 35. Nevertheless, according to CBP, the phrase "For use in civil aircraft:" is not relevant to Spirit's substitution unused merchandise drawback claim because "[i]t's not on the 10-digit line." Exhibit 2, Singh Dep. Tr. 21:2-8; SMF at ¶ 36. Instead, CBP claims the phrase "For use in civil aircraft:" is considered a "9-digit" tariff classification provision. Exhibit 2, Singh Dep. Tr. 30:19-31:10; SMF at ¶ 36. Accordingly, CBP has taken the position that, for purposes of substitution unused merchandise drawback under 19 U.S.C. § 1313(j), the "article description" of SRN 8803.30.0030 "begins with" the term "other". SMF at ¶ 37.

## APPLICABLE LEGAL STANDARDS OF REVIEW

### A. Summary Judgment Is Appropriate in this Case

Pursuant to United States Court of International Trade Rule 56(c), "summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact…." USCIT R. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In this case, summary judgment is appropriate because material facts are not in dispute. Instead, the sole issue presented is the proper interpretation of 19 U.S.C. § 1313(j), which is a matter of law to be determined *de novo* by the Court. *Windmoeller & Hoelscher Corp. v. United States*, 31 C.I.T. 1780, 1786 (Ct. Int'l Trade 2007) (citing *Lynteq, Inc. v. United States*, 976 F.2d 693, 696 (Fed. Cir. 1992)

**B.**   **CBP's Interpretation of the Drawback Statute Is Not Entitled to a Presumption of Correctness or Deference**

The issue before the Court—whether the terms "article description" and "begins with", as these terms are used in 19 U.S.C. § 1313(j)(5)(B), favor the meaning attributed by CBP or by Spirit—is one of statutory construction, and is thus reviewed *de novo. Marathon Oil Co. v. United States*, 93 F.Supp.2d 1277, 1279 (Ct. Int'l Trade 2000) (finding that CBP's interpretation of the term "receive", as used in the 19 U.S.C. § 1313, is a question of statutory interpretation that is reviewed *de novo*).

Although there is a statutory presumption of correctness for CBP decisions under 28 U.S.C. § 2639(a)(1), "when the Court is presented with a question of law in a proper motion for summary judgment, that presumption is not relevant." *Id.* (citing *Blakley Corp. v. United States*, 22 CIT 635, 15 F.Supp.2d 865, 869 (1998) (citation omitted) (finding that the Court owed no deference to the CBP rulings at issue); *see also Goodman Mfg. L.P. v. United States*, 69 F.3d 505, 508 (Fed. Cir. 1995) ("Because there was no factual dispute between the parties, the presumption of correctness is not relevant.").

Moreover, judicial deference to an agency's statutory interpretation is applicable "only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 600 (2004); *see also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002) ("In the context of an unambiguous statute, we need not contemplate deferring to the agency's interpretation."); *Diamond Tools Tech. LLC v. United States*, 609 F.Supp. 1378, 1389 (Ct. Int'l Trade 2022) (finding that *Chevron* deference does not apply because the statute at issue was unambiguous). As explained below, because the terms "article description" and "begins with"—as these terms are used in 19 U.S.C. § 1313(j)(5)(B)— can be plainly and unambiguously interpreted from the devices of judicial construction, judicial

deference is not applicable here.

Even if, *arguendo*, the relevant terms of § 1313(j)(5)(B) were considered to be "ambiguous" following the Court's application of the proper devices of judicial construction (which they are not), this Court has repeatedly affirmed that even in the case of "Customs' own interpretations of the HTSUS," such interpretations "are not granted *Chevron* deference, at least when embodied in the form of letter rulings." *Former Emps. of Murray Eng'g, Inc. v. Chao*, 346 F.Supp.2d 1279, 1283 (Ct. Int'l Trade 2000) (citing *United States v. Mead*, 533 U.S. 218, at 221 (2001) ("Customs rulings do not carry the force of law and are not, like regulations, intended to clarify the rights and obligations of importers beyond the specific case under review. Instead, a ruling merely interprets and applies Customs law to 'a specific set of facts.'" (quoting 19 C.F.R. § 177.1(d)(1)(1999))). In this case, CBP's decision to deny Spirit's drawback claim is akin to a ruling applying Customs law to a specific set of facts. Thus, at most, judicial deference in these hypothetical circumstances would only be in proportion to CBP's "power to persuade." *See United States v. Mead Corp.*, 533 U.S. 218, 235 (2001); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1994); *see also Former Emps. of Elec. Data Sys. Corp. v. U.S. Sec'y of Labor*, 408 F.Supp.2d 1338, 1342-48 (Ct. Int'l Trade 2005) (finding that the agency's interpretation of the term "articles" in the *Trade Adjustment Assistance* (TAA) statute, 19 U.S.C. § 2272(a), via its interpretation of the HTSUS, is unpersuasive, and is thus not entitled to *Skidmore* deference). For all the reasons described below, CBP's erroneous interpretation of the unambiguous terms of the Drawback Statute (19 U.S.C. § 1313) is barely defensible—let alone persuasive.

## C.    CBP's Interpretation of the Article Description of HTSUS Statistical Reporting Numbers Is Not Entitled to a Presumption of Correctness or Deference

Finally, as noted above and explained further below, this case concerns the proper interpretation of the Drawback Statute and the HTSUS. This is an issue of statutory construction.

However, even if, *arguendo*, CBP were to claim that this case (1) turns on CBP's interpretation of the HTSUS SRNs (which it does not); and that (2) deference is appropriate here because CBP—which, collectively with the U.S. Census Bureau and the International Trade Commission ("ITC")—is charged with establishing the SRNs, per 19 U.S.C. § 1484(f), it is critical to note that non-statutory texts are, at most, "entitled to respect," but only to the extent that they are persuasive. *Genesco, Inc. v. United States*, 102 F.Supp.2d 478, 482–84 (Ct. Int'l Trade 2000) (noting that the Supreme Court, in *Christensen v. Harris Cnty.*, 529 U.S. 576 (2000) had "reject[ed] *Chevron* deference for policy statements, interpretive rules, agency manuals, and enforcement guidelines lacking the force of law."). Further, since CBP is not exclusively charged with administering the SRNs, deference to its interpretation of the SRN 8803.30.0030 article description language is not warranted. *See Agility Def. and Gov. Servs., Inc. v. U.S. Dept. of Def.*, 2012 WL 12892788, at *6 (N.D. AL. Dec. 19, 2012) (refusing to grant deference to DoD's interpretation of the Federal Acquisition Regulations ("FAR") because they are "prepared, issued, maintained, and prescribed jointly by multiple agencies.").[1]

## **ARGUMENT**

The Drawback Statute allows for the refund of customs duties paid on imported merchandise in certain circumstances. 19 U.S.C. § 1313. Following passage of TFTEA, substitution unused merchandise drawback can be claimed if both the imported and exported merchandise are classifiable under the same 8-digit HTSUS subheading and the "article description" does not "begin with" the term "other". 19 U.S.C. § 1313(j)(2) & (5)(A). If the 8-digit

---

[1]    Similarly, an analysis by the ITC is not binding on the Court even though the agency may be considered "an authoritative source with responsibilities pertaining to tariff matters." *See Schlumberger Tech. Corp. v. United States*, 91 F.Supp.3d 1304, 1316 n.15 (Ct. Int'l Trade 2015).

HTSUS subheading begins with "other", drawback can be claimed if both the imported and exported merchandise are classified "under the same 10-digit HTS statistical reporting number[,]" so long as "the article description for that 10-digit HTS statistical reporting number does not begin with the term 'other.'" 19 U.S.C. § 1313(j)(5)(B).

To understand and apply this provision of the Drawback Statute, we must understand the meaning of the terms "article description", "begins with", "the 8-digit HTS subheading number", and the "10-digit HTS statistical reporting number."[2]

## I.    THE CANONS OF STATUTORY CONSTRUCTION GUIDE THE PROPER INTERPRETATION OF THE DRAWBACK STATUTE

The term "HTS" in the Drawback Statute refers to the HTSUS. 19 U.S.C. § 1313(z)(2).[3] It is well-established that the meaning of the HTSUS may be assisted by the canons of statutory construction. *Michael Simon Design, Inc. v. United States*, 452 F.Supp.2d 1316, 1322 (Ct. Int'l Trade 2006).[4] This Court has also employed traditional tools of statutory construction when interpreting terms in the Drawback Statute. *Marathon Oil*, 93 F.Supp.2d at 1280 (interpreting the meaning of the term "receipt" in 19 U.S.C. § 1313).

In the absence of contrary legislative intent, "[t]ariff terms contained in the statutory language 'are to be construed in accordance with their common and popular meaning[.]" *Lynteq*,

---

[2]    Based on our review of the legislative history for TFTEA (including, but not limited to, committee reports and the *Congressional Record*), Congress provided no further guidance on the meaning of these terms as used in the TFTEA.

[3]    CBP agrees that the phrase "article description" has the same meaning in the HTSUS and the Drawback Statute. Exhibit 2, Singh Dep. Tr. 52:10-53:19.

