## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES; DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; MARK A. MORGAN, IN HIS OFFICIAL CAPACITY AS ACTING COMMISSIONER, UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | Court No. 20-00094 |

## <u>ORDER</u>

Upon consideration of defendants' cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, other papers on file, and upon due deliberation, it is hereby

**ORDERED** that defendants' cross-motion for summary judgment is hereby granted; and it is

**ORDERED** that plaintiff's motion for summary judgment is hereby denied; and it is further

**ORDERED** that judgment is entered for defendants and this action is dismissed.

_____
                                                JUDGE

Dated: _____
        New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

| | |
|---|---|
| _____ ) | |
| SPIRIT AEROSYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES; DEPARTMENT OF ) | Court No. 20-00094 |
| HOMELAND SECURITY; UNITED ) | |
| STATES CUSTOMS AND BORDER ) | |
| PROTECTION; MARK A. MORGAN, IN ) | |
| HIS OFFICIAL CAPACITY AS ACTING ) | |
| COMMISSIONER, UNITED STATES ) | |
| CUSTOMS AND BORDER PROTECTION, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, defendants, the United States *et al*., respectfully move for an order granting defendants' cross-motion for summary judgment, denying plaintiff's motion for summary judgment, and dismissing this action. The reasons for our cross-motion are set forth in the accompanying memorandum, defendants' response to plaintiff's Rule 56.3 statement of material facts not in issue, and defendants' Rule 56.3 statement of undisputed materials facts.

WHEREFORE, defendants respectfully request that an order be entered granting defendants' cross-motion for summary judgment, denying plaintiff's motion for summary judgment, entering judgment for defendants, dismissing this action, and granting defendants such other and further relief as may be just and appropriate.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:

/s/ Alexander Vanderweide
Matt Rabinovitch                    ALEXANDER VANDERWEIDE
Office of the Assistant Chief Counsel    Senior Trial Counsel
International Trade Litigation        Civil Division, U.S. Dept. of Justice
U.S. Customs and Border Protection    Commercial Litigation Branch
26 Federal Plaza
New York, New York 10278
Tel. (212) 264-9230 or 0482
Attorneys for Defendants

Dated: June 2, 2023

2

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

| | | |
|---|---|---|
| SPIRIT AEROSYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES; DEPARTMENT OF | ) | Court No. 20-00094 |
| HOMELAND SECURITY; UNITED | ) | |
| STATES CUSTOMS AND BORDER | ) | |
| PROTECTION; MARK A. MORGAN, IN | ) | |
| HIS OFFICIAL CAPACITY AS ACTING | ) | |
| COMMISSIONER, UNITED STATES | ) | |
| CUSTOMS AND BORDER PROTECTION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:

Matt Rabinovitch                          ALEXANDER VANDERWEIDE
Office of the Assistant Chief Counsel      Senior Trial Counsel
International Trade Litigation             Civil Division, U.S. Dept. of Justice
U.S. Customs and Border Protection        Commercial Litigation Branch
                                          26 Federal Plaza
                                          New York, New York 10278
                                          Tel. (212) 264-9230 or 0482
                                          Attorneys for Defendants

Dated: June 2, 2023

# TABLE OF CONTENTS

BACKGROUND ................................................................................................... 1

QUESTION PRESENTED .................................................................................. 4

SUMMARY OF ARGUMENT ........................................................................... 4

ARGUMENT ....................................................................................................... 5

I.   STANDARD OF REVIEW ..................................................................... 5

II.   DRAWBACK ELIGIBILITY UNDER 19 U.S.C § 1313(j)(5) IS DETERMINED
     AT THE 8- AND 10-DIGIT NUMERICAL LEVELS ONLY ...................................... 6

   A.   The Applicable Statutory And Regulatory Framework .................................. 6

   B.   CBP's Programming Of The ACE Drawback Module Implements the Plain
        Terms Of Section 1313(j)(5).......................................................................... 9

   C.   In Contrast To CBP's Straightforward And Consistent Application Of 19 U.S.C. §
        1313(j)(5), Spirit's Interpretation Is Not Supported By The Statute ............................ 15

   D.   Spirit's Reliance On Certain Canons Of Construction Is Neither Appropriate
        Nor Persuasive ............................................................................................... 25

   E.   CBP's Implementation Of 19 U.S.C. § 1313(j)(5) Accords With Congressional
        Intent, Spirit's Interpretation Does Not ....................................................... 29

CONCLUSION .................................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).............................................................................................. 5

*BP America Production Co. v. Burton*,
549 U.S. 84 (2006)............................................................................................... 11

*Candle Corp. of Am. v. United States*,
374 F.3d 1087 (Fed. Cir. 2004)............................................................................ 9

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ..................................................................................... 5

*Connecticut Nat. Bank v. Germain,*
503 U.S. 249 (1992) ................................................................................... 26

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,*
447 U.S. 102 (1980) ..................................................................................... 9

*Darby v. Cisneros,*
509 U.S. 137 (1993) ................................................................................... 29

*EM Indus Inc. v. United States,*
999 F. Supp. 1473 (Ct. Int'l Trade 1998) ................................................... 32

*Graham Engineering Corp. v. United States,*
510 F.3d 1385 (Fed. Cir. 2007) .................................................................... 8

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
530 U.S. 1 (2000) ....................................................................................... 11

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ..................................................................................... 6

*Morales v. Trans World Airlines, Inc.,*
504 U.S. 374 (1992) ................................................................................... 23

*Phone-Mate, Inc. v. United States,*
690 F. Supp. 1048 (Ct. Int'l Tr. 1988)
*aff'd,* 867 F.2d 1404 (Fed. Cir. 1989) .......................................................... 6

*Pillowtex Corp. v. United States,*
171 F.3d 1370 (Fed. Cir. 1999) .................................................................. 28

*R.T. Foods, Inc. v. United States,*
757 F.3d 1349 (Fed. Cir. 2014) .................................................................. 32

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
566 U.S. 639 (2012) ................................................................................... 23

*Rice v. Rehner,*
463 U.S. 713 (1983) ................................................................................... 26

*Schlumberger Tech. Corp. v. United States,*
91 F. Supp. 3d 1304 (Ct. Int'l Trade 2015) .............................................. 28

*Sebelius v. Cloer*,
569 U.S. 369 (2013) ......................................................................................... 10

*Texas Apparel Co. v. United States*,
698 F. Supp. 932 (Ct. Int'l Tr. 1988)
*aff'd*, 883 F.2d 66 (Fed. Cir.1989) .................................................................... 6

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ......................................................................................... 30

*United States v. Pan Pac. Textile Group Inc.*,
276 F. Supp. 2d 1316 (Ct. Int'l Tr. 2003) ........................................................ 6

*United States v. UPS Customhouse Brokerage*,
558 F. Supp. 2d 1331 (Ct. Int'l Trade 2008)
*aff'd in part, vacated in part,* 575 F.3d 1376 (Fed. Cir. 2009) ............................ 27, 28

*Whitman v. Am. Trucking Associations*,
531 U.S. 457 (2001) ......................................................................................... 23

**Harmonized Tariff Schedule of the United States**

General Statistical Note 2 ............................................................................. 7, 16

General Statistic Note 2(a)(i) ............................................................................ 16

General Statistic Note 3(a) ................................................................................ 7

Explanatory Note to GRI 6 ......................................................................... 13, 14

Chapter 84

  Heading 8473

    Subheading 8473.30.1000 ................................................................. 28

    Subheading 8473.30.2000 ................................................................. 28

    Subheading 8473.30.3000 ................................................................. 28

    Subheading 8473.30.5000 ................................................................. 28

    Subheading 8473.30.6000 ................................................................. 28

    Subheading 8473.30.9000 ................................................................. 28

Chapter 85

Heading 8504

Subheading 8504.90.96 .................................................................................... 18, 28

Subheading 8504.90.9610 ............................................................................... 18

Subheading 8504.90.9630 ............................................................................... 18

Subheading 8504.90.9634 ............................................................................... 18, 35

Subheading 8504.90.9638 ............................................................................... 18, 35

Subheading 8504.90.9642 ............................................................................... 18, 35

Subheading 8504.90.9646 ............................................................................... 18

Subheading 8504.90.9650 ............................................................................... 18, 35

Subheading 8504.90.9690 ............................................................................... 18

Chapter 87

Heading 8708

Subheading 8708.99 ...................................................................................... 21, 22

Subheading 8708.99.0300 ............................................................................... 22

Subheading 8708.99.0600 ............................................................................... 22

Subheading 8708.99.1600 ............................................................................... 21, 22

Subheading 8708.99.2300 ............................................................................... 21, 22

Subheading 8708.99.4100 ............................................................................... 21

Subheading 8708.99.48 .................................................................................. 22

Subheading 8708.99.4810 ............................................................................... 22

Subheading 8708.99.4850 ............................................................................... 21, 22

Chapter 88

Heading 8803..................................................................................................33

    Subheading 8803.30.00.................................................................................*passim*

    Subheading 8803.30.0010...........................................................................33

    Subheading 8803.30.0015.........................................................................*passim*

    Subheading 8803.30.0030.........................................................................*passim*

    Subheading 8803.30.0050...........................................................................34

    Subheading 8803.30.0060............................................................13, 14, 25, 27, 33