[4]    CBP also applies the canons of construction to the HTSUS. Exhibit 2, Singh Dep. Tr. 18:23-19:24.

976 F.2d at 697 (citation omitted). Terms in the Drawback Statute should be interpreted similarly.[5]

Moreover, "[i]t is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989)). "A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme.'" *Id.* (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, (1995)).

As explained below, when employing these fundamental canons of statutory construction, allowing substitution unused merchandise drawback under 19 U.S.C. § 1313(j)(2) for goods classified under SRN 8803.30.0030 is consistent with the common and popular meaning of the relevant language used, legislative intent, and the overall statutory scheme of the *Tariff Act of 1930*, which 19 U.S.C. § 1313 (Drawback Statute) and 19 U.S.C. § 1202 (HTSUS) are both a part.

A.    **The Drawback Statute and the HTSUS Must Be Read *In Para Materia***

As a fundamental proposition, "when a court interprets multiple statutes dealing with a related subject or object, the statutes are *in pari materia* and must be considered together." *Linquist v. Bowen*, 813 F.2d 884, 888-89 (8th Cir. 1987) (citing *United States v. Freeman*, 44 U.S. 556, 564–65 (1845) and N. Singer, 2A Sutherland Statutory Construction § 51.01–.03 (C. Sands 4th ed. 1984)). Therefore, this Court should interpret statutes with similar language that generally address the same subject matter together, "'as if they were one law.'" *Strategic Hous. Fin. Corp. of Travis Cnty. v. United States*, 608 F.3d 1317, 1330 (Fed. Cir. 2010) (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972) (citation omitted).

---

[5]    The master rule of statutory construction of tariff acts, as of other statutes, is to interpret them so as to carry out legislative intent. *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974).

There is no question that the Drawback Statute and the HTSUS are part of the same statutory scheme: the *Tariff Act of 1930*, 19 U.S.C. ¶¶ 1202-1683g. Based on the context of the Drawback Statute and the express language used, the terms "article description", "8-digit HTS subheading number", and the "10-digit HTS statistical reporting number" are clearly in reference to the HTSUS. *See* § 1313(z)(2). Accordingly, these separate provisions of the *Tariff Act of 1930* must be "construed and interpreted together and in light of each other to ascertain the true legislative intent." *Hercules Inc. v. United States*, 24 F.3d 188, 204 (Fed. Cir. 1994) ("[P]arts of a statute *in pari materia* must be construed together.") (citation omitted). The *in pari materia* canon is not limited to the interpretation of statutory language and will also apply between statutes and other government actions. 2B Sutherland Statutory Construction § 51:3 (7th ed.) (stating that a statutory provision may be *in pari materia* with a rule of civil procedure or executive order). Therefore, the principle will apply between the Drawback Statute and both the legal and non-legal (statistical) text of the HTSUS.

Since these statutes must be read together, to determine the meaning of the relevant terms of the Drawback Statute, we must consider the broader statutory structure of the HTSUS, as well as the article description language of HTSUS tariff provisions at issue (*i.e.*, 8-digit subheading 8803.30.00 and 10-digit SRN 8803.30.0030) and the specific context in which this language is used. *See Transpacific Steel LLC v. United States*, 4 F.4th 1306, 1322 (Fed. Cir. 2021) (citing *Merit Mgt. Grp., LP v. FTI Consulting, Inc.*, ––– U.S. –––, 138 S. Ct. 883, 892–93 (2018)).

      1.   The Structure of the HTSUS

The HTSUS governs the tariff classification of imported goods and consists of a hierarchical structure that separates goods by headings and subheadings. *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013); *Otter Prods., LLC v. United States*, 834 F.3d 1369, 1375 (2016); *see also BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007)

("The HTSUS is a hierarchical classification system which requires application of the most specific descriptive category in determining the applicable duty."). "[T]he headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Wilton Indus.*, 741 F.3d at 1266. "The first four digits of an HTSUS provision constitute the heading, whereas the remaining digits reflect subheadings." *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1163 n.4 (Fed. Cir. 2017). The term "headings" refers to "the article descriptions and tariff provisions appearing in the schedule at the first **hierarchical** level." HTSUS (2023) General Note 3(h)(vi) (emphasis added). The term "subheading" refers to "any article description or tariff provision indented thereunder [a heading]."[6] *Id*; *see also* HTSUS (2023) Preface to 35th Edition at n.5 ("A 'heading' is a provision whose article description is not indented, while a 'subheading' (6- or 8- digit) has an indented and subordinate description covering a subset of the heading's product scope.").

Moreover, the HTSUS presents the tariff provisions in a tabular format with columns that contain the headings, subheadings, statistical annotations, article descriptions, units of quantity and rates of duty. *What Every member of the Trade Community Should Know About: Tariff Classification (May 2004)* (hereinafter, "Tariff Classification ICP" at pgs. 33-34 (https://www.cbp.gov/sites/default/files/documents/icp017r2_3.pdf) (last visited Mar. 24, 2023). "The first column is entitled "Headings/Subheadings" and "contains the 4-digit, 6-digit and 8-digit numbers assigned to the class of goods described in the third column (i.e., article descriptions)." *Id.* The second column of the HTSUS is entitled "Stat. Suffix" and stands for "Statistical Suffix."

---

[6]      Nothing in this definition indicates that a subheading's article description is limited to the language "next to" or "on the same line" as the subheading number in column 1 of the HTSUS.

HTSUS (2023) Preface to 35th Edition. Some tariff-rate lines are annotated to permit the collection of trade data on narrower classes of merchandise. Tariff Classification ICP at pgs. 33-34. Adding the two Stat. Suffix digits to the 8-digit subheading number results in the 10-digit "statistical-reporting number." *Id*; *see* <u>Exhibit 5</u>, Preface to 33rd Edition of HTS at ITC0047 ("Statistical annotations contained in the HTS are used to gather trade data on specific classes of merchandise that are subsets of those indicated in legal provisions. . . . Merchandise must be covered by the superior … legal provision of the HTS in order to be reported under any 10-digit [SRN].").

Finally, the third column of the HTSUS is entitled "Article Description", wherein there are "detailed descriptions of goods falling under each heading, subheading, and statistical-reporting number." Tariff Classification ICP at 34. All language in this "Article Description" column is an article description for a 4-digit heading, 6- or 8-digit subheading, 10-digit SRN, or a part thereof. *See United States v. UPS Customhouse Brokerage*, 558 F. Supp. 2d 1331, 1347 (Ct. Int'l Trade 2008) ("Specific characteristics or qualities of merchandise are described under the tariff schedule label 'article description.'").

The series of headings and subheadings in the HTSUS must be read "in logical sequence." *Solvay Fluorides, Inc. v. United States*, 86 F.Supp.2d 1353, 1356 (Ct. Int'l Trade 2000). Only article description language at the same level of indentation may be compared to each other. HTSUS GRI 6 (stating that "only subheadings at the same level are comparable"); *see also Marcel Watch Co. v. U.S.*, 11 F.3d 1054, 1058-59 (Fed. Cir. 1993) ("[C]omparisons are to be made only between provisions of coordinate or equal status, i.e., between primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading.") (citation and internal quotation marks omitted). This logical analysis continues through all levels of the HTSUS. *See Solvay*, 86 F.Supp.2d at 1356.

Since the article description language of the HTSUS is distinguished by indentation, the hierarchical approach means that a product must first meet the lesser-indented article description language before it may be classified within a further-indented article description.[7] *See* HTSUS Preface (2023) at pg. 6 ("Merchandise must be described by the superior 4-, 6-, and/or 8-digit legal provision of the HTS in order to be reported under any 10-digit statistical reporting number").[8] Based on this structure, indentation will signify the beginning of the next hierarchical level—*i.e.*, 4-digit heading to 6-digit subheading to 8-digit subheading to 10-digit SRN.

There may be numerous article descriptions within a particular HTSUS heading, so care must be taken to determine which part of the HTSUS (*i.e.*, heading, subheading or SRN) the article description language belongs to. Since the HTSUS language operates as a tabular hierarchy based on indentation, there is no requirement that article description language be on the same line as a particular tariff number to be part of the "article description" for that subheading or SRN. Instead, depending on the relevant article descriptions and indentations, the language next to a particular tariff number in the first or second columns of the HTSUS is likely showing what the article description for that subheading or SRN **ends with**.

The General Statistical Notes of the HTSUS supports this interpretation, stating:

Note 2 - Statistical Annotations. (a) The statistical annotations to the Harmonized Tariff Schedule of the United States consist of-- (i) **the 2-digit statistical suffixes and _any_ article description_s_ applicable thereto**, (ii) the indicated units of quantity, and (iii) the statistical notes and annexes. (b) The legal text of the Harmonized Tariff Schedule of the Unites States consists of the remaining text as

---

[7] *See* Exhibit 5, Preface to 33rd Edition of HTS at ITC0040-41 (discussing hierarchical system of HTS and "top-down" classification approach; directing comparison of same level of indentation "until legal classification is possible;" and indicating that indented language is a "subset" of language above.