**Statutes**

19 U.S.C. § 1313.............................................................................................10

19 U.S.C. § 1313(b)..........................................................................................30

19 U.S.C. § 1313(*l*)(1).......................................................................................8

19 U.S.C. § 1313(j)(2).................................................................................2, 12, 30

19 U.S.C. § 1313(j)(2)(A)....................................................................................2

19 U.S.C. § 1313(j)(5)..................................................................................*passim*

19 U.S.C. § 1313(j)(5)(A)..............................................................................*passim*

19 U.S.C. § 1313(j)(5)(B)..............................................................................*passim*

19 U.S.C. § 1313(j)(5)(B)(ii).........................................................................*passim*

19 U.S.C. § 1484(f)........................................................................................6, 24

Section 301 of the Trade Act of 1974.....................................................................2

Section 484(f) of the Tariff Act of 1930.......................................................8, 24, 34

The Trade Facilitation and Trade Enforcement Act of 2015,
Pub. L. No. 114-15, 130 Stat 112 (2016)...........................................................*passim*

**Rules**

USCIT Rule 56 ..............................................................................................1, 5

USCIT Rule 56(c)..............................................................................................5

**Regulations**

19 C.F.R. § 190.2 ........................................................................................................... 8

**Other Authorities**

*Modernized Drawback* 83 FR 37886 (Aug. 2, 2018) ........................................... 30, 31

*Modernized Drawback* 83 FR 64942 (Dec. 18, 2018) ........................................... 8, 31

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Tests (2012) ...... 9

BEGIN WITH, available at https://idioms.thefreedictionary.com/begin+with .......................... 10

TO BEGIN WITH; BEGIN, available at https://www.merriam-webster.com/dictionary/begin. 10

WITH, available at https://www.merriam-webster.com/dictionary/with ................................... 10

HRL 086148 (Jan. 3, 1991) .............................................................................................. 28

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

_____
|                                                          )
SPIRIT AEROSYSTEMS, INC.,                 )
|                                                          )
|                    Plaintiff,                          )
|                                                          )
|            v.                                            )
|                                                          )
UNITED STATES; DEPARTMENT OF        )        Court No. 20-00094
HOMELAND SECURITY; UNITED            )
STATES CUSTOMS AND BORDER           )
PROTECTION; MARK A. MORGAN, IN     )
HIS OFFICIAL CAPACITY AS ACTING      )
COMMISSIONER, UNITED STATES         )
CUSTOMS AND BORDER PROTECTION,  )
|                                                          )
|                    Defendants.                       )
_____)

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of International Trade (USCIT), defendants, United States *et al.* (the Government), hereby submit this memorandum in support of their cross-motion for summary judgment and response in opposition to plaintiff's, Spirit Aerosystems, Inc. (Spirit), motion for summary judgment.

**BACKGROUND**

This action concerns Spirit's unused substitution drawback claim, Drawback Claim No. AA6 03265276, and its underlying consumption entry, Entry No. EBS-0920213-5, filed at the Port of Los Angeles/Long Beach on December 29, 2018.  ECF No. 1, Summons; ECF No. 6, Compl. ¶¶ 13-14.  Upon liquidation, Spirit's imported merchandise was classified by U.S. Customs and Border Protection (CBP) under subheading 8803.30.00 of the Harmonized Tariff

Schedule of the United States (HTSUS), a duty-free provision that provided, at that time, for "Parts of goods of heading 8801 or 8802: . . . Other parts of airplanes or helicopters."[1]  As a product of China, Spirit's entered merchandise was also assessed 25% *ad valorem* duties pursuant to Section 301 of the Trade Act of 1974 (301 duties).  On January 29, 2020, Spirit attempted to file Drawback Claim No. AA6 03265726 in CBP's Automated Commercial Environment (ACE) in order to receive drawback of the 301 duties paid on the underlying consumption entry, as well as other fees, but the claim was automatically rejected in the ACE drawback module as being foreclosed by 19 U.S.C. § 1313(j)(5).

Generally, 19 U.S.C. § 1313(j)(2), as amended by the Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114–125, 130 Stat. 122 (2016), provides for the drawback of duties, taxes, and fees paid on imported merchandise—including 301 duties—based on the export or destruction of substituted merchandise that has not been used in the United States, so long as certain eligibility criteria are satisfied.  One requirement is for the exported or destroyed unused substituted merchandise to be classifiable under the same 8-digit HTSUS subheading provision as the designated imported merchandise.  19 U.S.C. § 1313(j)(2)(A).  Unused substitution drawback is further circumscribed by 19 U.S.C. § 1313(j)(5), which provides as follows:

> (A) For purposes of paragraph (2) and except as provided in subparagraph (B), merchandise may not be substituted for imported merchandise for drawback purposes based on the 8-digit HTS subheading number if the article description for the 8-digit HTS subheading number under which the imported merchandise is classified begins with the term "other".

---

[1] On January 27, 2022, heading 8806 was added to the HTSUS and heading 8803 was transferred to heading 8807.  *See* Chapter 88, HTSUS (2022).  Unless otherwise noted, reference to the HTSUS throughout this brief is to the version enacted at the time of Spirit's drawback claim and entry of its designated imported merchandise.

> (B) In cases described in subparagraph (A), merchandise may be substituted for imported merchandise for drawback purposes if—
>
>> (i) the other merchandise and such imported merchandise are classifiable under the same 10-digit HTS statistical reporting number; and
>>
>> (ii) the article description for that 10-digit HTS statistical reporting number does not begin with the term "other".

Spirit's aircraft parts were ineligible for unused substitution drawback in accordance with section 1313(j)(5)(A) because the imported merchandise is classifiable under 8-digit HTS subheading number 8803.30.00, and the article description for this provision begins with the term "other" ("Other parts of airplanes or helicopters").  Although foreclosed by subsection (A), section 1313(j)(5)(B) would permit drawback if the imported and substituted aircraft parts are both classifiable under the same 10-digit HTS statistical reporting number (SRN), and the article description for that number does not begin with the term "other."

Here, the three SRNs under HTSUS subheading 8803.30.00 are set forth as follows:

| Heading/ Subheading | Stat. Suffix | Article Description | Rates of Duty |
|---|---|---|---|
| 8803 | | Parts of goods of heading 8801 or 8802:<br>*** | |
| 8803.30.00 | | Other parts of airplanes or helicopters……………… | Free |
| | | For use in civil aircraft: | |
| | 15 | For use by the Department of Defense or the United States Coast Guard…………………. | |
| | 30 | Other ……………………………………... | |
| | 60 | Other………………………………………… | |

Spirit contends that it has satisfied the criteria for an unused substitution drawback claim under subsection (B) because (1) its imported and substitute merchandise are both classifiable under SRN 8803.30.0030, and (2) the article description for this SRN does not begin with the term "Other," but rather, begins with the phrase "For use in civil aircraft."  We agree with Spirit

that its imported and substituted aircraft parts are classifiable under SRN 8803.30.0030, but we

disagree that this SRN does not begin with the term "Other."  For the reasons discussed below,

CBP properly rejected Drawback Claim No. AA6 03265726 as ineligible for unused substitution

drawback under 19 U.S.C. § 1313(j)(5)(A) and (B)(ii).  Accordingly, our cross-motion for

summary judgment should be granted, plaintiff's motion for summary judgment should be

denied, and this action should be dismissed.

## QUESTION PRESENTED

Whether the article description for SRN 8803.30.0030 begins with the term "other",

thereby foreclosing Spirit's claim for unused substitution drawback for its imports of aircraft

parts.

## SUMMARY OF ARGUMENT

CBP correctly rejected Spirit's drawback claim.  Under a plain reading of the drawback

and tariff statutes, the article description for the 10-digit SRN 8803.30.0030 is "Other," and thus,

merchandise classifiable in this SRN is foreclosed from unused substitution drawback by 19

U.S.C. § 1313(j)(5)(B)(ii).  Section 1313(j)(5) provides that the article description for a given

HTSUS subheading or SRN is located at the 8- and 10-digit numbers respectively.  CBP has

programmed its ACE drawback module accordingly, which implements the plain language of the

drawback statute as it applies to the tariff statute, with readily ascertainable results.

The statute does not provide, as Spirit advocates, for consideration of numerically-

unaligned text between the 8- and 10-digit levels, such as "For use in civil aircraft" here, to

determine drawback eligibility under section 1313(j)(5).  Not only does Spirit's interpretation

find no authority in the plain text of section 1313(j)(5), nor support from non-binding canons of

construction, but it also collapses separate and distinct 10-digit SRN categories of merchandise

into one all-consuming statistical annotation. Moreover, Spirit's approach fails to consistently identify the beginning of the article description for every 10-digit SRN. This confusion and ambiguity, which only arises under Spirit's reading of the drawback statute, is highlighted by instances in the tariff where one indented level of numerically unaligned text between the 8- and 10-digits begins with "other," and a second level does not. In such instances, the eligibility, or lack thereof, of numerous SRNs depends on an entirely subjective construction of the tariff, with unpredictable and often absurd results.

Spirit's approach is unsupported by the plain language of the statute, and contrary to Congress's intent to simplify drawback claims and restrict unused substitution drawback under dual HTS subheading and SRN basket provisions (*i.e.*, provisions that begin with "other" at both the 8- and 10-digit levels, so called "other" "other" provisions). By contrast, CBP's straightforward implementation of section 1313(j)(5) accords with TFTEA's goal to modernize the drawback statute, which standardized the drawback process for both claimants and administrators, with the aim of producing predictable outcomes, all while foreclosing unused substitution drawback under "other" "other" basket provisions.