[8] These even-numbered HTSUS provisions (*i.e.*, 4-, 6-, 8-, or 10-digit ) are the only references to the numerical "types" of tariff provisions in the HTSUS. There is no reference to any odd-digit provisions in the HTSUS.

more specifically identified in the general rules of interpretation.

2020 HTSUS (emphasis added). The use of the words "any" and plural "descriptions" to describe the statistical annotations indicates that there may be multiple article descriptions applicable to a particular statistical suffix. Indeed, CBP readily admits that the article description or term "for use in civil aircraft" is relevant in determining whether a good is classified under SRN 8803.30.0030. Exhibit 1, Def.'s Resp. to Pl.'s Am. Interr. ("Exhibit 1") at pgs. 4-5; Exhibit 2, Singh Dep. Tr. 121:7-123:4.

Based on the structure of the HTSUS, it is evident that indented language in the article description column may signify the beginning or end of an article description for a particular subheading or SRN.

Applying the guidance above, it is clear that the article description for HTSUS 8-digit subheading 8803.30.00 provides for "*Other parts of airplanes or helicopters.*" When properly interpreted, the article description for HTSUS subheading 8803.30.00 begins with the term "other" and ends with the word "helicopters." Beneath HTSUS 8-digit subheading 8803.30.00. there are three SRNs (15, 30, 60) found in the Stat. Suffix column. The statistical language for these SRNs is indicated below:[9]



---

[9]     *See* Exhibit 6, ITC's Resp. to Dep. By Written Questions at pg. 15 (acknowledging that "For use in civil aircraft" is "relevant to finding the product coverage of the cited statistical reporting number.").

As explained further below, a proper collective reading of the Drawback Statute and the HTSUS statistical language shows that the article description for SRN 8803.30.00**30** "begins with" the phrase "For use in civil aircraft:" and ends with the word "Other".

**B.     The "Article Description" for SRN 8803.30.00 "Begins With" the Phrase "For Use in Civil Aircraft:"**

Since the article description for HTSUS 8-digit subheading 8803.30.00 begins with the term "other," the next step for substitution unused merchandise drawback purposes is to determine what the "article description" for the SRNs under HTSUS 8-digit subheading 8803.30.00 "begins with." There is no guidance on what is meant by the phrase "begins with" in the Drawback Statute, and unlike "article description," this term does not appear in the HTSUS.

1.     Plaintiff's Interpretation of the Term "Begins With" Is Consistent with the Structure of the HTSUS

When a statutory term is not defined, it should be interpreted based on its plain and ordinary meaning. *Marathon Oil*, 93 F.Supp.2d at 1281. The common meaning of the phrase "begins with" is "the first thing to be considered." Cambridge Dictionary (2023) (defining "to begin with" as "the start of a process, event, or situation.") (https://dictionary.cambridge.org/dictionary/english/to-begin-with) (last visited Mar. 13, 2023; *see also* Merriam-Webster Dictionary (defining "begin" as to "set about the activity of: START") (https://www.merriam-webster.com/dictionary/to%20begin%20with) (last visited Mar. 24, 2023).

Based on the definitions above, there is nothing to suggest that "begins with", in the context of the HTSUS, can be interpreted to mean that review is limited to language located directly next to a number on the same line (as can be shown by placing a ruler). *See* Exhibit 2, Singh Dep. Tr. 24:2-10, 39:22-41:8, 85:10-11 ("The question you asked was how do I know 'other' . . . and I said I can show you with a ruler to show it's on that line."). As explained above, the structure of the HTSUS does not indicate that the article description for an 8-digit subheading or 10-digit SRN

must begin on the same line as a specific number in column 1 or column 2 of the HTSUS.[10] Instead, the structure of the HTSUS indicates that the article description language next to or on the same line as number in column 1 or column 2 of the HTSUS may be the end of that article description.[11]

There is no prohibition against reading the article description language in the third column of the HTSUS together as directed by the structure of the HTSUS. In fact, HTSUS column 3 article description language is always considered cumulatively to determine whether a product falls within a particular tariff provision. *See* Exhibit 5, Preface to 33rd Edition of HTS at ITC0040-41. Consider, for example, CBP's description of the 8-digit subheading under heading HTSUS 6702 in Headquarters Ruling Letter ("HRL") 086148 (Jan. 3, 1991) (reviewing Congress' intent when enacting changes to HTSUS 8-digit subheading 6702.90.40 in Section 479C by way of the *Customs and Trade Act of 1990*). In this ruling, CBP stated that "Subheading 6702.90, HTSUSA, is further broken down into articles of feathers in subheading 6702.90.10, HTSUSA, or articles of other materials in either subheading 6702.90.40 or 6702.90.60, HTSUSA." As shown below, the "other" language that CBP includes in the article description for 8-digit subheadings 6702.90.40

---

[10] We did not find another Federal statute that included the phrase "begins with" to reference a specific position. Instead, in the lone additional example found in U.S.C. Title 19, this phrase indicates a starting point similar to the use in 19 U.S.C. § 1313. *See, e.g.*, 19 U.S.C. § 2293 ("A trade readjustment allowance under paragraph (1) shall not be paid for any week occurring after the close of the 104-week period that <u>begins with</u> the first week following the week in which the adversely affected worker was most recently totally separated from adversely affected employment[.]") (emphasis added).

[11] In several instances, CBP has acknowledged that the TFTEA language "begins with" is referencing a starting point. *See, e.g.*, Exhibit 7, Mar. 12, 2018 E-mail from Emily Simon ("In some cases, there should be a 10-point match (when the 8-digit provision **starts** with 'other' and the 10-digit provision **starts** with anything except 'other'") (emphasis added)); Exhibit 8, Drawback Error Dictionary ("[F]or basket provisions, description of 8-digit and 10-digit HTS used on the claim cannot start with 'Other.'").

and 6702.90.60 is located above the numbers in columns 1 and 2, but was applied equally by CBP to both article descriptions. [12]

```
6702             Artificial flowers, foliage and fruit and parts
                 thereof; articles made of artificial flowers,
                 foliage or fruit:
6702.10              Of plastics:
6702.10.20  00 2         Assembled by binding with flexible
                         materials such as wire, paper, textile
                         materials, or foil, or by gluing or by
                         similar methods....................... X.......  8.4%          Free (A,E,IL)        60%
                                                                                        5.8% (CA)
6702.10.40  00 8         Other, including parts................ X.......  3.4%          Free (A,E,IL)        80%
                                                                                        2.3% (CA)
6702.90          Of other materials:
6702.90.10  00 7         Of feathers........................... X.......  4.7%          Free (A,E*,IL)       60%
                                                                                        3.2% (CA)
                 Other:
6702.90.40  01 0         Of man-made fibers.................... X.......  9%            Free (A)             71.5%
                                                                                        2.7% (IL)
                                                                                        6.3% (CA)
6702.90.60  01 5         Other................................. X.......  17%           Free (A*,E,IL)       90%
                                                                                        11.9% (CA)
```

Another example can be found in *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1374 (Fed. Cir. 1999). In *Pillowtex*, the Federal Circuit considered the proper tariff classification of certain comforters under HTSUS 8-digit subheadings 9404.90.80 and 9404.90.90. *Id.* The HTSUS language at issue in *Pillowtex* is excerpted below: [13]

---

[12]   The applicable language of HTSUS heading 6702 (1991) is attached as <u>Exhibit 9</u> and available on the ITC website, https://www.usitc.gov/tata/hts/archive/9100/1991_basic_index.htm (last visited Mar. 22, 2023).

[13]   The applicable language of HTSUS heading 9404 (1994) is attached as <u>Exhibit 10</u> and available on the ITC website, https://www.usitc.gov/tata/hts/archive/9400/1994_basic_index.htm (last visited Mar. 22, 2023).



```
9404.90              Other (con.):
(con.)
                         Other:
9404.90.80               Of cotton, not containing any
                         embroidery, lace, braid, edging,
                         trimming, piping exceeding 6.35 mm
                         or applique work....................  ........  5%           Free (E*)           25%
                                                                                      0.5% (IL)
                                                                                      2% (CA)
           20            Quilts, eiderdowns,
                         comforters and similar
                         articles................(362)  No.   v
           40            Other....................(369)  No.   v
                                                         kg

9404.90.90               Other............................  ........  14.5%        Free (E*,IL,J*)       90%
                                                                                   5.8% (CA)
                         Quilts, eiderdowns,
                         comforters and similar
                         articles:
           05            With outer shell of
                         cotton..............(362)  No.   v
                                                    kg
           22            With outer shell of
                         man-made fibers......(666)  No.   v
                                                     kg
```

●●●&f2y3X

```
                         With outer shell of
                         other textile materials:
           23                Containing 85 per-
                             cent or more by
                             weight of silk or
                             silk waste............  No.   v
                                                     kg
           36                Other...........(899)  No.   v
                                                    kg
                         Other:
           50            Of cotton............(369)  No.   v
                                                     kg
           55            Of man-made fibers...(666)  No.   v
                                                     kg
           60            Other...............(899)  No.   v
                                                    kg
```