## <u>ARGUMENT</u>

### I.   STANDARD OF REVIEW

Under USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On a motion for summary judgment, the Court determines whether there are any factual disputes that are material to the resolution of the action. *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986); *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct.

Int'l Tr. 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990) (citations

omitted).  "The court may not resolve or try factual issues on a motion for summary judgment."

*Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Tr. 1988), *aff'd*, 867 F.2d

1404 (Fed. Cir. 1989) (citation omitted).  In determining whether a genuine issue of fact exists,

the Court reviews the evidence submitted, drawing all inferences against the moving party.  *See*

*United States v. Pan Pac. Textile Group Inc.*, 276 F. Supp. 2d 1316, 1319 (Ct. Int'l Tr. 2003);

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Here, there are

no material facts in dispute to preclude summary judgment in favor of the Government.

## II.   DRAWBACK ELIGIBILITY UNDER 19 U.S.C. § 1313(j)(5) IS DETERMINED AT THE 8- AND 10-DIGIT NUMERICAL LEVELS ONLY

### A.  The Applicable Statutory And Regulatory Framework

Spirit contends that "since CBP is not exclusively charged with administering the SRNs,

deference to its interpretation of the SRN 8803.30.0030 article description language is not

warranted."  Pl. Mot. at 10.  Spirit is correct that the SRNs are not exclusively administered by

CBP, but the agency administers the drawback statute, which specifically includes "other" 10-

digit SRNs within its purview—a point that Spirit seemingly recognizes later in its brief.  *See* Pl.

Mot. at 43 ("CBP cannot negate the fact that the "article description" of certain 10-digit SRNs is

made legally and statutorily relevant by the Drawback Statute itself.").

As recounted by Spirit in its brief, 10-digit SRNs are included with the HTS in

accordance with 19 U.S.C. § 1484(f)[2], which directs the Secretary of the Treasury (as delegated

---

[2] 19 U.S.C. § 1484(f) states that:

> The Secretary, the Secretary of Commerce, and the United States
> International Trade Commission shall establish from time to time
> for statistical purposes an enumeration of articles in such detail as

to CBP), the Secretary of Commerce (as delegated to the U.S. Census Bureau), and the United

States International Trade Commission (ITC) to establish and determine appropriate statistical

annotations.  In contrast, the legal text of the HTSUS, which is established by Congress, does not

include the 10-digit SRNs.  *See* HTSUS General Statistical Notes 2 and, in relevant part, 3(a)

(2023):

> 2. Statistical Annotations.
>
> (a) The statistical annotations to the Harmonized Tariff Schedule
> of the United States consist of--
>> (i) the 2-digit statistical suffixes and any article descriptions
>> applicable thereto,
>> (ii) the indicated units of quantity, and
>> (iii) the statistical notes and annexes.
> (b) The legal text of the Harmonized Tariff Schedule of the United
> States consists of the remaining text as more specifically identified
> in the general rules of interpretation.
>
> 3. Statistical Reporting Number.
>
> (a) Except as provided in paragraph (b) of this note, and in the
> absence of specific instructions to the contrary elsewhere, the
> statistical reporting number for an article consists of the 10-digit
> number formed by combining the 8-digit subheading number with
> the appropriate 2-digit statistical suffix….

*See also* Pl. Ex. 5, Preface to the 33rd Edition of the HTS, at ITC0039, fn. 3 ("The non-legal text

[of the HTS] includes the 10-digit statistical reporting numbers (annotations), notes, annexes,

---

> in their judgment may be necessary, comprehending all
> merchandise imported into the United States and exported from the
> United States, and shall seek, in conjunction with statistical
> programs for domestic production and programs for achieving
> international harmonization of trade statistics, to establish the
> comparability thereof with such enumeration of articles. All import
> entries and export declarations shall include or have attached
> thereto an accurate statement specifying, in terms of such detailed
> enumeration, the kinds and quantities of all merchandise imported
> and exported and the value of the total quantity of each kind of
> article.

suffixes, and units of quantity; table of contents; footnotes; index; and similar elements."), and at ITC0040 ("Statistical provisions that may appear at the 10-digit level do not affect the legal classification of goods in trade.").

Even though the 10-digit SRNs are approved by the section 484(f) committee agencies and are not part of the legal text of the HTSUS, Congress tasked CBP with implementing TFTEA's changes to the drawback statute, which includes the scope and application of "other" 10-digit SRNs. *See* 19 U.S.C. § 1313(*l*)(1) ("Allowance of the privileges provided for in this section shall be subject to compliance with such rules and regulations as the Secretary of the Treasury shall prescribe."); *Graham Engineering Corp. v. United States*, 510 F.3d 1385, 1389 (Fed. Cir. 2007) ("The rulemaking authority vested in the agency by subsection (*l*) explicitly conditions allowance of the benefits of section 1313 on compliance with regulations Customs has prescribed."); *Modernized Drawback,* 83 FR 64942 (Dec. 18, 2018) (Final Rule) ("This document adopts as final, with changes, proposed amendments to the U.S. Customs and Border Protection (CBP) regulations implementing changes to the drawback regulations, as directed by the Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA)").

Thus, although 10-digit SRNs are not statutory when classifying merchandise under the HTSUS, Congress made the SRNs statutory when determining the eligibility of unused substitution drawback, and it empowered CBP to carry out TFTEA's changes to the drawback statute.  To that end, the regulations promulgated by CBP to implement TFTEA's changes to 19 U.S.C. § 1313(j)(5) essentially mirror the terms of the statute itself.  *See* 19 C.F.R. § 190.2 at *Substituted merchandise or articles* (3), providing in relevant part, that:

> …when the 8-digit HTSUS subheading number under which the
> imported merchandise is classified begins with the term "other,"
> then the other merchandise may be substituted for imported
> merchandise for drawback purposes if the other merchandise and

such imported merchandise are classifiable under the same 10-digit HTSUS statistical reporting number and the article description for that 10-digit HTSUS statistical reporting number does not begin with the term "other"…

CBP, therefore, programmed the ACE drawback module to reject drawback claims for unused merchandise if the first word in the "Article Description" column of the HTSUS that is aligned with a given 8-digit subheading number and 10-digit statistical reporting number is "other." *See* Defs' SOF ⁋ 1; ECF 39-1, Pl. Ex. 1, Defs' Resp. to Pl's Am. 1st Set of Rogs Nos. 14, 16, 17, 20 (explaining generally and in detail how ACE is programmed to implement section 1313(j)(5)). This programming reflects the plain meaning of section 1313(j)(5) and should be sustained.

## B. CBP's Programming Of The ACE Drawback Module Implements The Plain Terms Of Section 1313(j)(5)

"Absent a clearly expressed legislative intention to the contrary, [the statute's plain] language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc*., 447 U.S. 102, 108 (1980). Further, the "whole-text canon" "calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TESTS at 167 (2012); *see also Candle Corp. of Am. v. United States*, 374 F.3d 1087, 1093 (Fed. Cir. 2004) (a court "will not look merely to a particular clause in which general words may be used but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give it such a construction as will carry into execution the will of the Legislature.") (citation omitted).

19 U.S.C. § 1313(j)(5)(B) permits unused substitution drawback when the imported and substituted merchandise are classifiable under the same 10-digit SRN and "the article description for that 10-digit HTS statistical reporting number does not begin with the term 'other.'" Although neither 19 U.S.C. § 1313 nor the HTSUS define the term "article description" or the phrase "begin with," CBP has programmed its ACE drawback module so that the article description for a given 10-digit SRN is the HTSUS text in the "Article Description" column that aligns with the specific 10-digit statistical reporting number.  Thus, if the first word in the HTSUS "Article Description" column that immediately follows and aligns with an 8-digit HTSUS subheading number and the two digits listed in the "Stat. Suffix" column of the HTSUS is "other", then that 10-digit SRN is ineligible for drawback under section 1313(j)(5)(B)(ii). CBP's straightforward and practical reading of section 1313(j)(5), as it intersects with the tariff statute, consistently implements the plain terms of the statutory text: "article description" means the text in the "Article Description" column of the HTSUS, and "begins with" means the first word of text in the "Article Description" column that aligns with a particular 8-digit subheading number or 10-digit statistical reporting number.[3]

"As in any statutory construction case, '[w]e start, of course, with the statutory text,' and proceed from the understanding that '[u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning.'"  *Sebelius v. Cloer*, 569 U.S. 369, 376

---

[3] "Begin with" or "begins with" are idioms that commonly mean "{t}o start with someone or something; to have someone or something be the first in a series" and "to start off a sequence with someone or something."  https://idioms.thefreedictionary.com/begin+with  (last visited June 1, 2023).  Similarly, the phrase "to begin with" means "as the first thing to be considered." https://www.merriam-webster.com/dictionary/begin (last visited June 1, 2023).  Standing alone, in the context of 19 U.S.C. § 1313(j)(5), the word "begin" means "to go into the first part of a process" and "to have a starting point," *see id.,* and the word "with" is "used as a function word to indicate combination, accompaniment, presence, or addition" and "in respect to : so far as concerns." https://www.merriam-webster.com/dictionary/with (last visited June 1, 2023).

(2013) (*quoting BP America Production Co. v. Burton*, 549 U.S. 84, 91 (2006)).  "We reiterate that 'when [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'"  *Id*. at 381 (*quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)) (additional internal quotation marks omitted).