The Federal Circuit noted that "[n]either subheading 9404.90.80 nor 9404.90.90 explicitly lists comforters by name and hence do not offer an explanation of what are comforters 'of cotton.'" *Id.* However, the Federal Circuit recognized that the "statistical suffixes under both subheadings do explicitly list comforters by name." *Id.* While the term "comforters" appears in the article description language that begins next to a number in column 2 under HTSUS 8-digit subheading 9404.90.80 (*i.e.,* on the same line as "20"), this term appears in the article description language in between the article description language next to HTSUS subheading number 9404.90.90 in column 1 and the first SRN in column 2 that is under this subheading. The Federal Circuit's interpretation

demonstrates that the phrase indented below HTSUS 8-digit subheading 9404.90.90 (in between the 8-digit subheading and the 10-digit SRNs in column 2) is part of the article description for the statistical suffixes. *Id.*

Specifically, the court treated the "*Quilts, eiderdowns, comforters and similar articles*" language the same (*i.e.*, as part of the statistical article description language) even though the language was on the same line as "20" in column 2 under subheading 9404.90.80, but was not on the same line as an SRN under subheading 9404.90.90. *Id.*

The *Pillowtex* case shows the clear delineation between 8-digit subheading and 10-digit SRN article description language in the HTSUS. *Id. Pillowtex* also confirms that the statistical suffix article description language below an 8-digit subheading is read together (*i.e.*, consecutively and cumulatively) to determine the goods within the statistical category, as the Federal Circuit clearly stated that the statistical suffixes at issue list comforters, even though the word comforters is not in the article description language next to a specific 10-digit SRN in column 2 when used in SRNs under 8-digit subheading 9404.90.90. *Id.*

Another illustrative case is *United States v. UPS Customshouse*, where the Court considered the article description of goods classified under HTSUS subheading 8473.30, as provided below:[14]

---

[14]   The applicable language of HTSUS heading 8473 (2000) is attached as <u>Exhibit 11</u> and available on the ITC website, <u>https://www.usitc.gov/tata/hts/archive/0000/2000_basic_index.htm</u> (last visited Mar. 23, 2023).

| 8473.30 | | | Parts and accessories of the machines of heading 8471: | | | |
| | | | Not incorporating a cathode ray tube: | | | |
| 8473.30.10 | 00 | | Printed circuit assemblies . . . . . . . . . . . . . . . . . . | X | . . . . . . | Free |
| 8473.30.20 | 00 | | Parts and accessories, including face plates and lock latches, of printed circuit assemblies . | X | . . . . . . | Free |
| 8473.30.30 | 00 | | Other parts for printers, specified in additional U.S. note 2 to this chapter . . . . . . . . . . . . . . . | X | . . . . . . | Free |
| 8473.30.50 | 00 | | Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | X | . . . . . . | Free |
| | | | Other: | | | |
| 8473.30.60 | 00 | | Other parts for printers, specified in additional U.S. note 2 to this chapter . . . . . . . . . . . . . | X | . . . . . . | Free |
| 8473.30.90 | 00 | | Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | X | . . . . . . | Free |

575 F.3d 1376, 1377-1378 (Fed. Cir. 2009). In this case. UPS argued that it properly classified parts and accessories of automated data processing ("ADP") machines under SRN 8473.30.9000; while CBP claimed that UPS's classification was improper because the parts at issue do not contain a cathode ray tube ("CRT"). *Id.* at 1377-78. To support its classification argument, UPS claimed that the article description language—"[n]ot incorporating a cathode ray tube"—modifies the phrase "the machines of heading 8471." *Id.* at 1381. However, the Court found this argument "strain[ed] logic and grammar[,]" and determined that "[t]he indentation of the phrase demonstrates that '[n]ot incorporating a cathode ray tube' is a subset of the higher-level subheading of '[p]arts and accessories'" and that "[i]t is not a continuation of the phrase "machines of heading 8471." *Id.* According to the Court, the article description structure of HTSUS subheading 8473.30 demonstrates that there are two types of parts and accessories under this subheading: those "not incorporating a cathode ray tube" and "other." *Id.*

Applying the guidance from the precedent cited above, there are only two equal indentations (subparts) at the first SRN level beneath 8-digit subheading 8803.30.00—"for use in civil aircraft" and "other." *See Marcel Watch*, 11 F.3d at 1058-59 (stating that comparisons are made only between tariff provisions of coordinate or equal status). Accordingly, the article description language "For use in civil aircraft:" under 8-digit subheading 8803.30.00 is comparable to the article description "Other" next to the number "60" in HTSUS column 2 because they are

"at the same level." See below:



This indented language signifies the beginning of the article description language for the SRNs under 8-digit subheading 8803.30.00.

As shown above, the article description "Other" is next to the number "60" found in HTSUS column 2 and there is no further article description language indented below. Therefore, the article description language for 8803.30.0060 is "Other" at the 10-digit SRN level. Since "For use in civil aircraft:" is the same indentation as "Other" for SRN 8803.30.0060 and both are article description language (in HTSUS column 3), it follows that "For use in civil aircraft:" is also an article description at the 10-digit SRN level (*i.e.*, since these are comparable tariff provisions).[15] In other words, while there are three SRNs under HTSUS 8-digit subheading 8803.30.00, there are only two comparable article descriptions at the first indented level—"For use in civil aircraft:" and "Other."

The article description language further indented under "For use in civil aircraft:" is only considered after comparing "For use in civil aircraft:" and "Other" at the lesser-indented level. In other words, the proper article description language for SRNs 8803.30.0015 and 8803.30.0030 begins with an assessment of whether or not the aircraft part is for use in civil aircraft or not. The

---

[15]     As noted above, there is no other tariff provision-type to be associated with—*i.e.*, there is only 8-digit or 10-digit at this level. *See* HTSUS Preface (2023) at pg. 6.

article description language next to the numbers "15" and "30" in HTSUS column 2 are not comparable to the "Other" language next to "60" because they are not the same level of indentation.[16] Therefore, this article description language next to "15" and "30" cannot be compared for purposes of the "begins with" analysis required by the Drawback Statute.

The indentation language next to "15" and "30" identify specific types of aircraft parts that are "for use in civil aircraft." Thus, the "For use in civil aircraft:" article description language must first be met for a good to be classified in SRN 8803.30.0030.[17] Exhibit 2, Singh Dep. Tr. 71:6-17. Under a proper construction of the HTSUS, the phrase "For use in civil aircraft:" is the beginning of the article description for 10-digit SRN 8803.30.0030 and the word "Other" next to "30" is the end of the article description.

> 2. Plaintiff's Interpretation of the Term "Begins With" Is in Accordance with the "Scope of Subparts" and "Punctuation" Canons

In addition to consistency with the structure of the HTSUS, Plaintiff's interpretation is also supported by two foundational canons of statutory interpretation: the "Scope of Subparts" and "Punctuation" Canons.

First, the Scope of Subparts Canon stands for the proposition that "'[m]aterial within an indented subpart relates only to that subpart; material contained in unindented text relates to all

---

[16]    "The phrase 'For use in civil aircraft' is comparable to SRN 8803.30.0060 because both provisions are listed at the same indented level." Exhibit 1 at pg. 9.

[17]    *See* Exhibit 12, ITC PowerPoint presentation entitled "The Committee for Statistical Annotation of Tariff Schedules" at ITC0056 (showing, in orange font, "national statistical breakouts" of heading 1509 in that it is inclusive of the language in-between the subheading and the statistical breakout numbers; thus confirming that the language appearing in the article description column above the statistical breakout number is part of the statistical language and not part of the 8-digit "tariff rate line" (as shown in black font); Exhibit 6, ITC's Resp. to Dep. By Written Questions at pg. 15 (acknowledging that "For use in civil aircraft" is "relevant to finding the product coverage of the cited statistical reporting number.")

the following or preceding indented subparts.'" *Dong-A Steel Co. v. United States*, 475 F.Supp.3d 1317, 1338 n.15 (Ct. Int'l Trade 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* xii (2012); *see also Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1105-06 (11th Cir. 2015) ("Ordinarily, the scope of a subpart is limited to that subpart[.]").

Based on the Scope-of-Subparts Canon, the text "*Other parts of airplanes or helicopters*" next to HTSUS subheading 8803.30.00 relates to all language indented at the same level (*i.e.*, it must be compared to the other 8-digit subheadings of heading 8803). This language also relates to the further indented language that follows by defining the category of goods the further indented article descriptions fall in. Similarly, the text "*For use in civil aircraft:*" below HTSUS subheading 8803.30.00 relates to all language indented at the same level (*i.e.*, it must be compared to the other 10-digit SRN (8803.30.0060) within 8-digit subheading 8803.00.30). This "*For use in civil aircraft:*" language also relates to the further indented language that follows—specifically the two phrases "*For use by the Department of Defense or the United States Coast Guard*" and "*Other*"—by indicating the beginning of the 10-digit article description language for these further-indented article description terms.