As stated by its plain terms, section 1313(j)(5) concerns the eligibility of unused substitution drawback at the 8- and 10-digit number levels only.  The statute does not speak to or otherwise reference text that is unaligned with, and between, a specific 8-digit HTSUS subheading number or a 10-digit SRN.  Rather, the eligibility of drawback under section 1313(j)(5)(A) is "based on the 8-digit HTS subheading ***number***" and "the article description ***for the 8-digit HTS subheading number***…" 19 U.S.C. § 1313(j)(5)(A) (emphasis added). Similarly, section 1313(j)(5)(B)(ii) specifically concerns whether "the article description ***for that 10-digit HTS statistical reporting number*** does not begin with the term 'other.'"  19 U.S.C. § 1313(j)(5)(B)(ii) (emphasis added).  The term "for" refers to the descriptive text that aligns with the "8-digit HTS subheading number" and "10-digit HTS statistical reporting number." Congress did not use the term "subheading" alone or loosely deploy "statistical annotation." Instead, the statute specifically concerns the descriptive text that begins the 8-digit subheading number and 10-digit statistical reporting number.  Section 1313(j)(5) thus locates the eligibility of unused substitution drawback at the 8th and 10th digit numerical levels only; it does not permit CBP, when implementing the drawback statute, to ignore the article descriptions at the statutory 8- and 10-digit numbered levels in favor of unnumbered, unaligned, and non-statutory article descriptions.

As such, when programming the ACE drawback module to accord with TFTEA's changes to the drawback statute, CBP has given effect to the specific terms of 19 U.S.C. § 1313(j)(5) only.  To give operative effect to unaligned and unnumbered text—text that does not match the specific article descriptions at the 8- and 10-digit numerical levels—would run afoul of the very statute that CBP is tasked to implement.  *See e.g.*, ECF No. 39-2, Pl. Ex. 2, Singh Depo. at 37-39 (testifying that drawback eligibility under section 1313(j)(2), as outlined by Congress in TFTEA, concerns the 8- and 10-digit lines only); at 60 (explaining that TFTEA "references 10-digit and the 8-digit.  It does not reference any in-between language."); at 63-64 (stating that Congress did not authorize CBP to take indented language "in between" the 8th and 10th digit and substitute that language for language provided on the 8th and 10th digit lines).

Accordingly here, the article description for "the 8-digit HTS subheading number" 8803.30.00 is "Other parts of airplanes or helicopters."  Because the article description for this subheading unambiguously begins with the term "Other," unused substitution drawback on merchandise classified under this provision is foreclosed by 19 U.S.C. § 1313(j)(5)(A). Similarly, "the article description for [the] 10-digit HTS statistical reporting number" at issue, 8803.30.0030, begins and ends with "Other."  As such, unused substitution drawback on merchandise classifiable under this SRN is foreclosed by 19 U.S.C. § 1313(j)(5)(B).

Focusing section 1313(j)(5) drawback eligibility at the specific 8-digit and 10-digit numbered levels tracks with how basic tariff terms, such as "heading" and "subheading," are construed and understood, as evidenced by the HTS prefaces and CBP publications cited by Spirit.  *See, e.g.,* Pl. Mot. at 14, *citing* HTSUS (2023) Preface to 35th Edition at n.5 ("A 'heading' is a provision whose article description is not indented, while a 'subheading' (6- or 8- digit) has an indented and subordinate description covering a subset of the heading's product scope."); *id.*,

*citing* "What Every Member of the Trade Community Should Know About: Tariff Classification" (May 2004) ("The first column is entitled "Headings/Subheadings" and "contains the 4-digit, 6-digit and 8-digit numbers assigned to the class of goods described in the third column (i.e., article descriptions)."); *id*. at 16, *citing* HTSUS Preface (2023) at pg. 6 ("Merchandise must be described by the superior 4-, 6-, and/or 8-digit legal provision of the HTS in order to be reported under any 10-digit statistical reporting number").  Taken together, these sources highlight that key terms of the annotated HTSUS operate at their respective even-numbered numerical levels: "headings" are provided for at the 4-digit level; "subheadings" at the 6- and 8-digit levels; and "statistical reporting numbers" at the 10-digit level.

We do not dispute that the entirety of the text in the HTSUS "Article Description" column, including any text that does not align with a specific 4-digit heading, 6- or 8-digit subheading, or 10-digit SRN, are relevant to the product coverage and ultimate classification of imported merchandise.  For example here, aircraft parts falling under 4-digit HTSUS heading 8803 that are not more specifically described by another 6- or 8-digit subheading are classifiable in 8-digit HTSUS subheading 8803.30.00 as "Other parts of airplanes or helicopters."  The article description text following this subheading—which is not part of the legal text of the HTSUS as it occurs after the 8-digit level—enables statistical classification under one of the three listed 10-digit SRNs based upon the use of that part.  When comparing the "Article Description" text at the first level of indentation under HTSUS subheading 8803.30.00, if an airplane part is **not** "For use in civil aircraft"—as the unnumbered and numerically unaligned phrase provides—then the appropriate designation for that part is SRN 8803.30.0060 ("Other").[4]

---

[4] The Explanatory Note (EN) to General Rule of Interpretation (GRI) 6—which governs the classification of goods at the subheading level—is instructive here, and provides in, relevant part, as follows:

If, on the other hand, the part is "For use in civil aircraft," that is not the end of the inquiry, however, and thus no specific statistical reporting number is assigned to "For use in civil aircraft." Rather, at the second indentation level below "For use in civil aircraft" are SRN 8803.30.0015 ("For use by the Department of Defense or the United States Coast Guard") and SRN 8803.30.0030 ("Other"). If a civil aircraft part is used by the Department of Defense or U.S. Coast Guard, then it is described by SRN 8803.30.0015, and if a civil aircraft part is not used by such agencies, then it is described by SRN 8803.30.0030. The phrase "For use in civil aircraft" is, therefore, "Article Description" text that aides in determining how an airplane part is used and, as a result, whether it is appropriately described by SRN 8803.30.0060 or by either SRN 8803.30.0015 or 8803.30.0030. *See* Pl. Ex. 2, Singh Depo. at 95-96, 99, 105 (explaining that all items classifiable in SRNs 8803.30.0015, 8803.30.0030, and 8803.30.0060 are always other airplane parts, and the phrase "For use in civil aircraft" and the text for the SRNs describe

---

(II) For the purposes of Rule 6, the following expressions have the meanings hereby assigned to them :

(a)      "subheadings at the same level" : one-dash subheadings (level 1) or two-dash subheadings (level 2).

> Thus, when considering the relative merits of two or more one-dash subheadings within a single heading in the context of Rule 3 (a), their specificity or kinship in relation to a given article is to be assessed solely on the basis of the texts of the competing one-dash subheadings. When the one-dash subheading that is most specific has been chosen and when that subheading is itself subdivided, then, and only then, shall the texts of the two-dash subheadings be taken into consideration for determining which two-dash subheading should be selected.

The EN to GRI 6 clarifies that only subheading terms at the same indented level are comparable when classifying merchandise. On this point, Spirit and the Government are in accord. *See* Pl. Mot. at 15 ("Only article description language at the same level of indentation may be compared to each other.").

14

the various uses of the parts).  But the phrase does not speak to whether an airplane part for civil aircraft is ultimately described by either SRN 8803.30.0015 or 8803.30.0030, and thus does not constitute the article description text for these 10-digit statistical reporting numbers.

Therefore, whereas as the entirety of the text in the "Article Description" column of the HTSUS—from the 4-digit heading through the 10-digit SRNs—may be relevant when classifying goods, drawback eligibility under section 1313(j)(5) is specifically premised on what term begins the article description for a particular "8-digit HTS subheading *number*" and "10-digit HTS statistical reporting *number*."  19 U.S.C. § 1313(j)(5) (emphasis added).  The article description text for that number is determinative, not any other superior, subsequent, between, unaligned, or unnumbered text.  Accordingly, CBP has programmed its ACE drawback module to give operational effect to the article description text for the specific 8-digit subheading and 10-digit SRN numbers only, as the drawback statute plainly provides.  Spirit's claim for drawback was thus properly rejected.

## C.  In Contrast To CBP's Straightforward And Consistent Application Of 19 U.S.C. § 1313(j)(5), Spirit's Interpretation Is Not Supported By The Statute

Spirit disagrees with CBP's approach, and argues that "a proper collective reading of the Drawback Statute and the HTSUS statistical language shows that the article description for SRN 8803.30.00**30** 'begins with' the phrase 'For use in civil aircraft:' and ends with the word 'Other'."  Pl. Mot. at 18 (emphasis in original).  Spirit's argument is premised on the following interpretive contention:

> Since the HTSUS language operates as a tabular hierarchy based on indentation, there is no requirement that article description language be on the same line as a particular tariff number to be part of the "article description" for that subheading or SRN. Instead, depending on the relevant article descriptions and indentations, the language next to a particular tariff number in the

> first or second columns of the HTSUS is likely showing what the
> article description for that subheading or SRN **ends with**.

Pl. Mot. at 16 (emphasis in original).  Spirit thus concludes that "For use in civil aircraft" is an

article description at the 10-digit SRN level.  *Id*. at 24.

Spirit suggests that HTSUS General Statistical Note 2(a)(i) supports this contention.  *See*

HTSUS General Statistical Note 2, *supra* at 7 (defining "the statistical annotations to the

[HTSUS]", in part, as "the 2-digit statistical suffixes and any article descriptions applicable

thereto").  Spirit asserts that "{t}he use of the words 'any' and plural 'descriptions' to describe

the statistical annotations indicates that there may be multiple article descriptions applicable to a

particular statistical suffix."  Pl. Mot. at 17.  But Spirit's assertion is not grammatically sound.