Second, Plaintiff's interpretation is supported by the Punctuation Canon, which provides that punctuation is a permissible indicator of meaning. A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* § 23, p. 161 (2012) (describing the Punctuation Canon and discussing how punctuation in legal texts "will often determine whether a modifying phrase or clause applies to all that preceded it or only to a part"); *see also United States Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) ("Statutory construction is a holistic endeavor and, at a minimum, must account for a statute's full text, language as well as punctuation, structure,

and subject matter." (cleaned up)); *United States v. Trent*, 654 F.3d 574, 582 (6th Cir. 2011)

("Grammatical structure cannot be ignored in the endeavor of statutory construction."); *United States v. Ernest E. Marks Co.*, 29 C.C.P.A. 77, 79 (U.S.C.C.P.A. 1941) (citation omitted) (stating that commas, semicolons, colons, dashes, and other forms of punctuation have their place in ascertaining the meaning of tariff paragraphs, and ordinarily, in such construction, they must, in accordance with the rules of grammatical construction, be given full weight, but if their inclusion or omission under this rule brings an anomalous result contrary to the manifest intention of Congress, the grammatical construction must yield).

Here, the colon after the text "For use in civil aircraft" below HTSUS 8-digit subheading 8803.30.00 associates this article description phrase with the two indented phrases that follow, which are further subdivisions/categories of this preceding language, indicating that the indented phrases are a continuation of the article description for these SRNs.[18] *See Bruckmann v. United States*, 78 Cust.Ct. 155, 435 F.Supp. 1219, 1222 (1977) ("The colon of the superior heading clearly represents, through punctuation, an attempt to show that each provision under it is intended to be a specific elaboration of the superior heading."), *rev'd. on other grounds*, 65 C.C.P.A. 90, 582 F.2d 622 (Cust. & Pat.App.1978); *see also* THE CHICAGO MANUAL OF STYLE ¶ 6.63 (15th ed. 2003) ("A colon introduces an element or a series of elements illustrating or amplifying what has preceded the colon."); *UPS Customhouse*, 558 F.Supp.2d at 1348-49 (finding that Congress drafted HTSUS subheading 8473.30 employing the use of colons, with the colon introducing "the categorical list of the ADP parts classifiable under it according to whether those parts and accessories either incorporate a CRT"—HTSUS 8-digit subheadings 8473.30.60 or 8473.60.90

---

[18]     According to CBP, it does not know why there is a colon after the text "For use in civil aircraft". <u>Exhibit 2</u>, Singh Dep. Tr. 16:23-17:18, 120:10-123:4.

"or do not incorporate a CRT"—HTSUS 8-digit subheadings 8473.30.10, 8473.30.30, or 8473.30.30).

Applying the Punctuation Canon, we can establish that the 10-digit article description language under HTSUS 8-digit subheading 8803.30.00 includes two categories of parts that are "For use in civil aircraft" specifically—"*For use in civil aircraft: For use by the Department of Defense or the United States Coast Guard*" (SRN 8803.30.0015) and "*For use in civil aircraft: Other*"). For SRNs 8803.30.0015 and 8803.30.0030, repetition of the phrase "For use in civil aircraft:" would have been redundant and unnecessary in the article description language next to the numbers "15" and "30" found in column 2, as the semi-colon applies this article description to both categories below that language (as though fully set forth). *See E.M. Chems. v. United States*, 923 F. Supp. 202, 210 (Ct. Int'l Trade 1996) (finding that the phrase "whether or not", when used in a superior heading, is considered to modify the article descriptions in the provisions under that heading even though the phrase was not repeated in the provisions thereunder). By contrast, an interpretation that would ignore the guidance of the colon after the "For use in civil aircraft" article description language does not make sense. *UPS Customhouse*, 558 F.Supp.2d at 1348-49 (finding that UPS's construction was untenable because it made no sense grammatically and would render the punctuation useless).[19]

Spirit's interpretation is consistent with how this Court has viewed statistical language below an 8-digit subheading that is followed by a colon. For example, in *Schlumberger*, this Court considered the proper tariff classification of proppants under HTSUS 8-digit subheading

---

[19]    According to CBP, it does not know why the "For use in civil aircraft:" language is in its current structure (*i.e.*, no HTSUS digits next to it, not repeated) and, instead, defers to the ITC. Exhibit 2, Singh Dep. Tr. 100:15-102:4, 118:24-119:9. However, CBP acknowledges that "[i]t appears that the ITC determined that it ['For use in civil aircraft:'] did not need to be repeated for statistical purposes."). *Id.* at 143:4-9.

2606.00.00 and recognized that "[a] ten-digit statistical breakout (subheading 2606.00.0060, HTSUS), is provided for calcined, non-refractory grade bauxite…" 91 F.Supp.3d at 1323 n.22. An excerpt showing the relevant language from 8-digit subheading 2606.00.00 of the 2010 HTSUS is included below:



As shown above, this Court considered the indented language "Bauxite, calcined:" in between 8-digit subheading 2606.00.00 in column 1 and the SRNs (30, 60, 90) in column 2 to be part of the description of the goods covered by the 10-digit statistical breakout 2606.00.0060. *See* Exhibit 13, complete copy of relevant HTSUS provisions for heading 2606. This is a logical analysis, given that, if any of the article description language were to be ignored or disregarded, it would be impossible to distinguish between comparable tariff provisions of the same level and to determine where the associated article description language begins and ends.

3.    Plaintiff's Interpretation Is Consistent with Legislative Intent

"[W]hile the immediate statutory text is the 'best evidence' of congressional intent" it is not "the only such evidence." *Norfolk and W. Ry. Co. v. United States*, 869 F.Supp. 974, 979 (Ct. Int'l Trade 1994). "Accordingly, when the statutory language is not precise, the court's duty is to find the interpretation 'embedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested.'" *Id.* (citing *NLRB v. Lion Oil Co.*, 352 U.S. 282, 297 (1957) (Frankfurter, J., concurring in part and dissenting in part)); *see also United States v. Invicta Seeland, Inc.*, 25 C.C.P.A. 300, 305 (1938) ("It is well established that in

the construction of a statute the intention of the legislature is to be deduced from the whole statute and every material part of the same.").

There is no dispute that TFTEA was enacted to simplify and expand the availability of unused merchandise drawback—not to eliminate substitution unused merchandise drawback for other airplane parts for use in civil aircraft. But that is exactly what CBP's interpretation does. Additionally, CBP's interpretation is inconsistent with the intent of the *Civil Aircraft Agreement* (*i.e.*, to promote free trade in aircraft).

Contrary to CBP's interpretation, the intent of Congress is clear under a plain reading of the Drawback Statute. Congress could have used language such as "next to" or "on the same line" if the intent was to look only to the article description language immediately to the right of a number appearing in the first two columns of the HTSUS. Instead the term "article description" is used in the Drawback Statute without any such positional limitation and this term is well-recognized to include language in the third column of the HTSUS cumulatively.[20]

If the intent of the Drawback Statute was to focus solely on the article description language immediately to the right of a number in the first or second column of the HTSUS, Congress could have used specific language indicating that positional review. For example, the phrase "next to" or "on the same line" could have been used if the review of the article description language was meant to be limited to the language directly next to or on the same line as the 8-digit subheading number in column 1 of the HTSUS or the 2-digit statistical suffix number in column 2 of the

---

[20]     CBP acknowledges that there is no difference between the meaning of "article description" for purposes of drawback and tariff classification. Exhibit 2, Singh Dep. Tr. 26:21-25. According to CBP, this phrase has the same meaning in the Drawback Statute and the CBP regulations. *Id.* at 52:10-53:14.

HTSUS. This was not done. Instead Congress chose "begins with" when referencing the relevant article description language for substitution unused merchandise drawback.[21]

Since the HTSUS and the Drawback Statute are both part of same statutory regime (the *Tariff Act of 1930*), it is proper to conclude that Congress intended these statutes to work together harmoniously. It is also proper to conclude that Congress knew and understood the hierarchical, tabular structure of the HTSUS and chose the language of the Drawback Statute with this structure in mind. It is telling, therefore, that Congress chose the words "begins with" when referencing the article description language of the HTSUS.

## II.  CBP HAS MISINTERPRETED THE SRN 8803.30.0030 LANGUAGE

CBP agrees that the phrase "article description" in the Drawback Statute refers to the language found in the "Article Description" column of the HTSUS. Exhibit 1 at pgs. 11-12 (noting that the term "article description" refers to the descriptive language accompanying a tariff number in the HTSUS column titled "Article Description."). However, CBP asserts that the article description for substitution unused merchandise drawback corresponding to a tariff number found in the first two columns of the HTSUS begins on the same line as that tariff number (*i.e.*, it is the language "next to" or "on the same line as" an 8- or 10-digit tariff number"). *Id.*; Exhibit 2, Singh Dep. Tr. 83:11-85:13.