Because the terms "statistical annotations" and "2-digit statistical suffixes" in HTSUS General

Statistical Note 2(a)(i) are plural, so must be the phrase "any article descriptions."  In other

words, the statistical annotations (plural) to the HTSUS include the respective article

descriptions (plural) for all of the listed 2-digit statistical suffixes (plural).  In any event, the text

of the drawback statute clearly specifies that a particular 10-digit SRN will only have one article

description.  *See* 19 U.S.C. § 1313(j)(5)(B)(ii) ("*the article description* for that 10-digit HTS

statistical reporting number does not begin with the term 'other.'") (emphasis added).

Notwithstanding the lack of support for its contention and conclusion, Spirit's

interpretation of section 1313(j)(5) provides no logical and consistent starting point for what text

a particular 8-digit HTSUS subheading number or 10-digit SRN "begins with."  If the 4-digit

HTS heading text in the "Article Description" column is relevant to the article description for a

given 8-digit HTSUS subheading or 10-digit SRN—as arguably *all* superior text, whether

indented or not, from the 4th digit line on down, is relevant to merchandise classifiable in a given

8-digit HTSUS subheading number or 10-digit SRN—then under Spirit's view of section

1313(j)(5), the 4-digit HTS heading text may very well begin the article description for that particular subheading or SRN.  The same conclusion could be drawn with respect to any line of text between the 4-digit and 10-digit levels, with that text serving as the starting point for the article description of a 8-digit HTSUS subheading number or 10-digit SRN "depending on the relevant article descriptions and indentations."  This inexact and subjective approach to determining drawback eligibility invariably produces inconsistent results depending on which article descriptions and indentations preceding a given 8-digit HTSUS subheading number or 10-digit SRN are deemed "relevant," and fails to reflect the intent of the statute.

By way of example, HTSUS subheading 8504.90.96 and its various SRNs, as set forth in relevant part below, highlight the unworkability of Spirit's approach to ascertaining drawback eligibility under section 1313(j)(5).

| Heading/ Subheading | Stat. Suffix | Article Description |
|---|---|---|
| 8504 (con.) | | Electrical transformers, static converters (for example, rectifiers) and inductors; parts thereof: (con.) |
| 8504.90 | | Parts: |
| | | *** |
| | | Other: |
| | | *** |
| 8504.90.96 | | Other:............................................................... |
| | | Ferrites: |
| | 10 | For transformers........................................... |
| | 30 | Other........................................................... |
| | | Other Parts: |
| | | Of transformers: |
| | 34 | Laminations for incorporation into stacked cores........................................ |
| | 38 | Stacked cores for incorporation into transformers............................................ |
| | 42 | Wound cores for incorporation into transformers........................................... |
| | 46 | Other...................................................... |
| | 50 | Of static converters...................................... |
| | 90 | Other............................................................. |

17

Under Spirit's interpretation, the article description for HTSUS subheading 8504.90.96 could conceivably begin with "Electrical" at the 4-digit heading level, "Parts" at the 6-digit level, "Other" at the numerically unaligned level between the 6th and 8th digits, or at the 8-digit level "Other."  All are potentially "relevant article descriptions" to the subheading and listed SRNs.

In contrast, under CBP's implementation of the plain terms of section 1313(j)(5), HTSUS subheading 8504.90.96 begins with "Other," as that is the text numerically aligned at the 8-digit level, and merchandise classifiable under that subheading is ineligible for unused substitution drawback pursuant to section 1313(j)(5)(A).  Likewise, under a plain reading of section 1313(j)(5)(B), unused substitution drawback would be available for merchandise classifiable in SRNs 8504.90.9610 ("For transformers"), 8504.90.9634 ("Laminations for…"), 8504.90.9638 ("Stacked cores…"), 8504.90.9642 ("Wound cores…"), and 8504.90.9650 ("Of static converters.").  On the flip side, SRNs 8504.90.9630, 8504.90.9646, and 8504.90.9690 would all be ineligible for section 1313(j)(5)(B) drawback as the article descriptions for these SRNs begin with "Other".  Under this plain reading of the text, which is reflective of CBP's application of the statute, drawback eligibility is readily clear and concise, and uniformly ascertainable.

Spirit's attempt to include unaligned and unnumbered text as the starting point for a 10-digit SRN article description quickly muddies otherwise clear waters.  Take the language of HTSUS heading 8504 again as an example.  Would the article descriptions for SRNs 8504.90.9634, 8504.90.9638, 8504.90.9642, and 8504.90.9646 all begin with the immediately preceding indented and numerically unaligned text "Of transformers"?  If so, then these four SRNs would be eligible for section 1313(j)(5)(B) drawback, including SRN 8504.90.9646, which merely provides for "Other."  Yet "Of transformers" is itself preceded by a second level of indented and numerically unaligned text: "Other Parts."  Would "Other Parts" then serve as the

18

article description starting point for all of the SRNs that follow?  If so, then not only would all four of the SRNs listed below "Of transformers" become ineligible for section 1313(j)(5)(B) drawback, but so would SRNs 8504.90.9650 and 8504.90.9690, as these SRNs are also indented under "Other Parts", which begins with the word "Other."  Thus, even though the statistical annotations indented under "Other Parts" identify four distinct non-"other" categories of articles, Spirit's interpretation of section 1313(j)(5) would nonetheless categorize these SRNs as "other" "other" basket provisions, foreclosed from drawback.

Ascertaining which level of unaligned and unnumbered text actually begins the article description for a particular SRN, and thus controls the drawback eligibility of merchandise classifiable therein, becomes a subjective exercise in guesswork under Spirit's application of the drawback statute to the tariff statute.  Entire columns of SRNs flicker on either side of the drawback eligibility divide under an ill-defined rubric of suggested relevance.  Fortunately, CBP's implementation of the drawback statute avoids such unhelpful and ambiguous interpretative inquiries, and plainly grounds section 1313(j)(5) eligibility on the text aligned with an 8-digit subheading number or 10-digit statistical reporting number.

Spirit's consideration of the language that "ends" a subheading or SRN creates additional confusion.  *See e.g., supra* at 15-16, *citing* Pl. Mot. at 16; Pl. Mot. at 19 ("Instead, the structure of the HTSUS indicates that the article description language next to or on the same line as number in column 1 or column 2 of the HTSUS may be the end of that article description.").  Setting aside the fact that Congress specifically premised section 1313(j)(5) drawback eligibility based on what the article description for a particular 8-digit HTSUS subheading number or 10-digit SRN "begins with," and not "ends with," ascertaining exactly where the text of an article description ends raises more questions than answers.

For instance, the article description for the HTSUS 8-digit subheading number at issue, 8803.30.00, provides for "Other parts of airplanes or helicopters." There can be little dispute that the article description for this subheading begins with "Other," which renders the subheading, in and of itself, ineligible for drawback under 19 U.S.C. § 1313(j)(5)(A). Yet since there is no unnumbered and superior text that precedes the subheading, does 8803.30.00 also end with "Other", as would be the result under Spirit's interpretation of the statute? That cannot be. A six-word provision cannot logically begin and end with the same starting word; HTSUS subheading 8803.30.00 must, therefore, end with the word "helicopters." Although Spirit's beginning/end distinction for HTSUS subheading 8803.30.00 does not alter the provision's eligibility (or lack thereof) for drawback under section 1313(j)(5)(A), the distinction can become unintelligible at the SRN-level.

Following Spirit's argument to its logical endpoint, if "For use in civil aircraft" is an article description at the 10-digit SRN level, as Spirit contends, then the numerically aligned article description text for SRN 8803.30.0015 and 8803.30.0030, which are afforded their own indented text below "For use in civil aircraft", must necessarily constitute the 12th digit of the annotated HTSUS. But that cannot be. The HTSUS General Statistical Notes clearly specify that the statistical annotations and reporting numbers comprise two-digits, and only carry to the 10th digit; the tariff does not contemplate 12th digit text or numbers that otherwise "end" a 10-digit SRN. *See supra* at 7 (HTSUS General Statistical Notes 2 and, in relevant part, 3(a)). This is made abundantly evident here, as it is the article description text "For use by the Department of Defense or the United States Coast Guard" and "Other"—and not "For use in civil aircraft"—that are specifically assigned statistical reporting numbers at the 10-digit level.