---

[21]     "[C]ourts may reach results inconsistent with the plain meaning of a statute [only] if giving the words of a statute their plain and ordinary meaning produces a result that is not just unwise but is clearly absurd." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1167 (11th Cir. 2003) (citation and internal quotation marks omitted); *Luggage and Leather Goods Mfrs. of Am., Inc. v. United States*, 588 F.Supp. 1413, 1424 (Ct. of Int'l Trade 1984) ("[W]ell settled is the rule that [u]nquestionably the courts, in interpreting a statute, have some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results . . . or would thwart the obvious purpose of the statute. . . . But it is otherwise where no such consequences would follow and where . . . it appears to be consonant with the purposes of the Act.") (citation and internal quotation marks omitted; minor alterations).

Specifically, CBP interprets the 8-digit subheading 8803.30.00 as "a basket provision that covers merchandise that is not classifiable under a more specific subheading of HTSUS heading 8803." Exhibit 1 at pg. 2. CBP interprets the 10-digit SRNs under subheading 8803.30.00, as follows:

> The difference between goods classified in 10-digit HTSUS statistical reporting number (SRN) 8803.30.0030 and goods classified in 10-digit HTSUS SRN 8803.30.0060 is whether the goods constitute parts "[f]or use in civil aircraft." Goods that are classifiable in HTSUS subheading 8803.30.00 and constitute parts "[f]or use in civil aircraft" are classifiable in SRN 8803.30.0030 if they are not "[f]or use by the Department of Defense or the United States Coast Guard." Goods that are classifiable in subheading 8803.30.00 but are not "[f]or use in civil aircraft" are classifiable under SRN 8803.30.0060.

> ***

> The phrase "For use in civil aircraft" is a unifying criterion, creating a subcategory of parts, applicable to, and containing, the two subordinate 10-digit SRNs appearing immediately below: 8803.30.0015 and 8803.30.0030. All parts in these subordinate SRNs are for use in civil aircraft. Parts classified under SRN 8803.30.0015 are also "[f]or use by the Department of Defense or the United States Coast Guard." Parts that are not for use by the Department of Defense or the U.S. Coast Guard are classified under SRN 8803.30.0030, which provides for "Other."

*Id.* at pgs. 4-5. CBP considers the article description phrase "For use in civil aircraft:" to be a "unifying criterion, creating a subcategory of parts, applicable to, and containing, the two subordinate 10-digit SRNs appearing immediately below" with all parts classified in SRNs 8003.30.0015 and 8803.30.0030 being for use in civil aircraft. *Id.* at pg. 5. As explained further below, CBP's interpretation is erroneous because it violates multiple canons of statutory construction, is inconsistent with prior agency practice, the structure of the HTSUS, and legislative intent. Finally, and perhaps most importantly, CBP's interpretation leads to an absurd result.

A. __CBP's Interpretation of the Drawback Statute Violates the Rule Against Surplusage__

As explained above, proper statutory interpretation of the Drawback Statute requires the Court review "the entire context" of the statute and make "every effort . . . to give full force and effect to all language contained therein[,]" including other text of the *Tariff Act of 1930*, the larger statutory regime that encompasses the Drawback Statute. *Merck*, 435 F. Supp. 2d at 1257-58 (citing *Dart Exp. Corp. v. United States*, 1956 WL 8339, 43 C.C.P.A. 64, 74 (1956) (citations omitted). In turn, the Court should not interpret a statute to render other provisions of the same statute superfluous. *Motorola, Inc. v. United States*, 462 F.Supp.2d 1367, 1381 (Ct. Int'l Trade 2006) (citing *Brown & Williamson*, 529 U.S. at 133 (citation omitted). The Court should therefore "interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." *Id.; Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 133 S.Ct. 1166, 1178 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

If CBP's interpretation of the language "begins with" found in the Drawback Statute were to be adopted—*i.e.*, interpreted to mean "next to" or "on the same line as"—it would render superfluous the language "For use in civil aircraft:" that is found in the HTSUS and indented below 8-digit subheading 8803.30.00. As detailed above, this article description language is not part of the article description of the 8-digit subheading. Further, under CBP's interpretation, this language is not part of the article description for 10-digit SRNs 8803.30.0015 or 8803.30.0030 either. This is an odd construction given that the language is indented below the 8-digit subheading and above the 10-digit SRNs (*i.e.*, in between the two), and logically must be part of the article description

of one or the other.[22] Any other construction leaves this article description language with no meaning or purpose in the statutory regime (*i.e.*, the language is of no consequence under CBP's interpretation).

Further, within the Drawback Statute there is no indication of a positional limitation for determining what term an article description begins with, either explicit or implied. We can take guidance on this issue from the Court's prior interpretation of HTSUS terms. Specifically, in *Amcor Flexibles Singen Gmbh v. United States*, this Court found that "[i]Imposing a positional reference on the term 'backed' in the tariff heading for aluminum foil would render the entire concept of 'backed' aluminum a nullity because without a 'back,' aluminum could never be 'backed.'" 425 F.Supp.3d 1287, 1299 (Ct. Int'l Trade 2020). This Court stated that "[t]o do so would contravene the interpretive canon against surplusage—the idea that all provisions should be given effect and none should be given an interpretation to have no consequence." *Id.* (citing *Nielson v. Preap*, 139 S.Ct. 954, 955 (2019)). Similarly, to interpret "begins with" in the context of the Drawback Statute as a positional reference to article description language "next to" or "on the same line" as a number in column 1 or column 2 of the HTSUS would "contravene core rules of statutory construction and defy logic." *Id.*

Again, as explained above, the "begins with" language should be given a meaning aligned with the context and structure of the HTSUS. *Amcor*, 425 F.Supp.3d at 1299 (citing *Quaker Pet Grp., LLC v. United States*, 287 F. Supp. 3d. 1348, 1355 (2018)) ("Where a tariff term has various

---

[22]    The fallacy of CBP's argument is clearly articulated in their written discovery responses. *See* <u>Exhibit 1</u> at pg. 12 ("Not every indented line of descriptive language in the 'Article Description' column has a corresponding tariff number. . . . Indented language without a corresponding tariff number is not part of the 'article description' for an 8-digit subheading or a 10-digit SRN."). CBP's interpretation thus begs the question: if not part of the "article description", what is this language for?

definitions or meanings and has broad and narrow interpretations, the court must determine which definition best expresses the congressional intent."). Based on the logical structure of the HTSUS, that consists of a tabular arrangement with multiple article descriptions in Column 3 distinguished by various levels of indentation, we must have a logical method for associating the article descriptions with the numbers expressed in Columns 1 and 2. That is we must be able to determine the starting point and ending point of the article description for the various levels of the HTSUS— the 4-digit heading article description, the 6-digit subheading article description, the 8-digit subheading article description, and the 10-digit SRN article description—without ignoring any of the article description language in the statute.

The "begins with" language in the Drawback Statute aligns with the basic premise that the article description for an 8-digit subheading or 10-digit SRN has a beginning and an end. In other words, unless we can determine where the article description for a tariff provision subdivision in the HTSUS ends, we cannot determine where the article description for the next breakout begins. This approach is guided by the indentations in the HTSUS. Using the indentations, we are able to see that the article description for a 10-digit SRN begins with the next indented level article description following the end of the article description for the superior 8-digit subheading. The end of the article description for an 8-digit subheading is indicated by the dots running from the last word of that article description to the applicable duty rate. Similarly, we can see the end of the article description for a 10-digit SRN by the dots running from the last word of that article description to the Unit of Quantity. Under this logical approach, no article description language is ignored and the article description language for every tariff provision (whether 4-, 6-, 8-, or 10-digit) has a clear beginning and end.

CBP fails to reconcile its interpretation of the Drawback Statute with "the venerable canon of statutory construction which holds that 'effect must be given, if possible, to every word, clause and sentence of a statute.'" *Butler v. United States*, 442 F.Supp.2d 1311, 1324 n.23 (Ct. Int'l Trade 2006) (citing 2A Norman J. Singer, Sutherland on Statutes and Statutory Construction § 46:06 (6th ed. 2000) (citing, inter alia, *United States v. Menasche*, 348 U.S. 528, 538–39 (1955); *Texas State Comm'n for the Blind v. United States*, 796 F.2d 400, 419 (Fed. Cir. 1986) ("Basic principles of statutory construction require that effect should be given to every word of the statute so that no part will be rendered meaningless.") (citations omitted))). Since CBP's interpretation does not give effect to the "For use in civil aircraft:" article description language in SRN 8803.30.0030 for substitution unused merchandise drawback purposes, it must be rejected. The only way for CBP's interpretation to be correct is to ignore this language in violation of the rule against surplusage, so this cannot be the proper interpretation.

CBP understands the difference between "begins with" and language that indicates a positional reference, such as the words "same line" or "next to". In fact, CBP specifically uses the phrases "same line" or "next to"—and not "begins with"—when a positional reference is intended. *See, e.g.*, 19 C.F.R. § 190.51(a)(3) ("The first complete drawback claim accepted by CBP which designates merchandise on a line on an entry summary establishes this designation for any remaining merchandise on that <u>same line</u>.") (emphasis added); 19 C.F.R. § 4.7(c)(3)(ii) (approving the use of the abbreviation "SLAC" for "shipper's load and count," provided that it "is placed <u>next to</u> each containerized or palletized shipment on the declaration[.]") (emphasis added); 19 C.F.R. § 141.90(b) (requiring that certain information is noted by the importer or customs broker in the left-hand portion of the invoice, <u>next to</u> the articles to which they apply.") (emphasis added).