To further illustrate the unsupported nature of Spirit's interpretation of the statute, we highlight the following example in the tariff.  As set forth in relevant part in the table below, 6-digit HTSUS subheading 8708.99, a basket provision providing for "Other," is followed by a series of 8-digit subheadings and 10-digit SRNs, with two lines of unaligned and unnumbered text between the 6th and 8th and/or 10th digit levels.

| Heading/ Subheading | Stat. Suffix | Article Description |
|---|---|---|
| 8708 (con.) | | Parts and accessories of the motor vehicles of headings 8701 to 8705: (con.) |
| | |    Other parts and accessories: (con.) |
| 8708.99 | |     Other: |
| | |       Parts of tractors suitable for agricultural use: |
| 8708.99.03 | 00 |         Vibration control goods containing rubber........ |
| 8708.99.06 | 00 |         Double flanged wheel hub units incorporating ball bearings........................................................ |
| 8708.99.16 | 00 |         Other parts for power trains............................... |
| 8708.99.23 | 00 |         Other................................................................... |
| | |       Parts of other tractors (except road tractors): |
| 8708.99.27 | 00 |         Vibration control goods containing rubber........ |
| 8708.99.31 | 00 |         Double flanged wheel hub units incorporating ball bearings........................................................ |
| 8708.99.41 | 00 |         Other parts for power trains............................... |
| 8708.99.48 | |         Other................................................................... |
| | 10 |           Tracklinks for track-laying tractors.............. |
| | 50 |           Other............................................................ |

Under CBP's plain reading of the drawback statute, SRNs 8708.99.1600, 8708.99.2300, 8708.99.4100, and 8708.99.4850 would be ineligible for drawback under section 1313(j)(5)(B)(ii) as the text for these provisions all begin with the word "Other"; all other listed SRNs would be eligible for drawback under the provision.  In contrast, the eligibility of the

various SRNs listed under HTSUS subheading 8708.99 in accordance with Spirit's application of the HTSUS to unused substitution drawback eligibility is a matter of guesswork.  For instance, because "Parts of tractors suitable for agricultural use" is numerically unaligned superior text to the 8 digit subheadings/10-digit SRNs that follow—SRNs 8708.99.0300, 8708.99.0600, 8708.99.1600, and 8708.99.2300—presumably all four SRNs would be eligible for drawback under section 1313(j)(5), even though the text aligned with SRNs 8708.99.1600 and 8708.99.2300 begin with the word "Other."  But what does the text for SRN 8708.99.1600 "end with" under Spirit's query: "Other" or "trains"?  Does "end with" mean the beginning of the end of the text aligned with an 8- or 10-digit number line, or the last word of that line?  It is unclear.

It is also unknown how HTSUS subheading 8-digit number 8708.99.48, the text of which simply states "Other," is to be construed under Spirit's approach.  Under CBP's straightforward application of the statutes, HTSUS subheading 8708.99.48 would be precluded from section 1313(j)(5)(A) drawback.  However, under Spirit's interpretation, because "Other" is indented underneath the superior but numerically unaligned "Parts of other tractors (except road tractors)," presumably the article description for 8708.99.48 would now begin with "Parts" (as would all other subheadings listed below "Parts of other tractors (except road tractors):") and end with "Other," and therefore, merchandise classifiable under the subheading would be eligible for drawback under section 1313(j)(5)(A).  As such, following the dictates of section 1313(j)(5)(A), which only looks to the SRNs for drawback eligibility if foreclosed at the 8-digit numerical level, SRNs 8708.99.4810 and 8708.99.4850 would now both be eligible for unused substitution drawback even though the text aligned with HTSUS subheading 8708.99.48 at the 8-digit numerical level and for SRN 8708.99.4850 at the 10-digit numerical level is both "Other."  Thus, under Spirit's reading of the tariff for unused substitution drawback purposes, an otherwise

22

"other" "other" SRN would be eligible for drawback under section 1313(j)(5)(A).  This is an untenable result, and the product of an unsupported reading of the tariff and drawback statutes. One that proves both under- and over-inclusive: provisions that describe merchandise at the 10-digit level with terms that are not "other" can be rendered ineligible for drawback as "other" "other" basket provisions; and dual "other" provisions at the 8- and 10-digit numerical levels can be made eligible for drawback if an indented superior term is not "other."

Ultimately, Spirit's reading of section 1313(j)(5), in contrast to CBP's plain reading of the statute, requires the statutory provision to encompass and give effect to terms that Congress saw fit not to include.  Indeed, Congress could have specified that the article description for a 10-digit SRN includes any unaligned or indented text in the HTSUS "Article Description" column that follows the 8-digit HTSUS subheading number but is not included on the numbered line for a 10-digit SRN.  But it did not.  In amending the drawback statute with TFTEA, Congress chose precise language that centered on the text for the 8-digit HTSUS subheading *number* and the 10-digit statistical reporting *number*.  Try as it may, Spirit cannot interpret the statute in an expansive manner that runs counter to the deployment of specific terms.  "[I]t is a commonplace of statutory construction that the specific governs the general."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (*quoting Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 384 (1992); *see also Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

Spirit's interpretation also effectively erases the distinctions between different SRNs.  If both SRN 8803.30.0015 and SRN 8803.30.0030 begin with the phrase "For use in civil aircraft,"

then it makes no difference for drawback eligibility purposes or otherwise whether or not a civil

airplane or helicopter part may be used by the Department of Defense or U.S. Coast Guard.  But

the inclusion of both SRN 8803.30.0015 and SRN 8803.30.0030 demonstrate that the section

484(f) committee saw fit to further distinguish between how civil aircraft parts are to be used,

beyond just their use in civil aircraft.  "For use in civil aircraft" is simply not the considered

endpoint of how an aircraft part may be used.  If it were, the phrase would have been afforded its

own SRN.  Spirit's reading, however, collapses the text of these two separate SRNs into one all-

encompassing statistical annotation, yet absurdly, with two different statistical reporting

numbers.  But SRN 8803.30.0015 and SRN 8803.30.0030 are distinct statistical reporting

numbers with different descriptive text, and the two SRNs must be afforded their respective

meanings, not just for drawback eligibility purposes, but for a number of reasons including:

> The statistical annotations contained in the HTS are used to gather
> trade data on specified classes of merchandise that are subsets of
> those indicated in legal provisions. The annotations (including
> their statistical suffixes and units of quantity) specify particular
> information that must be supplied on customs entry and
> withdrawal forms or in electronic filings with respect to imported
> or exported articles. As noted above, for all products other than
> those specified in the Notice to Exporters, HTS 10-digit provisions
> may be used in place of the provisions of Schedule B for reporting
> exports on the shipper's export declaration or under the program
> for electronic reporting of exports.

Pl. Ex. 5, 33rd Preface at ITC0047; *see also* 19 U.S.C. § 1484(f), *supra* at 6-7 (providing, in part,

that "All import entries and export declarations shall include or have attached thereto an accurate

statement specifying, in terms of such detailed enumeration, the kinds and quantities of all

merchandise imported and exported and the value of the total quantity of each kind of article.").

These aims—to accurately gather and report trade data, for specific inclusion on customs forms,

as a shorthand substitute for reporting exports—would be undermined if a single given statistical

annotation subsumed two or more (depending on the number of SRNs listed under superior and unnumbered text) statistical reporting numbers, as Spirit's interpretation would demand.

In stark contrast, CBP's implementation of the plain meaning of the drawback statute consistently preserves and affords the three SRNs under HTSUS subheading 8803.30.00 the meaning of their distinct statistical annotations: SRN 8803.30.0060 covers airplane and helicopter parts that are not used in civil aircraft; SRN 8803.30.0015 covers airplane and helicopter parts that are used in civil aircraft by the Department of Defense and U.S. Coast Guard; and SRN 8803.30.0030 covers the balance of all other civil aircraft parts.

### D.  Spirit's Reliance On Certain Canons Of Construction Is Neither Appropriate Nor Persuasive

Although the plain terms of the drawback statute center unused merchandise drawback eligibility on the descriptive text for the 8- and 10-digit numbers, Spirit seeks to ground its interpretation of section 1313(j)(5) on the "scope of subparts" and "punctuation" canons of construction.  Pl. Mot. 25-29.  Spirit applies these canons to stress that the colon in "For use in civil aircraft:" indicates that the phrase begins the article description for SRNs 8803.30.0015 and 8803.30.0030.  Drawing on the scope of subparts canon, Spirit concludes that

> This "For use in civil aircraft:" language also relates to the further indented language that follows—specifically the two phrases "For use by the Department of Defense or the United States Coast Guard" and "Other"—by indicating the beginning of the 10-digit article description language for these further-indented article description terms.

Pl. Mot. at 26.  Similarly, with respect to the punctuation canon, Spirit maintains that

> the colon after the text "For use in civil aircraft" below HTSUS 8-digit subheading 8803.30.00 associates this article description phrase with the two indented phrases that follow, which are further subdivisions/categories of this preceding language, indicating that the indented phrases are a continuation of the article description for these SRNs.

*Id.* at 27.

Spirit's invocation of these canons falls short both legally and as persuasive argument. To the first point,

> …canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there…When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete."

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations omitted); *see also Rice v. Rehner*, 463 U.S. 713, 732 (1983) ("More important, we have consistently refused to apply such a canon of construction when application would be tantamount to a formalistic disregard of congressional intent.").  Thus, the canons of construction are mere reference guides that are subservient to the plain meaning of statutory text.  As established above, drawback eligibility under section 1313(j)(5) is specifically based on "the 8-digit HTS subheading number" and "the article description for that 10-digit HTS statistical reporting number".  The descriptive text for a particular 8- or 10-digit number determines unused merchandise drawback eligibility, not the inclusion of a colon in superior and numerically-unaligned text.

That said, we recognize that "For use in civil aircraft:" clearly "relates" to, and is "associate[d]" with, merchandise that is ultimately classifiable in SRNs 8803.30.0015 and 8803.30.0030, as does all text in the "Article Description" column for HTSUS heading 8803 on down.  But as superior and numerically unaligned text, the phrase, regardless of the placement of the colon, does not constitute the article description *for* the statistical reporting numbers that follow, especially for determining drawback eligibility under section 1313(j)(5).  This is a point confirmed by the ITC during discovery.  *See* ECF 39-6, Pl. Ex. 6, ITC's Resp. to Pl.'s Written

Depo. Questions, at p. 14 ("The article description for HTS statistical reporting number 8803.30.0030 does not begin with the phrase 'For use in civil aircraft.' Rather, it is, 'Other.' The product coverage of the provision with the article description 'Other' is determined by taking into account the superior descriptions starting at the 4-digit heading level."), and at p. 15 ("While the phrase 'For use in civil aircraft' is relevant to finding the product coverage of the cited statistical reporting number, it is not part of the Article Description of 8803.30.0030.").