By contrast, CBP uses "begins with" to identify the starting point of a fabric-making process:

> (2)  **Fabric-making process.** A *fabric-making process* is any manufacturing operation that begins with polymers, fibers, filaments (including strips), yarns, twine, cordage, rope, or fabric strips and results in a textile fabric.

Spirit's construction of the relevant statutory language is based on a plain reading and does not create ambiguity between the Drawback Statute and the HTSUS. In contrast, CBP's reading creates ambiguity and surplusage in the statutory scheme. Therefore, CBP's interpretation should be rejected.

### B.    CBP's Interpretation Leads to an Absurd Result that Is Inconsistent with the Statutory Context

CBP's construction of the Drawback Statute and HTSUS also fails because it would produce "absurd results inconsistent with the statute's context." *See Dupuch-Carron v. Sec'y of Health & Hum. Servs.*, 969 F.3d 1318, 1330 (Fed. Cir. 2020); *see also Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 252 (2010) (declining to "adopt a view of the statute that . . . would produce an absurd result"); *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940) (explaining that a reading of a statute that "would lead to absurd results is to be avoided when [it] can be given a reasonable application consistent with [its] words and with the legislative purpose.").

Without considering the article description language "For use in civil aircraft:" to distinguish between the article description for the 10-digit SRN 8803.30.0030 and 10-digit SRN 8803.30.0060, CBP's reading would result in the existence of two basket provisions with the article description "other" under HTSUS 8-digit subheading 8803.30.00. This interpretation would create ambiguity and cannot be a proper reading.

Moreover, the illogic of the Government's position is underscored when reviewing the

relevant statistical language for subheading 8803.30.00 prior to 1998, when the 484(f) Committee enacted a change in the statistical language under 8-digit HTSUS subheading to delineate between civil aircraft parts for military use and for other uses. Specifically, in 1997, the "For use in civil aircraft" article description language was part of 10-digit SRN 8803.30.0010. An excerpt is included below:



In this version of the HTSUS, the "For use in civil aircraft" article description was next to the number "10" in column 2 and was followed by dots instead of a colon. Under either parties' interpretation, the article description for SRN 8803.30.0010 does not begin with "other" in this format and is a specific description under which only a certain category of goods can be classified.

The 484(f) Committee later modified the statistical article description language into two specific categories of aircraft parts "for use in civil aircraft": one for parts that are "For use by the Department of Defense and United States Coast Guard", and one for "Other". The statistical language now reads:

Contemporaneous documents produced in discovery show the change to the statistical article description language under HTSUS subheading 8803.30.00 that resulted in SRNs 8803.30.0015 and 8803.30.0030 was the result, in part, of the change in the definition of "civil aircraft" from the *Miscellaneous Trade and Technical Corrections Act of 1996*.[23] *See, e.g.*, Exhibit 14, Committee for Statistical Annotation of Tariff Schedules, Internal Mems. (April 30, 1997) at ITC0092-ITC0095, (Aug. 26, 1997) at ITC0114-0139, (Oct. 30, 1997) at ITC0106-ITC0113.

After the revision to the statistical article description language, current SRN 8803.30.0030 covers a narrower category of goods than former SRN 8803.30.0010 (*i.e.*, this new SRN only covers a portion of the former 8803.30.0010 SRN—specifically other parts of airplanes or helicopters for use in civil aircraft that are not used by the Department of Defense or the U.S. Coast Guard). However, CBP's interpretation of the statistical language under 8-digit subheading 8803.30.00 results in an illogical conclusion: the broader version of the "For use in civil aircraft" statistical language (SRN 8803.30.0010 in the pre-1998 HTSUS) would be eligible for substitution unused merchandise drawback, while the narrower statistical language (SRN 8803.30.0030 in the current HTSUS) would not. This result runs directly counter to the intent of Congress when implementing TFTEA. *Modernized Drawback*, 83 Fed. Reg. 64942, 64959 (Dec. 18, 2018) ("CBP agrees that Congress has supported substitution drawback. In fact, the . . . statute expand[s] the availability of substitution for drawback claims.").

---

[23]   The *Trade and Technical Corrections Act of 1996* (Pub. Law 104-295) made several amendments to HTSUS GN 6, including an extension of duty-free treatment to aircraft certified by the FAA and purchased by DoD (*i.e.*, military aircraft). However, under Statistical Note 1 of Chapter 88, such aircraft were excluded from the scope of the term "civil aircraft" for statistical purposes. This raised the need to revise the statistical language to comply with the new statute. The 484(f) committee made revision to statistical language as a result.

Finally, if CBP's position that SRN 8803.30.00**30** begins with the term "Other" were true (and the "For use in civil aircraft" language should be ignored), then both SRN 8803.30.00**30** and 8803.30.00**60** would cover the exact same category of merchandise for purposes of substitution unused merchandise drawback, which is clearly incorrect.[24] *See* Exhibit 2, Singh Dep. Tr. 104:20-105:19 (acknowledging that SRNs 8803.30.0030 and 8803.30.0060 cover the same type of goods, with the only distinction being whether they are used for civil aircraft.

By contrast, SRN 8803.30.00**60** is, in fact, a basket provision and is the only 10-digit SRN within 8-digit subheading 8803.30.00 that begins at the 10-digit level with the term "other" and should be excluded from drawback claims. Accordingly, the more appropriate and accurate reading of the SRN article description language within 8-digit subheading 8803.30.00 is that "For use in civil aircraft:" article description language applies to both 10-digit SRNs 8803.30.00**15** and 8803.30.00**30** and is the language that each of these SRNs "begins with."

## C.    CBP's Interpretation Is Inconsistent With Prior Agency Decisions

The government's interpretation is also inconsistent with prior agency practice. The HTSUS makes it clear that a good must meet all "article description" language to be classified in a particular tariff provision at the 6-, 8-, or 10-digit level, which includes all superior indented article description language. *See* HTSUS Preface at pg. 6. In CBP rulings, the agency recognizes

---

[24]    The residual "Other" category in SRN 8803.30.0060 is reserved for other parts of aircraft not specifically listed in SRNs 8803.30.0015 and 8803.30.0030. Exhibit 1 at pgs. 4-5 ("The difference between goods classified in [SRN 8803.30.0030] and goods classified in [SRN 8803.30.0060] is whether the goods constitute parts '[f]or use in civil aircraft.' Goods that are classifiable in HTSUS subheading 8803.30.00 and constitute parts '[f]or use in civil aircraft' are classifiable in SRN 8803.30.0030 if they are not '[f]or use by the Department of Defense or the United States Coast Guard.' Goods that are classifiable in subheading 8803.30.00 but are not '[f]or use in civil aircraft' are classifiable under SRN 8803.30.0060.").

that the "article description" for HTSUS 8-digit subheading 8803.30.00 and its statistical suffixes

includes all language in the "Article Description" column, including "for use in civil aircraft." *See,*

*e.g.*, New York Ruling Letter (NYRL) N300226 (Sept. 25, 2018) (stating that "[t]he applicable

classification subheading for the Flap Drive Power Unit will be 8803.30.0030, HTSUS, which

provides for "Parts of goods of heading 8801 or 8802: Other parts of airplanes or helicopters: For

use in civil aircraft: Other."); NYRL N25507 (July 18, 2014) ("Pursuant to GRI 2(a), the applicable

subheading for the unassembled Supporting Structure for the Zeppelin LZ N07-101 Airship will

be 8803.90.9030, HTSUS, which provides for 'Parts of goods of heading 8801 or 8802: Other:

Other: For use in civil aircraft: Other.'"); HRL 963663 (Jul. 30, 2001) (recognizing "for use in

civil aircraft" as part of the article description for SRNs subordinate to subheading 8803.90.00);

*see also* <u>Exhibit 2</u>, Singh Dep. Tr. 14:4-15 (acknowledging that the term "provided for" is in

reference to the article description).

### D.    CBP's Interpretation Draws an Erroneous Interpretative Distinction Between Legal and Non-Legal Text and Is Not Entitled to Deference

Although the HTSUS "shall be considered . . . statutory provisions of law for all purposes,"

the "the tenth-digit statistical suffixes . . . are not statutory," as those suffixes are not incorporated

in the HTSUS legal text. *Ford Motor Co. v. United States*, 926 F.3d 741, 748 (Fed. Cir. 2019)

(citing 19 U.S.C. § 3004(c)(1) (2012)). While this is a distinction in the HTSUS between legal and

non-legal article description text, there should be no difference in the way this article description

language is interpreted for substitution unused merchandise drawback purposes.