Yet Spirit questions the meaning of "For use in civil aircraft:" under CBP's approach if not as the article description for SRNs 8803.30.0015 and 8803.30.0030; Spirit thus concludes that the agency must have rendered the phrase surplusage.  Pl. Mot. at 29, 33-37, 40.  Spirit overlooks the obvious.  "For use in civil aircraft" is at the same level of indentation as SRN 8803.30.0060 ("Other"), and thus necessarily aides in distinguishing between airplane parts that are used in civil aircraft and those that are not.  But "For use in civil aircraft:" does not then also distinguish between civil aircraft parts used by the Department of Defense and U.S. Coast Guard and those that are not.  Rather, the statistical annotations for SRNs 8803.30.0015 and 8803.30.0030 perform that specific function, and thus unlike "For use in civil aircraft:", are afforded their respective statistical reporting numbers.  CBP's application of the plain meaning of the tariff and drawback statutes preserves this functional distinction.  Spirit, on the other hand, reads out the differences between SRNs 8803.30.0015 and 8803.30.0030 by beginning both statistical annotations with the same superior text.  Although "For use in civil aircraft:" assists in the classification of other airplane parts in SRN 8803.30.0015, 8803.30.0030, or 8803.30.0060, the phrase does not reach beyond its terms and speak to the separate and distinct categories of merchandise described by, and classifiable in, SRNs 8803.30.0015 and 8803.30.0030.

Nonetheless, throughout its brief, Spirit often cites *United States v. UPS Customhouse Brokerage*, 558 F. Supp. 2d 1331 (Ct. Int'l Trade 2008), *aff'd in part, vacated in part,* 575 F.3d 1376 (Fed. Cir. 2009), to further its contention that the colon in "For use in civil aircraft:" must operate to begin the article description for SRNs 8803.30.0015 and 8803.30.0030.  Pl. Mot. at 23, 27-28.  But the holding of *UPS* does not support Spirit's arguments.  In *UPS*, the relevant tariff provisions under consideration were as follows:

| | | |
|---|---|---|
| 8473.30 | | Parts and accessories of the machines of heading 8471: Not incorporating a cathode ray tube: |
| 8473.30.1000 | | Printed circuit assemblies |
| 8473.30.2000 | | Parts and accessories, including face plates and lock latches, of printed circuit assemblies |
| 8473.30.3000 | | Other parts for printers, specified in additional U.S. note 2 to this chapter |
| 8473.30.5000 | | Other |
| | Other: | |
| 8473.30.6000 | | Other parts for printers, specified in additional U.S. note 2 to this chapter |
| 8473.30.9000 | | Other |

The *UPS* Court simply found that the colons in the numerically-unaligned phrases "Not incorporating a cathode ray tube:" and "Other:" between the 6- and 8/10-digit levels "introduce" the list of merchandise classifiable thereunder.  "Under subheading 8473.30.9000, the colon introduces the categorical list of the ADP parts classifiable under it according to whether those parts and accessories either incorporate a CRT (*see, e.g.,* HTSUS 8473.30.6000) or do not incorporate a CRT (*see, e.g.,* HTSUS 8473.30.1000)."  558 F. Supp. 2d at 1348-49.  The Court in no way concluded that "Not incorporating a cathode ray tube:" and "Other:" actually begin, let alone constitute, the article description of the subheadings that they "introduce."[5]

---

[5] Spirit's reliance on CBP ruling HRL 086148 (Jan. 3, 1991), *Pillowtex Corp. v. United States*, 171 F.3d 1370 (Fed. Cir. 1999), and *Schlumberger Tech. Corp. v. United States*, 91 F. Supp. 3d 1304 (Ct. Int'l Trade 2015) suffers from the same lack of relevance as *UPS*.  Pl. Mot. at 19-22, 28-29.  Like with *UPS*, these classification cases and ruling merely reflect other instances where

As a final note on punctuation, we again point to the example of "Other Parts:" and "Of transformers:" listed under HTSUS subheading 8504.90.96, discussed *supra* at 17-19.  This example showcases the pitfalls of prioritizing a colon in superior and numerically-unaligned text when there are two separate indented terms, both with colons, and arbitrarily declaring the supremacy of one indented term over the other determines whether entire of columns of SRNs— some beginning with "Other," some not—are eligible for section 1313(j)(5) drawback. Fortunately, the plain text of the drawback statute avoids such confusion by not including numerically-unaligned terms or phrases, with or without colons, when determining unused merchandise drawback eligibility; instead, the statute speaks only to the description for the 8-digit subheading numbers and 10-digit statistical reporting numbers.

### E.  CBP's Implementation Of 19 U.S.C. § 1313(j)(5) Accords With Congressional Intent, Spirit's Interpretation Does Not

CBP's programing of the ACE drawback module consistently implements the plain meaning of 19 U.S.C. § 1313(j)(5).  It also effects TFTEA's goal to modernize and streamline the drawback regime.

Although an examination of legislative history is not required when statutory text is unambiguous, courts often do so, especially when confirming their understanding of the text. *See, e.g., Darby v. Cisneros,* 509 U.S. 137, 147 (1993) ("Recourse to the legislative history of § 10(c) is unnecessary in light of the plain meaning of the statutory text.  Nevertheless, we consider that history briefly because both sides have spent much of their time arguing about its

---

numerically-unaligned text with a colon relates to the products classifiable in the specific SRNs listed below the text.  But the ruling and cases do not stand for the proposition that such text forms the article description of the specific SRNs that follow when determining section 1313(j)(5) drawback eligibility.

implications."); *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 209 (1994) (discussing the legislative history of the Mine Act to confirm the Court's reading of the statute).

Prior to TFTEA, claiming, reviewing, and receiving unused substitution drawback was an inexact, paper-based, and laborious process.  As CBP explained in *Modernized Drawback*, 83 FR 37886, 37889 (Aug. 2, 2018) (Notice of proposed rulemaking), TFTEA fundamentally altered the prior drawback landscape:

> Section 906(b) provides a new standard for determining which merchandise may be substituted for imported merchandise as the basis for a substitution claim. This standard generally requires that both the imported merchandise and the exported merchandise be classified or classifiable within the same the 8-digit number in the Harmonized Tariff Schedule of the United States (HTSUS) classification. This standard replaces the ''same kind and quality'' and ''commercially interchangeable'' standards that were applied, respectively, to substitution manufacturing drawback claims (19 U.S.C. 1313(b)) and substitution unused merchandise drawback claims (19 U.S.C. 1313(j)(2)). Prior to TFTEA, determining whether goods were of the same kind and quality or were commercially interchangeable was a commodity-specific question that imposed burdens on claimants (to prove that the merchandise met the applicable standard) and on CBP (to research and rule on the eligibility of the goods to be substituted). The new standards will reduce much of the above-cited burdens by generally eliminating uncertainty as to the whether the standard for substitution has been met…Similarly, substitution under 19 U.S.C. 1313(j)(2), for unused merchandise drawback claims, is subject to a new standard that requires the substituted merchandise to be classifiable under the same 8-digit HTSUS subheading number as the imported merchandise, except that there are restrictions with respect to HTSUS basket provisions (*i.e.,* subheadings with descriptions that begin with the term ''other''). Specifically, and only for unused merchandise drawback claims, merchandise cannot be substituted if the 8-digit HTSUS subheading number begins with the term ''other'', unless the imported merchandise and the substituted merchandise are both classifiable under the same 10-digit HTSUS statistical reporting number and the description for that 10-digit HTSUS statistical reporting number does not begin with the term ''other''. *See* 19 U.S.C. 1313(j)(5)….

CBP's comments in the Notice of proposed rulemaking essentially expand upon the Senate's

stated rationale in amending the drawback statute:

> Drawback is currently a paper-based labor intensive process for
> both the government and private sector. This section [906–
> Drawback and refunds] reflects the view of this Committee that
> drawback needs to be simplified and automated by (1) allowing
> drawback claimants to generally use the 8-digit Harmonized Tariff
> Schedule of the United States *number* in lieu of obtaining a ruling
> prior to submitting a drawback claim with CBP; (2) allowing
> claims to be submitted in the Automated Commercial Environment
> (ACE); and (3) standardizing the timeframe to file a drawback
> claim to 5 years after the date of importation.

S. Rep. No. 114-45, at 53 (2015) (emphasis added).  The Senate Report accompanying the

passage of TFTEA also noted that the goal of simplifying the process is reached by "{r}equiring

the use of existing *category codes* to identify which goods may qualify as substitutes for the

purposes of drawbacks."  *Id*. at 63 (emphasis added).  Echoing the Senate Report when issuing

its final regulations implementing TFTEA, CBP articulated that "{t}hese regulations establish

new processes for drawback pursuant to TFTEA, which liberalize the merchandise substitution

standard, simplify recordkeeping requirements, extend and standardize timelines for filing

drawback claims, and require the electronic filing of drawback claims."  Final Rule at 64942.