Spirit's interpretation of the "article description" language at the statistical level is

consistent with the way the HTSUS statutory language has been and should be interpreted. There

should be no difference in the interpretation of article description language at the statistical level,

even though it is non-legal text.[25] An interpretation of the statistical article description language that is inconsistent with the way the article description language for the statutory legal text is interpreted would be arbitrary, capricious, an abuse of discretion and inconsistent with the statutory scheme.

In its internal ruling issued in response to Spirit's Internal Advice Request, CBP made much of the distinction between legal and non-legal text found in the HTSUS. *See* HQ H307063 (Mar. 10, 2020), which states:

> First, the last two digits in a 10 digit subheading in the HTSUS are not statutory in nature. The 9th and 10th digit are used exclusively to compile import statistics. Therefore, the HTSUS is merely "Annotated for Statistical Reporting Purposes" with the ten-digit statistical suffix. See Harmonized Tariff Schedule of the United States (2019). Additionally, the statistical reporting numbers are inserted pursuant to 19 U.S.C. § 1484(f), and are merely added to the HTSUS statute for reference and reporting reasons. Accordingly, the eight-digit is the final provision of the HTSUS statute. The final two digits are actually part of the HTSUSA (HTSUS, Annotated), and are administrative rather than statutory in nature; the statistical breakouts are not part of the binding statute.

Even though the 10-digit SRNs of the HTSUS are administrative in nature and not part of the legal text of that statute, there is no support for the notion that article description language for the 10-digit SRNs should be interpreted differently than any other article description language in the HTSUS.[26] This is the case regardless of what CBP or the ITC may assert with respect to the language the article description for 10-digit SRN 8803.30.0030 "begins with" for purposes of the Drawback Statute. While 19 U.S.C. § 1484(f) gives these agencies authority over statistical

---

[25]    CBP seems to agree there should be no difference in how the statutory and non-statutory language is reviewed. Exhibit 2, Singh Dep. Tr. 56:13-57:19.

[26]    *See* Exhibit 15, Preface to 9th Edition of HTS at ITC0028-29 (noting that statistical suffixes are "formulated under section 484(f) of the Tariff Act of 1930"; and although not part of the "legal text," they are implemented by statute); *id.* (noting that statistical annotations "prescribe the statistical information to be supplied on customs entry . . . the requirements for reporting statistical data.").

enumeration in the HTSUS, this authority is not absolute and beyond scrutiny. *See* 19 USC 1484(f) (stating that "The Secretary, the Secretary of Commerce, and the United States International Trade Commission shall establish from time to time for statistical purposes an enumeration of articles in such detail as in their judgment may be necessary …"). These agencies are not entitled to deference for an interpretation that is arbitrary and does not align with the HTSUS statutory language. *Genesco*, 102 F.Supp.2d at 482–84.

CBP cannot negate the fact that the "article description" of certain 10-digit SRNs is made legally and statutorily relevant by the Drawback Statute itself. Interpreting the statutory language of the Drawback Statute—specifically, whether a 10-digit SRN "begins with" the term "other"— is squarely within the realm of the CIT's proper role and jurisdiction. The proper interpretation of the Drawback Statute is subject to a *de novo* review with no deference afforded to these agencies' proposed construction.

As detailed above, the master rule of statutory construction for the *Tariff Act of 1930*, as of other statutes, is to interpret it so as to carry out the legislative intent. *Nat'l R.R. Passenger Corp.*, 414 U.S. at 458. The first source for the determination of that intent is the statutory language. *Merck*, 435 F.Supp.2d at 1258. It is presumed that statutory language is used in its normal sense and, when clear and unambiguous, an interpretation based upon a plain reading of that language should be followed. *Gazelle v. Shulkin*, 868 F.3d 1006, 1010 (Fed. Cir. 2017), cert. denied, —— U.S. ——, 138 S.Ct. 690 (2018) ("We may find Congress has expressed unambiguous intent by examining the statute's text, structure, and legislative history, and apply the relevant canons of interpretation.") (internal quotations and citations omitted).

A plain reading of the HTSUS within the context of the requirements for substitution unused merchandise drawback under 19 U.S.C. § 1313(j)(5) shows that the article description for

SRN 8803.30.00**30** begins with "For use in civil aircraft:" and ends with "Other." Under *Chevron*, if the statute is clear, there is no authority for CBP to interpret it. Determining the meaning of the terms used in the Drawback  Statute and the HTSUS is a question of law. Where, as here, the law is clear, no deference is given to CBP's interpretation.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully asserts that it has met its burden of showing that CBP's denial of Plaintiff's claim for substitution unused merchandise drawback (Drawback Claim No. No. AA6 03265726) is incorrect. Therefore, Plaintiff respectfully requests that the Court issue summary judgment in its favor and (1) order CBP to declare that merchandise classifiable under 10-digit HTSUS statistical reporting number 8803.30.0030 is eligible for substitution unused merchandise drawback under 19 U.S.C. § 1313(j)(5) (2018); (2) order CBP to correct its ACE Drawback Module to allow for substitution unused merchandise drawback claims where the imported and exported merchandise are classifiable under HTSUS statistical reporting number 8803.30.0030; (3) order CBP to approve Spirit's Drawback Claim No. AA6 03265726 and refund excess duties paid, with interest as provided by law; and (4) grant any other just and proper relief.

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Spirit AeroSystems, Inc.
320 South Canal Street
Suite 3300
Chicago, IL 60606
Telephone (312) 569-1000

By:     /s/ Wm. Randolph Rucker

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HON. CLAIRE R. KELLY, *JUDGE*

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC., )<br><br>　　　　　　　　　　Plaintiff, )<br>v. )<br><br>UNITED STATES; DEPARTMENT OF )<br>HOMELAND SECURITY; UNITED )<br>STATES CUSTOMS AND BORDER )<br>PROTECTION; MARK A. MORGAN, )<br>IN HIS OFFICIAL CAPACITY AS )<br>ACTING COMMISSIONER, UNITED )<br>STATES CUSTOMS AND BORDER )<br>PROTECTION, )<br>　　　　　　　　　　Defendants. ) | Court No.  20-00094 |

## <u>PLAINTIFF'S CERTIFICATION OF COMPLIANCE</u>

I,  Wm. Randolph Rucker, counsel for Plaintiff, Spirit Aerosystems, Inc., certify that the foregoing brief complies with the type-volume limitation set forth in the *Standard Chambers Procedures* and USCIT Rules 56 and 81. Specifically, this brief contains 13,049 words (excluding the parts of the brief exempted by *Standard Chambers Procedures* 2(C)) as determined by the word count feature of the word processing program used to create this brief.

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Spirit Aerosystems, Inc.
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone (312) 569-1000

By:　　/s/ Wm. Randolph Rucker
　　　　Wm. Randolph Rucker

Dated: March 24, 2023

1

**CERTIFICATE OF SERVICE**

Wm. Randolph Rucker certifies that he is an attorney with the law firm of Faegre Drinker

Biddle & Reath LLP, with offices located at 320 S. Canal Street, Suite 3300, Chicago, Illinois

60606, and that on March 24, 2023 on behalf of the Plaintiff herein, he served the attached Motion

for Summary Judgment on:

> Alexander J. Vanderweide
> U.S. Department of Justice
> Commercial Litigation Branch, Civil Division
> 26 Federal Plaza
> Suite 346
> New York, NY 10278
> Email: alexander.vanderweide@usdoj.gov

the attorney for the Defendant herein, by electronic service in the CM/ECF System of the Court of

International Trade.


/s/ Wm. Randolph Rucker

2

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, *JUDGE***

| | | |
|---|---|---|
| SPIRIT AEROSYSTEMS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES; DEPARTMENT OF | ) | Court No.  20-00094 |
| HOMELAND SECURITY; UNITED | ) | |
| STATES CUSTOMS AND BORDER | ) | |
| PROTECTION; MARK A. MORGAN, | ) | |
| IN HIS OFFICIAL CAPACITY AS | ) | |
| ACTING COMMISSIONER, UNITED | ) | |
| STATES CUSTOMS AND BORDER | ) | |
| PROTECTION, | ) | |
| Defendants. | ) | |

**TABLE OF CONTENTS FOR EXHIBITS**

| Exhibit | Full Citation | Confidential |
|---|---|---|
| 1 | Defendant's Responses to Plaintiff's Amended Interrogatories | No |
| 2 | Transcript of 30(b)(6) Deposition of Sarita Singh | No |
| 3 | Drawback Claim No. AA6 03265726 | No |
| 4 | List of 10-Digit SRNs Subject to Automated Claim Rejection | No |
| 5 | Preface to 33rd Edition of HTS | No |
| 6 | ITC's Responses to Deposition By Written Questions | No |
| 7 | Mar. 12, 2018 E-mail from Emily Simon | No |
| 8 | Drawback Error Dictionary | No |
| 9 | HTSUS Heading 6702 | No |
| 10 | HTSUS Heading 9404 | No |
| 11 | HTSUS Heading 8473 | No |
| 12 | ITC PowerPoint | No |
| 13 | HTSUS Heading 2606 | No |
| 14 | ITC Internal Memorandums | No |
| 15 | Preface to 9th Edition of HTSUS | No |