CBP's approach to implementing TFTEA is not only consistent with the plain terms of

the drawback statute, but it is also consistent with the purpose of using the tariff schedule—and

its existing codes and numbers—to simplify and automate the drawback process, and to

eliminate uncertainty and reduce the administrative burdens for claimants and agencies alike.  If

both the 8-digit and 10-digit numbers under which the imported merchandise is classified begin

with the term "other," that is the end of the inquiry, and unused substitution drawback may not

be permitted under section 1313(j)(5).  No interpretative analysis is required to discern what

constitutes a subheading or the article description for that subheading.  In this way, claimants

with little knowledge of CBP's rules and regulations can readily determine the drawback eligibility of their merchandise.

Spirit's application of section 1313(j)(5), however, runs directly counter to the stated aims of TFTEA. With no clear, logical, or known beginning to the article description text for an 8-digit HTSUS subheading number or 10-digit SRN, uncertainty abounds with Spirit's reading of section 1313(j)(5), which inevitably results in inconsistent or absurd outcomes. *See, e.g.*, *supra* at 22-23 (explaining that "other" "other" SRNs are made eligible for section 1313(j)(5)(A) drawback under Spirit's interpretation). Simplifying and automating the drawback process, as CBP has done with its straightforward programming of the ACE drawback module, is also made virtually impossible when the article description text for all subheadings and statistical annotations is untethered from their specific 8- and 10-digit numbers. And drawback claimants and administrators alike will invariably be burdened by needless confusion when submitting and processing claims, with everchanging outcomes for otherwise clear "basket" or "residual" subheadings "depending on the relevant article descriptions and indentations." *See R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1354 (Fed. Cir. 2014) ("A basket provision is not a specific provision. Therefore, {c}lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically.") (citations and internal quotation marks omitted); *see also EM Indus, Inc.. v. United States*, 999 F. Supp. 1473, 1480 (Ct. Int'l Trade 1998) ("'Basket' or residual provisions of HTSUS Headings, such as subheading 3206.49.50, are intended as a broad catch-all to encompass the classification of articles for which there is no more specifically applicable subheading.").

Spirit's approach also runs counter to the clear congressional imperative to foreclose the use of basket provisions for unlimited drawback. Without the restriction of section

1313(j)(5)(B)(ii), an untold number of different articles could be made eligible for unused substitution drawback under thousands of "other" SRNs.  For instance here, Spirit states that it "imports and exports a variety of aircraft parts, as its core business is to design and manufacture aerostructures for commercial airplanes, defense platforms, and business/regional jets."  Pl. SOF ¶ 23.  These aircraft parts "include fuselages, integrated wings and wing components, pylons, and nacelles."  https://www.spiritaero.com/company/overview/overview/ (last visited May 4, 2023).  Under HTSUS heading 8803, if an airplane or helicopter part is not a propeller, rotor, or undercarriage, then that part—which includes all remaining parts of an aircraft, including the parts that Spirit imports and exports—falls under the "Other parts of airplanes or helicopters" residual provision, and is foreclosed from drawback under section 1313(j)(5)(A).  An exception to this prohibition, however, is made available under section 1313(j)(5)(B) so long as the SRN that the merchandise is classifiable under does not also begin with "other."  The rationale behind this exception and restriction is self-evident here: without the prohibition set forth in section 1313(j)(5)(B)(ii), drawback claimants could substitute wildly disparate civil aircraft parts under SRN 8803.30.0030 and non-civil aircraft parts under SRN 8803.30.0060.  A narrow exception to the basket provision restriction is available under SRN 8803.30.0015 if that civil aircraft part is specifically used by the Department of Defense or U.S. Coast Guard.

Despite Spirit's claim to the contrary, *see* Pl. Mot. at 37, there is nothing inherently ambiguous or absurd about the existence of two basket statistical annotations under a single 8-digit HTS subheading, especially where, as here, the two SRNs are "catch-alls" for different categories of merchandise: SRN 8803.30.0030 (other civil aircraft parts) and SRN 8803.30.0060 (other non-civil aircraft parts).  Similarly, that prior to 1998, only two SRNs were listed under HTSUS subheading 8803.30.00—SRN 8803.30.0010 ("For use in civil aircraft") and SRN

8803.30.0050 ("Other")—is of no moment, as the issue before the Court is how the drawback statute applies to the annotated HTSUS (and the SRNs of subheading 8803.30.00 in particular) as it is was drafted when Spirit filed its drawback claim, not how it once was decades ago.  *See* Pl. Mot. at 38-39.  Ambiguity does not arise simply because the terms of the annotated tariff statute in place in 1997 differ from those in effect at any point between then and now.[6]  If anything, Spirit's grievance with the SRNs to 8803.30.00 is misdirected towards CBP, which has ably administered the plain text of two operating statutes.  The section 484(f) committee, in creating the statistical annotations at issue, subdivided the SRNs and created a basket category under SRN 8803.30.0030—the type of category of merchandise for which Congress has foreclosed unused substitution drawback claims.  Thus, Spirit's real issue is with the present statistical annotations themselves, which is a matter that Spirit may seek redress from the section 484(f) committee.  *See* Pl. Ex. 5, 33rd Preface at ITC0047-48 ("Interested parties or their representatives may request changes to the statistical annotations of the HTS or Schedule B.  Such requests should be made under section 484(f) of the Tariff Act of 1930 and directed to the Committee for Statistical Annotation of Tariff Schedules.").

Regardless, Spirit's application of section 1313(j)(5) undermines the section 1313(j)(5)(B)(ii) "other" "other" restriction on claiming unused substitution drawback with respect to merchandise classified in basket provisions, such as the residual SRN at issue here, 8803.30.0030.  Spirit's application also creates the absurd result of negating the section 1313(j)(5)(B) exception to section 1313(j)(5)(A) when an otherwise non-residual SRN is preceded by indented and superior numerically unaligned text that begins with the term "other."

---

[6] The HTS in particular is a statute that is continuously changing.  *See* Pl. Ex. 5, 33rd Preface at ITC0039 ("The Commission publishes annual editions of the HTS on January 1. On-line revisions are used during the calendar year to keep the annual edition current. ***Twenty-eight online revisions*** were posted to update the 2020 schedule.") (emphasis added).

In these circumstances, such as with merchandise classifiable in SRNs 8504.90.9634 ("Laminations for incorporation into stacked cores"), 8504.90.9638 ("Stacked cores for incorporation into transformers"), 8504.90.9642 ("Wound cores for incorporation into transformers"), and 8504.90.9650 ("Of static converters"), discussed *supra* at 17-19, the SRNs may now read as beginning with "Other parts:", even though the article description text for the SRNs themselves identify a specific set of merchandise.  This is not a reasonable reading of the drawback statute.  The section 1313(j)(5)(B) exception excludes from drawback ineligibility articles that, although falling under a basket category at the 8-digit level, are more narrowly identified and described at the 10-digit level.  These SRNs are not basket provisions because they are not "broad catch-alls" that encompass articles for which there is not a more specifically applicable SRN.  Spirit's reading of the tariff and drawback statutes renders otherwise specific SRNs into basket provisions.

In sum, Spirit's preferred application of TFTEA's changes to the drawback statute is administratively untenable, diverges from the plain text of the statute, and undermines the intent of the statute itself, including its restrictions and exceptions, and therefore, must be rejected.

## **CONCLUSION**

For these reasons, we respectfully request that the Court grant our cross-motion for summary judgment, deny plaintiff's motion for summary judgment, enter judgment in our favor and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

35

|                                           | By:  | /s/ Justin R. Miller                      |
|                                           |      | JUSTIN R. MILLER                          |
|                                           |      | Attorney-In-Charge                        |
|                                           |      | International Trade Field Office          |

Of Counsel:

                                              /s/ Alexander Vanderweide

Matt Rabinovitch                         ALEXANDER VANDERWEIDE
Office of the Assistant Chief Counsel  Senior Trial Counsel
International Trade Litigation         Civil Division, U.S. Dept. of Justice
U.S. Customs and Border Protection  Commercial Litigation Branch
                                       26 Federal Plaza
                                       New York, New York 10278
                                       Tel. (212) 264-9230 or 0482
                                       Attorneys for Defendants

Dated: June 2, 2023

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, JUDGE**

---

|  |  |
|---|---|
| SPIRIT AEROSYSTEMS, INC.,      ) | |
|         ) | |
| Plaintiff,      ) | |
|         ) | |
| v.      ) | |
|         ) | |
| UNITED STATES; DEPARTMENT OF   ) | Court No. 20-00094 |
| HOMELAND SECURITY; UNITED   ) | |
| STATES CUSTOMS AND BORDER   ) | |
| PROTECTION; MARK A. MORGAN, IN   ) | |
| HIS OFFICIAL CAPACITY AS ACTING   ) | |
| COMMISSIONER, UNITED STATES   ) | |
| CUSTOMS AND BORDER PROTECTION,  ) | |
|         ) | |
| Defendants.      ) | |

---

## CERTIFICATE OF COMPLIANCE

I, ALEXANDER VANDERWEIDE, a senior trial counsel in the Office of the Assistant

Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field

Office, who is responsible for the Government's June 2, 2023 cross-motion for summary

judgment and response in opposition to plaintiff's motion for summary judgment, relying upon

the word count feature of the word processing program used to prepare the brief, certifies that

this cross-motion and response complies with the word count limitation under the Court's

chambers procedures, and contains 10447 words.

/s/ Alexander Vanderweide