**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, *JUDGE***

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC., ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Court No. 20-00094 |
| UNITED STATES; DEPARTMENT OF ) | |
| HOMELAND SECURITY; UNITED ) | |
| STATES CUSTOMS AND BORDER ) | |
| PROTECTION; MARK A. MORGAN, ) | |
| IN HIS OFFICIAL CAPACITY AS ) | |
| ACTING COMMISSIONER, UNITED ) | |
| STATES CUSTOMS AND BORDER ) | |
| PROTECTION, ) | |
| Defendants. ) | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND**
**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

By:   /s/ Wm. Randolph Rucker
      Wm. Randolph Rucker

Dated: August 18, 2023

**FAEGRE DRINKER BIDDLE & REATH LLP**

Attorneys for Plaintiff
Spirit AeroSystems, Inc.
320 S. Canal Street
Suite 3300
Chicago, IL 60606
Telephone: (312) 569-1000

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

SUMMARY OF THE ARGUMENT ...................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.     The Government Is Not Entitled to Summary Judgment ................................................. 3

II.    The Government Has Not Shown It Is Entitled to a Presumption of Correctness or
Deference ....................................................................................................................... 3

III.   The Government's Evolving Position on the Application of § 1313(j)(5) to SRN
8803.30.0030 .................................................................................................................. 6

IV.   The Government's "Alignment" Theory Finds No Support From a Plain Reading of
§ 1313(j)(5), the HTSUS, or the Relevant Canons of Statutory Construction ................ 11

     A.    The Government's Interpretation Cannot Be Supported by a Plain Reading
of the Statute ...................................................................................................... 11

     B.    The Government's Interpretation of § 1313(j)(5) Does Not Align with the
Structure of the HTSUS and Standard Principles of Tariff Classification ........... 17

          1.    Proper Tariff Classification Is Central to Substitution Unused
Merchandise Drawback under § 1313(j)(5) ............................................. 17

          2.    The Tariff Numbers and Article Descriptions of the HTSUS
Operate at Even-Numbered Numerical Levels ........................................ 18

          3.    The HTSUS Operates as a Tabular Hierarchy Based on Indentation ...... 19

          4.    "Numerically Unaligned" Article Description Language Is Part of
the Full Article Description for the Even-Numbered Levels of the
HTSUS .................................................................................................... 21

          5.    There Is No Dispute That the "For Use in Civil Aircraft:" Text
Falling Below 8-Digit Subheading 8803.30.00 Is Article
Description Text that Is Relevant for Tariff Classification and Part
of the Article Description for 10-Digit SRN 8803.30.0030 ................... 22

     C.    The Government Fails to Show How Spirit's Interpretation of § 1313(j)(5)
Is Inconsistent with the Structure of the HTSUS ................................................ 24

V.    The Government's Complaints about Uncertainty in Spirit's Interpretation Expose the
Flaws in Its Own Arguments .......................................................................................... 27

     A.    The Government's Complaints about Uncertainty under Spirit's Approach
Are Without Merit ............................................................................................... 28

     B.    Spirit's Interpretation Can Be Consistently Applied in a Clear and
Straightforward Manner ...................................................................................... 30

C.      While the Government's Interpretation May Be "Administratively Convenient" for CBP's Programming of the ACE Module, It Is Improper and Creates Uncertainty ................................................................. 37

VI.     The Canons of Statutory Interpretation Do Not Support the Government's Position...... 38

VII.    The Government's Interpretation of the Drawback Statute Does Not Align With Legislative Intent......................................................................................... 42

VII.    The Issues in this Case Are Properly Addressed by this Court, Not the 484(f) Committee............................................................................................... 44

CONCLUSION ........................................................................................................ 48

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Acqua Prods., Inc. v. Matal*,
   872 F.3d 1290 (Fed. Cir. 2017) ............................................................... 5

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ................................................................................. 4

*City of Arlington v. FCC*,
   569 U.S. 290 (2013) ........................................................................... 48, 49

*Com. Aluminum Cookware Co. v. United States*,
   938 F. Supp. 875 (Ct. Int'l. Trade 1996) .............................................. 42

*Cummins Inc. v. United States*,
   454 F.3d 1361 (Fed. Cir. 2006) ............................................................. 42

*Davis v. Mich. Dep't of Treasury*,
   489 U.S. 803 (1989) ............................................................................... 18

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000) ............................................................................... 18

*Felzien v. Off. of Pers. Mgmt.*,
   930 F.2d 898 (Fed. Cir. 1991) ................................................................. 5

*Former Emps. of Murray Eng'g, Inc. v. Chao*,
   346 F. Supp. 2d 1279 (Ct. Int'l Trade 2004) ......................................... 5

*Frankel v. United States*,
   842 F.3d 1246 (Fed. Cir. 2016) ............................................................. 20

*Gazelle v. Shulkin*,
   868 F.3d 1006 (Fed. Cir. 2017) ............................................................... 4

*Genus Med. Techs. LLC v. U.S. FDA*,
   994 F.3d 631 (D.C. Cir. 2021) ......................................................... 11, 38

*Gerson Co. v. U.S.*,
   898 F.3d 1232 (Fed Cir. 2018) .............................................................. 20

*Gilda Indus., Inc. v. United States*,
   622 F.3d 1358 (Fed. Cir. 2010) ............................................................... 4

*Haggar Co. v. Helvering,*
    308 U.S. 389 (1940)............................................................................47

*Hemscheidt Corp. v. United States,*
    72 F.3d 868 (Fed. Cir. 1995)............................................................43

*Hercules Inc. v. United States,*
    24 F.3d 188 (Fed. Cir. 1994)............................................................18

*Home Depot, Inc. v. United States,*
    427 F. Supp. 2d 1278 (Ct. Int'l Trade 2006)..................................43

*King v. Burwell,*
    135 S. Ct. 2480 (2015)....................................................................20

*Linquist v. Bowen,*
    813 F.2d 884 (8th Cir. 1987)............................................................18

*Macclenny Prods. v. United States,*
    963 F. Supp. 2d 1348 (Ct. Int'l Trade 2014)....................................9

*Marathon Oil Co. v. United States,*
    93 F. Supp. 2d 1277 (Ct. Int'l Trade 2000)......................................4

*Marcel Watch Co. v. United States,*
    11 F.3d 1054 (Fed. Cir. 1993)..........................................................20

*Marx v. Gen. Revenue Corp.,*
    568 U.S. 371 (2013)........................................................................40

*Michael Simon Design, Inc. v. United States,*
    452 F. Supp. 2d 1316 (Ct. Int'l Trade 2006)..................................40

*Michigan v. EPA,*
    576 U.S. 743 (2015)........................................................................44

*Milavetz, Gallop & Milavetz, P.A. v. United States,*
    559 U.S. 229 (2010)........................................................................17

*Motorola, Inc. v. United States,*
    462 F. Supp. 2d 1367 (Ct. Int'l Trade 2006)..................................40

*Mullins v. Andrus,*
    664 F.2d 297 (D.C. Cir. 1980)..................................................11, 38

*Muwwakkil v. Off. of Pers. Mgmt.,*
    18 F.3d 921 (Fed. Cir. 1994)..............................................................6

*Parker v. Off. of Pers. Mgmt.*,
   974 F.2d 164 (1992).................................................................................... 5

*Phone-Mate, Inc. v. United States*,
   690 F. Supp. 1048 (Ct. Int'l Trade 1988)................................................... 3

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum.
   Servs.*,
   946 F.3d 1100 (9th Cir. 2020)................................................................... 47

*Reliable Contracting Grp., LLC v. Dep't of Veterans*,
   779 F.3d 1329 (Fed. Cir. 2015)................................................................. 7

*Saab Cars USA, Inc. v. United States*,
   434 F.3d 1359 (Fed. Cir. 2006)................................................................. 3

*Shamrock Building Materials v. United States*,
   619 F. Supp. 3d 1337 (Ct. Int'l Trade 2023)...................................... 21, 22

*Shenzhen Xinboda Indus. Co. v. United States*,
   361 F. Supp. 3d 1337 (Ct. Int'l Trade 2019)........................................... 11

*Smith v. City of Jackson*,
   544 U.S. 228 (2005).................................................................................. 5

*Stelco Holding Co. v. United States*,
   44 Fed. Cl. 703 (1999).............................................................................. 7

*Sullivan v. Everhart*,
   494 U.S. 83 (1990).................................................................................... 4

*United States v. Banker*,
   876 F.3d 530 (4th Cir. 2017).................................................................. 25

*United States v. Freeman*,
   44 U.S. 556 (1845)................................................................................. 18

*United States v. Mead Corp.*,
   533 U.S. 218 (2001).................................................................................. 5

*United States v. Mills*,
   850 F.3d 693 (4th Cir. 2017).................................................................. 25

*United States v. UPS Customhouse Brokerage, Inc.*,
   558 F. Supp. 2d 1331 (Ct. Int'l Trade 2008)........................................... 41

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001)............................................................................... 25

**Statutes**

19 U.S.C. § 1202 ................................................................................................ 2

19 U.S.C. § 1313 ........................................................................................ *passim*

19 U.S.C. § 1484(f) .......................................................................................... 47

19 U.S.C. §§ 1202–1683g ................................................................................ 17

Pub.L. No. 96-39, § 601, 93 Stat. 144, 267 (1979) ...................................... 47

**Regulations**

83 FR 37886, 37889 (Aug. 2, 2018) ............................................................... 17

*Modernized Drawback*,
  83 Fed. Reg. 64942 (Dec. 18, 2018) ......................................................... 10, 43

**Other Authorities**

Civil Aircraft,
  31 U.S.T. 619, T.I.A.S. No. 9620 (Apr. 12, 1979) ..................................... 43

HTSUS ..................................................................................................... *passim*

Merriam-Webster Dictionary (2023) https://www.merriam-webster.com/dictionary/for ........... 14

S. Rep. No. 114–45 ........................................................................................ 17

TFTEA .................................................................................................... *passim*

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HON. CLAIRE R. KELLY, *JUDGE*

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES; DEPARTMENT OF | ) Court No. 20-00094 |
| HOMELAND SECURITY; UNITED | ) |
| STATES CUSTOMS AND BORDER | ) |
| PROTECTION; MARK A. MORGAN, | ) |
| IN HIS OFFICIAL CAPACITY AS | ) |
| ACTING COMMISSIONER, UNITED | ) |
| STATES CUSTOMS AND BORDER | ) |
| PROTECTION, | ) |
| Defendants. | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The Government's position in this case is contrary to both the plain text and legislative intent behind the *Trade Facilitation and Trade Enforcement Act of 2015* (TFTEA), as well as the structure of the *Harmonized Tariff Schedule of the United States* (HTSUS). For the reasons discussed below, this Court should deny the Government's Cross-Motion for Summary Judgment and enter summary judgment in favor of Spirit AeroSystems, Inc. ("Spirit").

### SUMMARY OF THE ARGUMENT

At its core, the Government's interpretation of 19 U.S.C. § 1313(j)(5) is based on the concept that the only operative article description language for purposes of determining substitution unused merchandise drawback eligibility is first word of text in the "Article Description" column of the HTSUS that aligns with a particular 8-digit subheading number or a 10-digit statistical suffix. However, as demonstrated in its brief, the Government has failed to show

how its "alignment" theory is grounded in the *actual* language of § 1313(j)(5). Similarly, the Government has failed to show how its interpretation, which is also plainly inconsistent with the structure of the HTSUS and standard principles of tariff classification, is supported by any relevant canons of statutory construction.

Instead, without any support from the plain text of § 1313(j)(5), the HTSUS, or the relevant canons of statutory interpretation, the Government's position appears to be premised on nothing more than "administrative convenience," which is an approach that has been rejected by the courts. Moreover, the Government's interpretation of § 1313(j)(5) injects added unpredictability and constraints to substitution unused merchandise drawback eligibility, thus undermining the Congressional intent behind TFTEA.

By contrast, Spirit's interpretation of § 1313(j)(5) provides a rational and consistent method for identifying the full article description of an 8-digit subheading or a 10-digit statistical reporting number ("SRN") that is fully consistent with the common and popular meaning of the relevant statutory language used, legislative intent, and the overall statutory scheme of the *Tariff Act of 1930*, which 19 U.S.C. § 1313 (Drawback Statute) and 19 U.S.C. § 1202 (HTSUS) are both a part of. Under Spirit's approach, the 10-digit statistical level "article description" for merchandise classified under SRN 8803.30.0030 "begins with" the term "for" (from the phrase "For use in civil aircraft:") and such merchandise is eligible for substitution unused merchandise drawback under § 1313(j)(5). Accordingly, this Court should enter summary judgment for Spirit.

<u>**ARGUMENT**</u>

I.   <u>**The Government Is Not Entitled to Summary Judgment**</u>

The Government has filed a Cross-Motion for Summary Judgment in this case. Gov.'s Cross Mot. For Summ. J. and Resp. to Pl.'s Mot. For Summ. J. [ECF No. 42] (hereinafter "Resp."). "In ruling on motions for summary judgment, if there are no genuine issues of material fact, the court must decide whether either party has demonstrated its entitlement to judgment as a matter of law." *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Trade 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989). The parties agree there is no genuine dispute as to any material fact in this case. Resp. at 6.[1]

The Government, as the movant, bears the burden of proving that it is entitled to judgment as a matter of law; and, as the non-moving party, bears the burden of showing why summary judgment should not be granted to Spirit. *See, e.g.*, *Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1368–69 (Fed. Cir. 2006) (discussing the burdens of non-moving and moving parties for summary judgment). The Government's arguments are unpersuasive and do not demonstrate entitlement to judgment as a matter of law; therefore, the Government's Motion must be denied. Further, the Government has not shown why summary judgment should not be granted to Spirit, therefore, for the reasons set forth herein and in Spirit's Motion for Summary Judgment, Spirit is entitled to judgment as a matter of law.

II.  <u>**The Government Has Not Shown It Is Entitled to a Presumption of Correctness or Deference**</u>

The parties agree the issue before the Court is one of statutory construction and is thus

---

[1]   Spirit incorporates herein the exhibit designations from Plaintiff's Statement of Material Facts Not in Issue (hereinafter "Pl. SMF") and Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (hereinafter "Pl. Resp. to Def. SMF").

reviewed *de novo*. *See* Pl.'s Mot. For Summ. J. [ECF No. 39] at 8 (hereinafter "Pl. MSJ"); Resp. at 8, 10; *see also Marathon Oil Co. v. United States*, 93 F. Supp. 2d 1277, 1279 (Ct. Int'l Trade 2000) (finding the review of CBP's interpretation of a term used in 19 U.S.C. § 1313 was a question of statutory interpretation reviewed *de novo*). This is the case even though the International Trade Commission ("ITC") is alleged to agree with U.S. Customs and Border Protection's ("CBP") interpretation of the statutes at issue. Resp. at 26-27; Pl.'s Br. at 10, n.1. The judiciary, not CBP or the ITC, "is the final authority on issues of statutory construction[.]" *Gilda Indus., Inc. v. United States*, 622 F.3d 1358, 1363 (Fed. Cir. 2010). This Court must determine the meaning of 19 U.S.C. § 1313 for itself, examining "the statute's text, structure, and legislative history," while applying any "relevant canons of interpretation." *Gazelle v. Shulkin*, 868 F.3d 1006, 1010 (Fed. Cir. 2017).

Further, the Government's interpretation of the Drawback Statute is not entitled to deference under the two-part test in *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) (discussing deference afforded to agency interpretations). Under *Chevron* step one, courts must determine whether Congress has directly addressed the precise question at issue: "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. Under *Chevron* step two, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. A permissible construction is one that is "rational and consistent with the statute." *Sullivan v. Everhart*, 494 U.S. 83, 88–89 (1990).

In this case, CBP's interpretation of § 1313(j)(5) (and associated programming of ACE), its interpretation of the article description for HTSUS SRN 8803.30.0030, and its decision to deny

Spirit's drawback claim are all rulings applying Customs law to a specific set of facts. *See* Exhibit A, Headquarters Ruling Letter ("HRL") H307063 (Mar. 10, 2020) (Resp. to Spirit Internal Advice Request). This Court has repeatedly affirmed that CBP interpretations in letter rulings are not entitled to deference. *Former Emps. of Murray Eng'g, Inc. v. Chao*, 346 F. Supp. 2d 1279, 1283 n.10 (Ct. Int'l Trade 2004) (citing *United States v. Mead Corp.*, 533 U.S. 218, 221 (2001) ("We agree that a tariff classification has no claim to judicial deference under *Chevron*, there being no indication that Congress intended such a ruling to carry the force of law."). Thus, at most, judicial deference in this case could only be afforded in proportion to the interpretation's "power to persuade." *Mead Corp.*, 533 U.S. at 235. The Government has not shown any consistent or persuasive argument in support of its interpretation of the Drawback Statute, therefore, its determinations in this case do not have the "power to persuade." *Id.*

The Government claims Congress gave it rulemaking authority to implement the drawback changes under TFTEA. Resp at 8. However, the applicable regulation is merely a recitation of the statutory language, so there has been no rulemaking in this case. Further, there is no interpretive or gap-filling deference to be afforded. *See, e.g.*, *Parker v. Off. of Pers. Mgmt.*, 974 F.2d 164, 167 (1992) (finding that case law counseling deference to regulations was "not pertinent" to the analysis because the regulations at issue "parallel[] the language" of the statute) (citing *Felzien v. Off. of Pers. Mgmt.*, 930 F.2d 898, 902 (Fed. Cir. 1991)).

Moreover, "deference to misinterpretation of a statute is impermissible." *Acqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1316 (Fed. Cir. 2017) (citing *Smith v. City of Jackson*, 544 U.S. 228, 267 (2005) (O'Connor, J., concurring)) ("Of course, it is elementary that 'no deference is due to agency interpretations at odds with the plain language of the statute itself.'"). As explained below, judicial deference is not applicable here because, as a matter of law, the terms "article description"

and "begins with", as these terms are used in § 1313(j)(5), can be plainly and unambiguously interpreted using the devices of statutory construction cited in Spirit's Brief. Even if, *arguendo*, the Court finds that such terms are "ambiguous," the Government's interpretation is at odds with TFTEA and the legislative intent behind it, as well as the structure of the HTSUS and the principles of tariff classification. *Muwwakkil v. Off. of Pers. Mgmt.*, 18 F.3d 921, 925 (Fed. Cir. 1994) ("When an agency's interpretation of a statute it is entrusted to administer is contrary to the intent of Congress, as divined from the statute and its legislative history, we owe it no deference.").

For the reasons discussed in Spirit's Brief, the intent of Congress is clear and the plain meaning of the Drawback Statute favors the interpretation offered by Spirit. Even assuming the relevant terms of the Drawback Statute were considered to be "silent" or "ambiguous" with respect to the issues in this case (we assert they are not), there is no deference afforded to the Government's interpretation since it does not offer a permissible construction of the statute. Therefore, following application of the proper devices of statutory construction, Spirit's interpretation should prevail.

## III.   The Government's Evolving Position on the Application of § 1313(j)(5) to SRN 8803.30.0030

Before addressing the substantive arguments of the Government's Brief, it is worthwhile to review the Government's evolving, and often times contradictory, arguments made in attempt to support its interpretation of the Drawback Statute. In its brief, the Government acknowledges that the "For use in civil aircraft:" article description language comes "after the 8-digit level" (*i.e.*, HTSUS subheading 8803.30.00) and is "relevant to the product coverage and ultimate classification" of a product classified under the SRNs of this subheading. Resp. at 13; Exhibit B, Transcript of 30(b)(6) Deposition of Sarita Singh 71:6-17. The Government further acknowledges that the "'Article Description' text at the first level of indentation under HTSUS subheading 8803.30.00" is "For use in civil aircraft" and that such language distinguishes products classified

under the SRNs. Resp. at 13. Finally, the Government acknowledges that the "For use in civil aircraft" article description "aides in determining how an airplane part is used and, as a result, whether it is appropriately ***described by*** SRN 8803.30.0060 or by either SRN 8803.30.0015 or 8803.30.0030." Resp. at 13-14 (emphasis added).

> The Government also admits in its response to Spirit's Statement of Material Facts that:

> "[A]t the time of the filing of the drawback claim at issue, the article description for merchandise described in statistical reporting number 8803.30.0030 was "Parts of goods of heading 8801 or 8802: … Other parts of airplanes or helicopters: For use in civil aircraft: … Other."

Def. Resp to Pl. SMF ¶ 24.[2] Based on the above admission, this matter should be at an end since the article description for the 10-digit SRN at issue begins with the term "Parts." However, this is the full article description including the heading, subheading, and statistical article description language and § 1313(j)(5) directs us to review the 8-digit subheading and 10-digit SRN article descriptions, so more analysis is required. As discussed in Spirit's Brief, there are only 4-, 6-, 8-, and 10-digit numbers in the HTSUS and their related article descriptions. Pl.'s Br. at 13–17; *see also* <u>Exhibit A</u>, HRL H307063 at 3 (observing that "[t]he HTSUS comprises a hierarchical structure for describing all goods in trade for duty, quota, and statistical purposes … the 4- and 6-digit HS product categories are subdivided into 8-digit unique U.S. rate lines and 10-digit non-legal statistical reporting categories.").

---

[2]    Both parties have asserted the article description of SRN 8803.30.0030 as a factual matter. Def. Resp. to Pl. SMF ¶ 24 is a judicial admission that removes the need to further prove this fact and it is binding on the Government. *Stelco Holding Co. v. United States*, 44 Fed. Cl. 703, 711 (1999) ("A judicial admission is, of course, conclusively binding upon the party asserting it."); *see also Reliable Contracting Grp., LLC v. Dep't of Veterans Affs.*, 779 F.3d 1329, 1334 (Fed. Cir. 2015) ("[J]udicial admissions … have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact").

The article description language of 4-digit heading 8803 is "Parts of goods of heading 8801 or 8802:". *See* HTSUS (2023), General Note 3(h)(vi) (defining the terms "heading" and "subheading"). Further, the Government states "…the article description for the HTSUS 8-digit subheading number at issue, 8803.30.00, provides for 'Other parts of airplanes or helicopters.'" Resp. at 20; *see also id.* at 12. Removing the 4-digit heading article description language and the 8-digit subheading article description language from the full article description language in the Government's Response to Pl. SMF 24 leaves only the text of the article description for the 10-digit statistical level, which is "For use in civil aircraft: Other." The illustration below shows the breakdown of the language in the Government's Response:



As shown above, by process of elimination, we are able to find the 10-digit portion of the Government's article description for SRN 8803.30.0030, "~~Parts of goods of heading 8801 or 8802: … Other parts of airplanes or helicopters:~~ ***For use in civil aircraft: … Other***." Therefore, this Court should grant summary judgment in favor of Spirit as the Government has now admitted that

"*For use in civil aircraft: Other*" is the article description at the 10-digit level for SRN 8803.30.0030, which begins with the term "For," not "other."[3]

Nevertheless, the Government has taken the position in its brief that the "For use in civil aircraft:" article description language "does not constitute the article description text" for SRN 8803.30.0030, so it should be ignored for purposes of determining substitution unused merchandise drawback eligibility under § 1313(j)(5). Resp. at 15, 27. In an attempt to explain how this position is tenable in light of the admission highlighted above, and as a matter of statutory construction, the Government (via its Rule 30(b)(6) witness) originally asserted that the "For use in civil aircraft:" language is not relevant for purposes of determining unused merchandise drawback eligibility under § 1313(j)(5) because it is considered a "ninth-digit" article description:

> [SPIRIT'S COUNSEL]: Then when it comes to "for use in civil aircraft" language, you are stating that it's not part of the article description; is that correct?
>
> [WITNESS]: It's not part of the article description at the 10-digit [].
>
> [SPIRIT'S COUNSEL]: So then is it part of the article description at the 8-digit?
>
> [WITNESS]: It's a subcategory but it's an article description of the 9-digit.
>
> [SPIRIT'S COUNSEL]: An article description of the 9-digit. And what number is that? What number?
>
> [WITNESS]: There is no number there.
>
> [SPIRIT'S COUNSEL]: So why is it a 9-digit?
>
> [WITNESS]: It's between the 8 and the 10.

---

[3]     At a minimum, this admission must preclude summary judgment in favor of the Government, as all inferences must be taken against it when considering whether to grant its motion. *Macclenny Prods. v. United States*, 963 F. Supp. 2d 1348, 1359 (Ct. Int'l Trade 2014) (noting that "[b]ecause the burden is on the movant, the evidence … always is construed in favor of the party opposing the motion and the opponent is given the benefit of all favorable inferences that can be drawn from it.").

*See* Exhibit B, Singh Dep. Tr. 30:19–31:10; *see also* HRL H307063 (asserting that the "For use in civil aircraft" language is part of a "9-digit provision.").

However, in an apparent abandonment of this line of reasoning, the Government makes no mention of a "ninth digit" in its brief. This makes sense, given there are only 4-, 6-, 8-, and 10-digit levels in the HTSUS. *See* 2023 HTSUS, Preface (describing "4-digit headings and subordinate 6-digit subheadings[,]" followed by "8-digit U.S. subheadings" and statistical provisions "at the 10-digit level"). The Government now appears to argue, instead, that the article description "For use in civil aircraft:" should be disregarded for purposes of § 1313(j)(5) because it is only relevant for tariff classification and does not "constitute the article description text" for the 10-digit SRNs. Resp. at 13–15.

The Government also previously argued (without citation) that, as a matter of policy and legislative intent, Spirit's interpretation of § 1313(j)(5) should be rejected because it would allow a broad pool of civil aircraft parts to be eligible for unused merchandise drawback; a scenario that the Government claims, as a general matter, Congress intended to prevent by enacting § 1313(j)(5)(B). *See* HQ H307063. But here again, the Government neither mentions this specific argument in its brief nor attempts to reconcile this position with its statement that the intent of TFTEA was to liberalize and "expand the availability of substitution for drawback claims." *Modernized Drawback*, 83 Fed. Reg. 64942, 64959 (Dec. 18, 2018). *See also* Exhibit A, HRL H307063 at 2.

As discussed further below, without any support from the plain text of TFTEA or the relevant canons of statutory interpretation, the Government's position appears to be premised on nothing more than "administrative convenience" rather than any clear language in the statute. Statutory interpretation based solely on administrative convenience has consistently been rejected

by the courts and should be rejected here as well. *See, e.g., Genus Med. Techs. LLC v. U.S. FDA*, 994 F.3d 631, 645 (D.C. Cir. 2021) (Pillard, J., concurring) (rejecting an FDA interpretation of a statute "turning on little more than administrative convenience"); *Mullins v. Andrus*, 664 F.2d 297, 309 (D.C. Cir. 1980) ("We must reject a statutory interpretation—and surely one merely serving administrative convenience—when it flouts a legislative edict."); *cf. Shenzhen Xinboda Indus. Co. v. United States*, 361 F. Supp. 3d 1337, 1363 (Ct. Int'l Trade 2019) (noting that "considerations of administrative convenience come into play only where statutory language is ambiguous.").

**IV.  The Government's "Alignment" Theory Finds No Support From a Plain Reading of § 1313(j)(5), the HTSUS, or the Relevant Canons of Statutory Construction**

**A. The Government's Interpretation Cannot Be Supported by a Plain Reading of the Statute**

Per its brief, the Government's interpretation of § 1313(j)(5) (and its ACE programming) is based on the concept that the only operative article description language for purposes of determining substitution unused merchandise drawback eligibility is "first word of text in the "Article Description" column that aligns with a particular 8-digit subheading number or 10-digit statistical reporting number." Resp. at 10. As further explained by the Government's Rule 30(b)(6) witness, this language is found on the same horizontal "line" as the 8-digit HTSUS subheading number or the 10-digit SRN:

> [SPIRIT'S COUNSEL]: And how does the agency know that it begins with the term "other"?
>
> [WITNESS]: By reading the word "other" on the 10-digit line.
>
> [SPIRIT'S COUNSEL]: You did say "on the line", so what does that mean? On the 10-digit line?
>
> [WITNESS]: Well, if we take out—I know it's in in one of the documents. If you take out the actual HTSUS, I mean, I can literally put a ruler there to see where the line is.

***

11

[SPIRIT'S COUNSEL]: What is the meaning of the phrase "next to" in that part of the response?

[WITNESS]: It is on the same line, next to the numbers.

[SPIRIT'S COUNSEL]: "On the same line" meaning from a [positional][4] standpoint?

[WITNESS]: Correct.

[SPIRIT'S COUNSEL]: Does this go back to your discussion about making a line by placing a ruler?

[WITNESS]: If needed, you can make a line, yes, to determine.

[SPIRIT'S COUNSEL]: Is there actually a line in the HTS US that you would see printed in the tariff schedule?

[WITNESS]: I would assume if you printed it out on a piece of paper that counted the lines, you would be able to see the lines, but there is no physical line drawn in the actual chapters.

[SPIRIT'S COUNSEL]: What's the basis of that interpretation?

[WITNESS]: The plain language of the statute.

Exhibit B, Singh Dep. Tr. 22:3–12, 85:3–21. The Government's "alignment" interpretation is far from a "straightforward and practical reading of section 1313(j)(5)" but more like a pretzel that must be untwisted. We undertake this exercise below.

Initially, we note that the Government's "alignment" theory leads them to conclude that § 1313(j)(5) does not provide for the consideration of "numerically unaligned text" in the HTSUS to determine drawback eligibility. Resp at 4. However, the concept of distinguishing article description text based upon whether it is "numerically unaligned" is completely fabricated by the Government. Based on our research, we did not find a single CBP ruling or court case that includes

---

[4]     Although the transcript includes the term "provisional," the correct term here is "positional."

this phrase or interprets the concept that "numerically unaligned text" in the HTSUS should be ignored (in any circumstance). In fact, we see just the opposite in various CBP rulings and court cases. *Infra* at 25, 27. Beyond the fact that this concept is unfounded, it intentionally creates surplusage in violation of the canons of construction. Pl.'s Br. at 33–37.

Next, we note that the Government is actually looking at the language next to the statistical suffix number "30" in the "Stat. Suffix" column, as there is no article description "aligned with" 10-digit SRN 8803.30.0030 in the HTSUS. The following excerpt from HRL H307063 shows how the Government is viewing the HTSUS language:

| | |
|---|---|
| 8803.30.00 | *Other* parts of airplanes or helicopters<br>For use in civil aircraft: |
| 8803.30.0030 | *Other* |

However, the Government recognizes the actual alignment within HTSUS heading 8803 in its brief. *See* Resp. at 3:

| Heading/<br>Subheading | Stat.<br>Suffix | Article Description | Rates<br>of<br>Duty |
|---|---|---|---|
| 8803<br><br>8803.30.00 | | Parts of goods of heading 8801 or 8802:<br>***<br>Other parts of airplanes or helicopters.................<br>For use in civil aircraft: | <br><br>Free |
| | 15 | For use by the Department of Defense or the<br>United States Coast Guard......................... | |
| | 30 | Other …………………………………………... | |
| | 60 | Other………………………………………… | |

Therefore, CBP is improperly interpreting the phrase "statistical reporting number" in § 1313(j)(5) as "Stat. Suffix." The Government acknowledges this flaw in its interpretation when they state that for the SRN, they are really looking at the first word "that immediately follows and aligns with …

13

the two digits listed in the "Stat. Suffix" column." Resp. at 10. Thus, contrary to the Government's arguments, there is no "alignment" between the term "Other" and the 10-digit SRN 8803.30.0030 in the HTSUS. Since the Government's interpretation relies on the position of the statistical suffix number (rather the 10-digit SRN as referenced in the statute), it cannot be a proper interpretation based on the plain meaning of the terms of § 1313(j)(5).

Within its brief, the Government attempts to bring further support to its argument by claiming that use of the term "for" in § 1313(j)(5) "refers to the descriptive text that aligns with the '8-digit HTS subheading number' and '10-digit HTS statistical reporting number.'" Resp. at 11. While this statutory language does indicate there is a distinction between the article description for an 8-digit subheading and the article description for a 10-digit SRN, the Government offers no explanation as to why the word "for" supports its alignment argument. Upon review, we believe that the use of the word "for" is in its ordinary sense as a "function word" generally indicating "correspondence or correlation." Merriam-Webster Dictionary (2023) https://www.merriam-webster.com/dictionary/for (last visited Aug. 14, 2023).

Similarly, the Government argues that use of the phrase "*the* article description" indicates "that a particular 10-digit SRN will only have one article description." Resp. at 16 (emphasis in original). However, this phrase cannot be interpreted to mean "next to" or "on the same line", as the Government's interpretation would have it. Further, this phrase cannot be read as prohibiting the combining of article description language found in the HTSUS (based on indentation) to get the full article description of a subheading or SRN. Instead, we believe use of the word "the" in § 1313(j)(5) is in its ordinary sense as a "function word", generally indicating that "article description" is specified by context. Therefore, in the Drawback Statute, we are directed to focus on the 8-digit and 10-digit article descriptions, as opposed to other HTSUS article descriptions,

*e.g.*, the 4-digit or 6-digit levels. While the statutory text indicates that each 8-digit subheading and 10-digit SRN has its own identifiable article description, there is no further guidance to be gleaned from the words "for" and "the" found in § 1313(j)(5).

Beyond these concerns, the primary problem with the Government's "alignment" theory is that it has no foundation in the *actual* language of § 1313(j)(5). In fact, the Government's Rule 30(b)(6) witness admitted this. <u>Exhibit B</u>, Singh Dep. Tr. 40:19–25 ("[SPIRIT'S COUNSEL]: Where in that statute does it say you place a ruler on the line under the number to determine whether language is associated with an 8-or 10-digit provision? [WITNESS]: It doesn't use the term.").

In an attempt to bridge the divide between its interpretation and the plain text of § 1313(j)(5), the Government is also arguing that its "alignment" approach is supported by the use of the term "number" in § 1313(j)(5):

> [D]rawback eligibility under section 1313(j)(5) is specifically premised on what term begins the article description for a particular "8-digit HTS subheading *number*" and "10-digit HTS statistical reporting *number*." 19 U.S.C. § 1313(j)(5) (emphasis added). The article description text for that number is determinative, not any other superior, subsequent, between, unaligned, or unnumbered text.

Resp. at 15 (emphasis in original); *see also id.* at 26. The Government does nothing to explain, however, why the use of the term "number" supports a positional limitation for determining what term an article description begins with. Further, as noted above, the numbers in the first two columns of the HTSUS ("Heading/Subheading" and "Stat. Suffix") are not always aligned with the full article description for a particular subheading or SRN or with each other. Specifically, in this case, 8-digit subheading 8803.30.00 appears in the first column of the HTSUS, and there is article description language "next to" or aligned with that number. However, all digits of 10-digit

SRN 8803.30.0030 do not appear on the same line in the HTSUS and there is no article description "next to" or aligned with that full 10-digit number.[5]

Mirroring an argument made by the Government, Congress could have specified that the article description for an 8-digit subheading or a 10-digit SRN does not include any "numerically unaligned" text in the HTSUS "Article Description" column. However, Congress did not do so and this is telling for the reasons discussed herein. *See* Resp. at 33. To illustrate this point, below we have added to the existing language of § 1313(j)(5) to align it with the Government's interpretation (changes in bold/italic/red font):

> **(A)** For purposes of paragraph (2) and except as provided in subparagraph (B), merchandise may not be substituted for imported merchandise for drawback purposes based on the 8-digit HTS subheading number if the article description ***next to or on the same line as*** ~~for~~ the 8-digit HTS subheading number ***(found in the "Heading/Subheading" column of the HTSUS)*** under which the imported merchandise is classified begins with the term "other" ***(without consideration of any numerically unaligned article description language that may be part of the full article description for the 8-digit HTS subheading)***.

> **(B)** In cases described in subparagraph (A), merchandise may be substituted for imported merchandise for drawback purposes if—

> **(i)** the other merchandise and such imported merchandise are classifiable under the same 10-digit HTS statistical reporting number; and

> **(ii)** the article description ***next to or on the same line as the 2-digit statistical suffix*** for that 10-digit HTS statistical reporting number ***(found in the "Stat. Suffix" column of the HTSUS)*** does not begin with the term "other" ***(without consideration of any numerically unaligned article description language that may be part of the full article description for that 10-digit HTS statistical reporting number)***.

As detailed above, significant changes to the existing statutory language are needed to align

---

[5]     As noted in HTSUS Statistical Note 3, "the statistical reporting number for an article consists of the 10-digit number formed by ***combining*** the 8-digit subheading number with the appropriate 2-digit statistical suffix." (emphasis added). It follows that the article description for the SRN may also be the result of "combining."

§ 1313(j)(5) with the Government's interpretation. Congress could have drafted the statute this way, but it did not. Therefore, any argument from the Government that its interpretation is based on the plain language of the statute should be rejected.

Further, as explained below, even if, *arguendo*, the Government's interpretation *did* have a basis in the actual text of § 1313(j)(5) (which it does not), this construction should be rejected because it produces "absurd results inconsistent with the statute's context." *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 252 (2010) (declining to "adopt a view of the statute that … would produce an absurd result").

### B. The Government's Interpretation of § 1313(j)(5) Does Not Align with the Structure of the HTSUS and Standard Principles of Tariff Classification

#### 1. Proper Tariff Classification Is Central to Substitution Unused Merchandise Drawback under § 1313(j)(5)

There is no dispute that proper tariff classification under the HTSUS is the foundation of substitution unused merchandise drawback under the Drawback Statute. *See* Resp. at 30 (citing 83 FR 37886, 37889 (Aug. 2, 2018) (notice of proposed rulemaking) (stating, in part, that TFTEA "provides a new standard for determining which merchandise may be substituted for imported merchandise as the basis for a substitution claim" and that "[t]his standard requires that both the imported merchandise and the exported merchandise be classified or classifiable within the same 8-digit number in the Harmonized Tariff Schedule of the United States (HTSUS) classification.")); *see also id.* at 31 (referencing tariff classification in the context of S. Rep. No. 114–45 and citing § 1313(j)(2) and (j)(5) to note that the goods must be "classifiable under the same 8-digit HTS subheading number" or "classifiable under the same 10-digit HTS statistical reporting number"). Further, there is no dispute that the Drawback Statute and the HTSUS are part of the same statutory scheme (the *Tariff Act of 1930*, 19 U.S.C. §§ 1202–1683g) and that these separate provisions of the *Tariff Act of 1930* must be "construed and interpreted together and in light of each other to

ascertain the true legislative intent." *Hercules Inc. v. United States*, 24 F.3d 188, 204 (Fed. Cir. 1994) ("[P]arts of a statute *in pari materia* must be construed together.").[6] It follows that the well-established principles of tariff classification are also critical to the interpretation and application of § 1313(j)(5).

> ### 2.  The Tariff Numbers and Article Descriptions of the HTSUS Operate at Even-Numbered Numerical Levels

The terms of the HTSUS "operate at their respective even-numbered numerical levels." Resp. at 13; *see also* Exhibit A, HRL H307063 at 3. Headings are the first 4-digits of a tariff number. Subheadings are either the first 6-digits or 8-digits of a tariff number. SRNs consist of the 8-digit HTSUS subheading number combined with the two digit statistical suffix. A full 10-digit HTSUS SRN contains all of the heading, subheading, and statistical level digits.

In turn, the article description language of the HTSUS also operates at even-numbered numerical levels. All of the article description language in the HTSUS can be isolated and assigned to one of these even-numbered categories. There is no extra article description language in the HTSUS. *See* Exhibit B, Singh Dep. Tr. 89:20–90:9 (admitting that tariff classification requires consideration of all the "descriptive language" found at the 4-, 6-, 8-, and 10-digit levels in the HTSUS).

The full article description of merchandise classified under a 10-digit SRN will include the article description language for the heading, subheading, and statistical suffix that make up that

---

[6]  "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). In turn, "when a court interprets multiple statutes dealing with a related subject or object, the statutes are *in pari materia* and must be considered together." *Linquist v. Bowen*, 813 F.2d 884, 888–89 (8th Cir. 1987) (citing *United States v. Freeman*, 44 U.S. 556, 564–65 (1845) and N. Singer, 2A Sutherland Statutory Construction § 51.01–.03 (C. Sands 4th ed. 1984)).

full 10-digit SRN. All of this article description language is relevant and critical for determining the ultimate tariff classification of a product. *See* Resp. at 13 ("We do not dispute that the entirety of the text in the HTSUS 'Article Description' column, including any text that does not align with a specific 4-digit heading, 6- or 8-digit subheading, or 10-digit SRN, are relevant to the product coverage and ultimate classification of imported merchandise.").[7] As noted above, the full article description for SRN 8803.30.0030 is "*Parts of goods of heading 8801 or 8802: ... Other parts of airplanes or helicopters: For use in civil aircraft: ... Other*" which consists of the heading, subheading, and statistical level article descriptions combined. Def. Resp. to Pl. SMF at ¶ 24. This full article description is consistent with the way CBP and the courts have historically read the article description language of the HTSUS cumulatively (for tariff classification purposes).

### 3.   The HTSUS Operates as a Tabular Hierarchy Based on Indentation

The parties agree that the HTSUS operates as a tabular hierarchy based on indentation. *See* Resp. at 13. Indentation in the HTSUS is a specific system of alignment that guides article description interpretation and associates all HTSUS article description language to its respective even-numbered numerical levels. Indentation will guide the first, second, third, fourth, etc. part of the full article description (depending on the number of indented levels for the particular tariff provision). All of the applicable indented article description levels must be combined to get the full article description of a tariff provision and each of its even-numbered levels.

Heading text is not indented and subheading text is indented. HTSUS (2023) Preface to 35th Edition at n.5 ("A 'heading' is a provision whose article description is not indented, while a 'subheading' (6- or 8- digit) has an indented and subordinate description covering a subset of the

---

[7]   Article description is the same for tariff classification and drawback purposes. *See* Pl.'s SMF at ¶ 35 (citing <u>Exhibit B</u>, Singh Dep. Tr. at 102:20–103:10).

heading's product scope."). Only indentation of the same level is comparable. HTSUS GRI 6 (stating that "only subheadings at the same level are comparable"); *see also Marcel Watch Co. v. United States*, 11 F.3d 1054, 1058–59 (Fed. Cir. 1993) ("[C]omparisons are to be made only between provisions of coordinate or equal status, i.e., between primary or main superior headings of the schedules or between coordinate inferior headings which are subordinate to the same superior heading."). Lesser-indented language must be considered first before moving on to article description language at the next indented level and only if a product meets the lesser-indented article description language can one proceed to a review of the next indented level of article description language. This approach applies at all even-numbered levels and runs from the heading to subheading to statistical article description language.

The comparison of indented article description text at the same level is critical for proper classification as the comparable language provides context to all article description language at the same level of indentation. Article description language does not exist in a vacuum and to discern its meaning it must be read in the context of the HTSUS as a whole, as well as in conjunction with other relevant article description language. *See Gerson Co. v. U.S.*, 898 F.3d 1232, 1236–37 (Fed Cir. 2018) (quoting *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) ("[O]ftentimes the meaning— or ambiguity—of certain words or phrases may only become evident when placed in context. So when deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme. Our duty, after all, is to construe statutes, not isolated provisions.")). This is especially true when an article description is "other" as this article description would have no meaning without some other article description language to compare it to. *See Frankel v. United States*, 842 F.3d 1246, 1250 (Fed. Cir. 2016) (noting that under the

interpretative canon of *noscitur a sociis*, the court must construe statutory language by "look[ing] to the surrounding context").

> 4. "Numerically Unaligned" Article Description Language Is Part of the Full Article Description for the Even-Numbered Levels of the HTSUS

Based on the structure of the HTSUS, there may be multiple levels of indented article description language within a heading. Some of this article description language may not be directly next to a number in the first two columns of the HTSUS. Despite the lack of agency rulings, case law, or other support for doing so, the Government has dubbed such article description language as "numerically unaligned." Even though this language is not next to a number, it is included as part of the full article description for one of the even-numbered levels of the HTSUS (*e.g.*, it could be the start, end, or something in between based on the number of indented article description levels).

This is how CBP and the courts have viewed and interpreted "numerically unaligned" HTSUS article description language. Consider, for example, *Shamrock Building Materials v. United States*, 619 F. Supp. 3d 1337 (Ct. Int'l Trade 2023), *appeal docketed*, No. 23-1648 (Fed. Cir. Mar. 23, 2023), in which this Court includes all heading, subheading, and statistical article description language (including "numerically unaligned" language) in the full article description for subheading 7306.30.5028. *Id.* at 1342–43. Further, in its discussion of the subheadings of heading 7306, the Court states:

> Within the six-digit subheading, eight-digit subheading 7306.30.10, HTSUS includes welded steel pipe and tube of circular cross section "[h]aving a wall thickness of less than 1.65 mm" while subheading 7306.30.50 ("Other …") includes welded steel pipe and tube of circular cross section "[h]aving a wall thickness of 1.65 mm or more." The subject merchandise falls within these two eight-digit subheadings, depending on the wall thickness of the individual product.

*Id.* at 1347. The article description "Having a wall thickness of 1.65 mm or more:" is not next to a number in the HTSUS, but is recognized to be included in the article description for 8-digit

subheading 7306.30.50—the same as the article description language "Having a wall thickness of less than 1.65 mm" that is next to 8-digit subheading number 7603.30.10. *Id.* The excerpt from HTSUS (2018) subheading 7306.30 below shows this language:

| 7306.30 |  | (con.)<br>Other, welded, of circular cross section, of iron or nonalloy steel: |  |  |
|---------|-----|------------------------------------------------|-----|------|
| 7306.30.10 | 00 | Having a wall thickness of less than 1.65 mm............. | kg............... | Free |
|  |  | Having a wall thickness of 1.65 mm or more: |  |  |
| 7306.30.30 | 00 | Tapered steel pipes and tubes principally used as parts of illuminating articles................................... | kg............... | Free |
| 7306.30.50 |  | Other................................................................ |  | Free |

This "wall thickness" article description language above is treated the same because it is at the same level of indentation in the HTSUS without consideration of whether either article description is "numerically unaligned."

> 5. <u>There Is No Dispute That the "For Use in Civil Aircraft:" Text Falling Below 8-Digit Subheading 8803.30.00 Is Article Description Text that Is Relevant for Tariff Classification and Part of the Article Description for 10-Digit SRN 8803.30.0030</u>

The Government admits that "the entirety of the text in the 'Article Description' column of the HTSUS" is relevant when classifying goods. Resp. at 13, 15. Stating this more precisely, a product cannot be classified in an 8-digit subheading or a 10-digit SRN unless it meets all parts of the appliable article description language. Consistent with the structure of the HTSUS, the Government acknowledges that the "numerically unaligned" language at issue in this case ("For use in civil aircraft:") is "Article Description text" that (1) "clearly 'relates' to, and is 'associate[d]' with, merchandise that is ultimately classifiable in SRNs 8803.30.0015 and 8803.30.0030"; (2) "aides in determining … whether it is appropriately described by [the] SRN"; (3) "is relevant to finding the product coverage of the cited statistical reporting number"; and (4) "assists in the classification of other airplane parts in [the] SRN." *Id.* at 14, 26–27.

When determining the applicable "Stat. Suffix" and statistical article description under HTSUS subheading 8803.30.00, the "For use in civil aircraft:" language must be considered first based on the structure of the indentations in the HTSUS as shown in the excerpt below:

| 8803.30.00 | | Other parts of airplanes or helicopters.................................. | ............ | kg |
| | | For use in civil aircraft: | | |
| | 15 | For use by the Department of Defense or the United States Coast Guard[3/].................................. | | kg |
| | 30 | Other[4/]........................................................... | | kg |
| | 60 | Other................................................................ | | kg |

Only if merchandise meets the "For use in civil aircraft:" article description can one proceed to the next indented level to determine the full article description for the 10-digit level. In other words, no merchandise can be classified in statistical suffix "15" or "30" unless it is for use in civil aircraft. Therefore, "For use in civil aircraft:" is the starting point for classification under statistical suffixes "15" and "30." If the merchandise is not "For use in civil aircraft:" then it is classified in statistical suffix "60." Only through this logical, hierarchical exercise can one determine whether merchandise is classified in statistical suffix "30," which yields the full article description of "*For use in civil aircraft: Other*" for SRN 8803.30.0030 at the 10-digit level.

The discussion above is consistent with the structure of the HTSUS and with prior agency practice recognizing that the "article description" for HTSUS 8-digit subheading 8803.30.00 and its statistical suffixes includes all language in the "Article Description" column, including "*For use in civil aircraft*:". Consider, for example, CBP's classification of a Flap Drive Power Unit under SRN 8803.30.0030, which the agency states, "provides for 'Parts of goods of heading 8801 or 8802: Other parts of airplanes or helicopters: For use in civil aircraft: Other.'" New York Ruling Letter ("NYRL") N300226 (Sept. 25, 2018). Here we see CBP including all heading, subheading, and statistical article description language, including "numerically unaligned" language, when

identifying the article description for SRN 8803.30.0030 (just at the Government does in Def. Resp to Pl. SMF ¶ 24).

### C.  The Government Fails to Show How Spirit's Interpretation of § 1313(j)(5) Is Inconsistent with the Structure of the HTSUS

As detailed above, the fundamentals of tariff classification under the HTSUS, including identification of the article description of classified merchandise, are well-established. To determine the article description of merchandise one must: follow the tabular hierarchy of the HTSUS from the top down; compare indented article description language at the same level before moving to consideration of further indented language; meet all applicable article description language at each level of indentation; and combine all article description language to get the full article description for a 10-digit SRN. As detailed above, following this approach, the full article description for SRN 8803.30.0030 is "*Parts of goods of heading 8801 or 8802: ... Other parts of airplanes or helicopters: For use in civil aircraft: ... Other.*" Breaking the full article description language for 10-digit SRN 8803.30.0030 apart into the 4-, 6-, 8-, and 10-digit levels of the HTSUS yields the following article descriptions for each even-numbered level:

| 4-digit Heading (8803) | 6-digit/8-digit Subheading (8803.30/8803.30.00) | 10-digit SRN (8803.30.0030) |
|---|---|---|
| Parts of goods of heading 8801 or 8802: | Other parts of airplanes or helicopters | For use in civil aircraft: Other. |

Since the article description language "For use in civil aircraft:" that follows below the 8-digit subheading (8803.30.00) is relevant for tariff classification, it follows it should also be relevant for drawback eligibility based on tariff classification. It makes no sense to conclude that such language would be ignored for drawback purposes when it is so critical for tariff classification. Nevertheless, this is what the Government does by fixating on language next to a

**number** (*i.e.*, next to the 8th digit and next to the 10th digit) rather than the full article description for the 8-digit **subheading** or a 10-digit **SRN,** as required by § 1313(j)(5).

There is specific reference in § 1313(j)(5) to how eligible merchandise is classified. The phrases "*under which the imported merchandise is classified*" in § 1313(j)(5)(A) and "*are classifiable under*" in § 1313(j)(5)(B)(i) are direct references to the tariff classification process. There is nothing in § 1313(j)(5) that, implicitly or explicitly, would limit the application of standard principles of tariff classification to the classification process as referenced in this statute. *United States v. Banker*, 876 F.3d 530, 538 (4th Cir. 2017) (noting that "absent an indication that we should do otherwise, the Court should interpret [related] statutes *in pari materia*, that is, in a consistent manner") (citing *United States v. Mills*, 850 F.3d 693, 698–99 (4th Cir. 2017) (stating that the doctrine of *in pari materia* means that "adjacent statutory subsections that refer to the same subject matter should be read harmoniously")). No different approach for determining an article description is specified in the context of § 1313(j)(5) and the Government admits the Drawback Statute "does not speak to or otherwise reference text that is unaligned with, and between, a specific 8-digit HTSUS subheading number or a 10-digit SRN." *Id.* at 11. Therefore, the article description approach applied for tariff classification under the HTSUS is not altered when applying the Drawback Statute.[8] In fact, the Government's Rule 30(b)(6) witness admits the article description in either case is the same. Exhibit B, Singh Dep. Tr. 103:7–103:10 ("[SPIRIT'S COUNSEL]: Those article descriptions you just gave me, those were the same for tariff classification and drawback purposes? [WITNESS]: Yes."). As detailed herein, the identified

---

[8]   Ironically, the Government cites a case addressing the so-called hiding of "elephants in mouseholes," yet does precisely what the case warns against by claiming the Drawback Statute somehow alters the well-established principles of tariff classification (*i.e.*, a different article description for drawback compared to tariff classification). Resp at 23 (citing *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001)).

article description language ("For use in civil aircraft:") is not ignored when determining the 10-digit SRN under which airplane parts are classifiable. The Government admits this. Resp. at 26. For the reasons above, there is no basis to ignore this article description language for drawback.

Spirit believes that the statutory scheme of the *Tariff Act of 1930* requires the same principles applied in tariff classification under the HTSUS to also apply to § 1313(j)(5). However, the Government claims that this approach creates an "untenable result" based on "the product of an unsupported reading of the tariff and drawback statutes." Resp. at 23. Further, the Government claims that Spirit's interpretation "requires the statutory provision to encompass and give effect to terms that Congress saw fit not to include." *Id.* This makes no sense as § 1313(j)(5) specifically references the HTSUS and article descriptions at the 8-digit and 10-digit level without limitation. There is simply no support for the Government's application of the "For use in civil aircraft:" article description language for determining tariff classification under the HTSUS, but not when interpreting the related Drawback Statute based on tariff classification.

Despite the well-established guidance from standard tariff classification practice, the Government also claims that Spirit's interpretation should be rejected because it "effectively erases the distinctions between different SRNs." Resp. at 23. According to the Government, under Spirit's approach, the terms "For use by the Department of Defense …" under SRN 8803.30.0015 and "Other" under SRN 8803.30.0030 are "collaps[ed] … into one all-encompassing statistical annotation." *Id.* at 24. Contrary to the Government's assertion, it simply cannot be disputed here that, for purposes of statistical reporting (and under either party's interpretation), products classified under SRNs 8803.30.0015 and 8803.30.0030 are readily distinguishable by the terms of their full statistical article descriptions, which include the beginning phrase "For use in civil aircraft:", but end with the unique language next to the statistical suffixes, as illustrated below:

| 10-Digit SRN | Full Article Description for 10-Digit Level |
|---|---|
| 8803.30.0015 | For use in civil aircraft: For use by the Department of Defense or the United States Coast Guard |
| 8803.30.0030 | For use in civil aircraft: Other |
| 8803.30.0060 | Other |

Thus, there is no "collaps[ing]" or consolidation of SRNs 8803.30.0015 and 8803.30.0030 into a single SRN under Spirit's interpretation. Any suggestion otherwise is erroneous on its face.

Incredibly, the Government claims that since these SRNs both start with for use in civil aircraft "it makes no difference for drawback eligibility purposes or otherwise whether or not a civil airplane or helicopter part may be used by the Department of Defense or U.S. Coast Guard." Resp. at 24. However, the Government cannot escape the simple fact that the "For use in civil aircraft:" language is required to define the "distinct statistical annotations" under 8-digit subheading 8803.30.00, which they describe as follows:

> SRN 8803.30.0060 covers airplane and helicopter parts that are not used in civil aircraft; SRN 8803.30.0015 covers airplane and helicopter parts that are used in civil aircraft by the Department of Defense and U.S. Coast Guard; and SRN 8803.30.0030 covers the balance of all other civil aircraft parts.

Resp. at 25. The scope of each of these SRNs is defined by the part's use (or not) in civil aircraft. When properly considering the full statistical article description for each of these SRNs, it is clear that they each have different text and must be afforded their respective individual meaning for all reasons, including tariff classification and drawback.

## V.   The Government's Complaints about Uncertainty in Spirit's Interpretation Expose the Flaws in Its Own Arguments

The Government argues that CBP's "straightforward programming of the ACE drawback module" is consistent with Congress's goal of "standardiz[ing] the drawback process" and "producing predictable outcomes." Resp. at 5. By contrast, the Government asserts that "uncertainty bounds" under Spirit's interpretation of the Drawback Statute. *Id.* at 32 (asserting that

Spirit's interpretation results in "no clear, logical, or known beginning to the article description text for an 8-digit HTSUS subheading number or 10-digit SRN."). The Government further argues that Spirit's approach leads to an interpretation of the HTSUS that is somehow "both under- and over-inclusive" for drawback. *Id.* at 23. As explained further below, however, the Government's interpretation of the Drawback Statute leads to far more uncertainty for purposes of substitution unused merchandise drawback eligibility. In contrast, Spirit's interpretation can be rationally and consistently applied across the HTSUS.

## A. The Government's Complaints about Uncertainty under Spirit's Approach Are Without Merit

At several points in its brief, the Government asserts that its interpretation of the Drawback Statute is a "straightforward" construction of the HTSUS that promotes predictability, while Spirit's is an "entirely subjective construction" that generates unpredictability. Resp. at 5; *see also id.* at 19 ("Ascertaining which level of unaligned and unnumbered text actually begins the article description for a particular SRN, and thus controls the drawback eligibility of merchandise classifiable therein, becomes a subjective exercise in guesswork under Spirit's application of the drawback statute to the tariff statute."). This claim is meritless when one considers the hierarchical, logical structure of the HTSUS and the operative effect of the indentations therein.

There is no dispute that in the HTSUS there are 4-digit headings, 6-digit subheadings, 8-digit subheadings, and 10-digit SRNs. Each of these even-numbered levels has an associated article description. Spirit has shown a logical interpretation of the HTSUS language that allows the identification of the full article description for each of these even-numbered levels that is inclusive of all "article description" language in the HTSUS. Further, Spirit's approach can be applied rationally and consistently across the HTSUS with the result being that all article description language is allocated and associated with the relevant 4-digit heading, 6-digit subheading, 8-digit

subheading, or 10-digit SRN.  In contrast, the Government's approach ignores relevant article description language, leaving it unassigned to one of the even-numbered levels if it is "numerically unaligned."

Rather than providing a reasoned interpretation that could be applied to the all even-numbered levels of the HTSUS and is inclusive of all article description language therein, the Government merely claims that Spirit's interpretation of the article description language is an "inexact and subjective approach" that creates "confusion" and "inconsistent results." *Id.* at 17, 19, 32. The Government also grapples with the concept of where the article description for one even-numbered level of the HTSUS ends and the next begins, claiming that "ascertaining exactly where the text of an article description ends raises more questions than answers." *Id.* at 19. This is a curious statement, as the Government has no such issue when engaging in tariff classification analysis. Further, the beginning of an article description at the 8-digit subheading and 10-digit SRN level is required for substitution unused merchandise drawback under § 1313(j)(5). Since the HTSUS has even-numbered levels of 4, 6, 8, and 10, it follows that finding the beginning of a particular even-numbered level of the HSTUS would necessitate knowing where the article description for the prior even-numbered level ends.

As explained further below, the Government is attempting to create confusion and uncertainty where there is none. Indeed, it is only the Government that seems confused as to the distinction between the various levels of the HTSUS and their related article descriptions. Further, it seems this confusion is limited to the substitution unused merchandise drawback requirements under § 1313(j)(5).

**B. Spirit's Interpretation Can Be Consistently Applied in a Clear and Straightforward Manner**

In contrast to the Government's claims, Spirit's approach can be used to clearly identify the full article description for all HTSUS tariff provisions at the 4-digit heading, 6-digit subheading, 8-digit subheading, and 10-digit SRN levels with certainty and with inclusion of all article description language in the HTSUS—giving effect and meaning to all statutory language. The Government's approach cannot and the folly of the Government's position is illustrated by reviewing the examples cited in its brief.

The first example provided by the Government to showcase its "confusion" is HTSUS subheading 8504.90.96. For this subheading, the Government asserts:

> Under Spirit's interpretation, the article description for HTSUS subheading 8504.90.96 could conceivably begin with "Electrical" at the 4-digit heading level, "Parts" at the 6-digit level, "Other" at the numerically unaligned level between the 6th and 8th digits, or at the 8-digit level "Other." All are potentially "relevant article descriptions" to the subheading and listed SRNs.

Resp. at 17–19. In this example, we have a 4-digit heading (8504), 6-digit subheading (8504.90), and 8-digit subheading (8504.90.96). The article description language for HTSUS 4-digit heading 8504 is "*Electrical transformers, static converters (for example, rectifiers) and inductors; parts thereof,*" which is the unindented text found in the Article Description column for this heading. This article description begins with the term "electrical" and ends with the term "thereof." An excerpt of the HTSUS (2018) showing the unindented language of heading 8504 is included below:

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | |
|---|---|---|---|---|
| 8504 | | Electrical transformers, static converters (for example, rectifiers) and inductors; parts thereof: | | |

The article description language for 6-digit subheading 8504.90 is the singular word "Parts," which is found at the first level of indentation in the Article Description column for heading 8504. An excerpt of the HTSUS showing the indented language of subheading 8504.90 is included below:

| 8504.90 | | | Parts: | | |
|---------|---|---|--------|---|---|

We can confirm the article descriptions for this 4-digit heading and 6-digit subheading by reviewing the WCO Harmonized System Nomenclature (which the HTSUS is based on).[9] Below is an excerpt from the Harmonized System (2017) for heading 8504:[10]

| 85.04 | | **Electrical transformers, static converters (for example, rectifiers) and inductors.** |
|-------|---------|---|
| | 8504.10 | - Ballasts for discharge lamps or tubes |
| | | - Liquid dielectric transformers : |
| | 8504.21 | -- Having a power handling capacity not exceeding 650 kVA |
| | 8504.22 | -- Having a power handling capacity exceeding 650 kVA but not exceeding 10,000 kVA |
| | 8504.23 | -- Having a power handling capacity exceeding 10,000 kVA |
| | | - Other transformers : |
| | 8504.31 | -- Having a power handling capacity not exceeding 1 kVA |
| | 8504.32 | -- Having a power handling capacity exceeding 1 kVA but not exceeding 16 kVA |
| | 8504.33 | -- Having a power handling capacity exceeding 16 kVA but not exceeding 500 kVA |
| | 8504.34 | -- Having a power handling capacity exceeding 500 kVA |
| | 8504.40 | - Static converters |
| | 8504.50 | - Other inductors |
| | 8504.90 | - Parts |

[9]  As CBP notes in its Informed Compliance Publication on Tariff Classification, "[t]he act of classifying goods requires an importer to be familiar with the HTSUS (***and*** the instrument upon which it is based, the international Harmonized Commodity Description and Coding System)." CBP, "What Every Member of the Trade Community Should Know About: Tariff Classification" (May 2004) (hereinafter "ICP") at pg. 8 (emphasis added) (https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/icp017r2_3_0.pdf) (last visited Aug. 18, 2023).

[10]  This excerpt shows the one-dash/two-dash alignment that exists at the 6-digit subheading level in the Harmonized System. *See* Resp. at 13–14 (citing the Explanatory Note to GRI 6). The dashes are not included in the HTSUS and do not exist at the 8- and 10-digit level. However, the concept of combining one dash and two dash article description language to get the full article description for a subheading is consistent in the HTSUS. ICP at pgs. 12, 23.

The 8-digit subheadings and 10-digit SRNs are U.S.-specific. *See* HTSUS Preface; HRL H307063. The portion of the HTSUS with 8-digit subheading 8504.90.96 and the 10-digit SRNs under this subheading is excerpted below:

| 8504.90 | | Parts: | | |
|---------|----|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|-------|---|
| | | Of power supplies for automatic data processing machines or units thereof of heading 8471; of power supplies for goods of subheading 8443.31 or 8443.32; of power supplies for monitors of subheading 8528.42 or 8528.52 or projectors of subheading 8528.62: | | |
| 8504.90.20 | 00 | Printed circuit assemblies....................................... | No............. | F |
| 8504.90.41 | 00 | Other.................................................................. | X............. | F |
| | | Other: | | |
| | | Printed circuit assemblies: | | |
| 8504.90.65 | 00 | Of the goods of subheading 8504.40 or 8504.50 for telecommunication apparatus...... | No............. | F |
| 8504.90.75 | 00 | Other.................................................................. | No............. | C |
| 8504.90.96 | | Other:............................................................... | ................. | C |
| | 10 | Ferrites: | No. | |
| | | For transformers........................................ | | |
| | 30 | Other.................................................................. | No. | |
| | | Other parts: | | |
| | | Of transformers: | | |
| | 34 | Laminations for incorporation into stacked cores........................................... | No. | |
| | 38 | Stacked cores for incorporation into transformers.............................................. | No. | |
| | 42 | Wound cores for incorporation into transformers.............................................. | No. | |
| | 46 | Other.................................................................. | No. | |
| | 50 | Of static converters.................................... | X | |
| | 90 | Other.................................................................. | X | |

Based on the HTSUS article description language above, the full article description language for 8-digit subheading 8504.90.96 is "Other: Other." This article description begins with the term "other" and ends with the term "other." For this 8-digit subheading, we find the beginning language of the article description by moving in one level of indentation from the 8504.90 6-digit subheading level to compare "Of power supplies … :" and "Other:". We find the end language next to the 8-digit number 8504.90.96 followed by the dots (after comparing "Printed circuit assemblies:" and "Other:" at the next indented level).

The article description for the 10-digit SRNs under 8-digit subheading 8504.90.96 begins with terms "Ferrites" or "Other parts:" which is the comparable article description language found at the next level of indentation. The end of the full article description for each 10-digit SRN under 8-digit subheading 8504.90.96 is the article description language starting on the same line as the 2-digit statistical suffix followed by the dots.[11] The full statistical article description for each 10-digit SRN under 8-digit subheading 8504.90.96 is listed in the table below (*i.e.*, the 10-digit level only, excluding heading and subheading language):

| 10-digit SRN | Full Article Description for 10-digit Level |
|---|---|
| 8504.90.9610 | Ferrites: For transformers |
| 8504.90.9630 | Ferrites: Other |
| 8504.90.9634 | Other parts: Of transformers: Laminations for incorporation into stacked cores |
| 8504.90.9638 | Other parts: Of transformers: Stacked cores for incorporation into Transformers |
| 8504.90.9642 | Other parts: Of transformers: Wound cores for incorporation into Transformers |
| 8504.90.9646 | Other parts: Of transformers: Other |
| 8504.90.9650 | Other parts: Of static converters |
| 8504.90.9690 | Other parts: Other |

---

[11]    As noted in Spirit's Brief, there are dots that provide guidance on where the 8-digit and 10-digit article descriptions end. The Government does not address the relevance of these dots.

As detailed in the example above, Spirit's approach follows the logical, hierarchical structure of the HTSUS and includes all article description language. This approach can be applied across all HTSUS tariff provisions to isolate the article descriptions at the even-numbered levels.

The Government also includes a discussion of 6-digit subheading 8708.99, claiming that this is "a basket provision providing for 'Other.'" Resp. at 21. This is incorrect, as the full article description for this 6-digit subheading is "*Other parts and accessories: Other*" when the applicable article description language is properly combined. See excerpt from HTSUS (2018) below:

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity |
|---|---|---|---|
| 8708 (con.) | | Parts and accessories of the motor vehicles of headings 8701 to 8705: (con.) | |
| 8708.99 | | Other parts and accessories: (con.)<br>Other: | |
| | | Parts of tractors suitable for agricultural use: | |
| 8708.99.03 | 00 | Vibration control goods containing rubber...... | No. ............ |
| 8708.99.06 | 00 | Double flanged wheel hub units incorporating ball bearings...................................................... | No. ............ |
| 8708.99.16 | 00 | Other parts for power trains............................. | No. ............ |

Indeed, we know that the Government combines article description language in this way at the 6-digit subheading level based on the example found in CBP's ICP, per the excerpt below:

## Heading and Subheading Provisions

Merchandise may be specifically provided for or identified by its common, commercial or technical name in an article or product description (i.e., the text to a heading or subheading) in the Harmonized System.  When merchandise is not so specifically provided for in the Harmonized System, the article description covering such merchandise is generally considered to be a "residual provision" (sometimes also referred to as a "basket provision") by use of the phrase "not elsewhere specified or included" or by the use of the term "other."

EXAMPLE:  Heading 4010 (see excerpt below from heading 4010) provides for "conveyor or transmission belts or belting, of vulcanised

rubber." Within the subheading structure of that heading, there is 5-digit (or "one-dash") subheading 4010.1 which provides for "conveyor belts or belting." Within the subheading structure of 5-digit subheading 4010.1 there are four 6-digit (or "two-dash") subheadings: 4010.11 which provides for conveyor belts or belting "reinforced only with metal"; 4010.12 which provides for conveyor belts or belting "reinforced only with textile materials"; 4010.13 which provides for conveyor belts or belting "reinforced only with plastics"; and 4010.19 which provides for "other" conveyor belts or belting. Thus, all merchandise properly classified in 5-digit subheading 4010.1 that does not satisfy the terms of 6-digit subheadings 4010.11, 4010.12 or 4010.13 would be classified in 6-digit residual subheading 4010.19.

Section VII
Chapter 40
40.09$_2$/13$_1$

| Heading No. | H.S. Code | |
|---|---|---|
| **40.10** | | **Conveyor or transmission belts or belting, of vulcanised rubber.** |
| | | - Conveyor belts or belting: |
| | 4010.11 | -- Reinforced only with metal |
| | 4010.12 | -- Reinforced only with textile materials |
| | 4010.13 | -- Reinforced only with plastics |
| | 4010.19 | -- Other |
| | | - Transmission belts or belting: |
| | 4010.21 | --Endless transmission belts of trapezoidal cross-section (V-belts), whether or not grooved, of a circumference exceeding 60 cm but not exceeding 180 cm. |

\* \* \*

Excerpt from heading 4010 of the Harmonized System

ICP at pgs. 11–12. From the ICP example, we see that the "numerically unaligned" article description language is part of the full article description for each 6-digit subheading under it. *Id.*[12] This is logical and follows traditional rules of construction, as the merchandise categories for each

---

[12]    While the ICP references a "5-digit (or 'one-dash')" subheading in this Harmonized System example, there are no odd-digit tariff provision levels in the HTSUS. Instead, the HTSUS operates on a system of indentation at even-numbered levels 4, 6, 8, and 10. *Id.* at 11–12.

of these 6-digit subheadings would make no sense without the context of the introductory article description language (*i.e.*, one would not know if the 6-digit subheadings provided for conveyor belts/belting or transmission belts/belting).[13]

Continuing with its focus on 6-digit subheading 8708.99 and further exposing the error in its interpretation, the Government asks: "what does the text for SRN 8708.99.1600 'end with' under Spirit's query: 'Other' or 'trains'? Does 'end with' mean the beginning of the end of the text aligned with an 8- or 10-digit number line, or the last word of that line? It is unclear." Resp. at 22. Following Spirit's logical, hierarchical approach and including all article description language, the full article description language for 10-digit SRN 8708.99.1600 (*i.e.*, excluding the heading and subheading article description language) is "*Parts of tractors suitable for agricultural use: Other parts for power trains*" and, thus, begins with the term "Parts" and ends with the term "trains."[14] This is clear when the indentations of the HTSUS are properly considered and all applicable article description language is properly combined as shown in the HTSUS excerpt below:

---

[13]     Although the last example in the ICP (subheading 4010.19) places the word "other" first in the combined article description, this is inconsistent amongst the examples provided and likely was a stylistic choice for drafting purposes. Further, this wording arrangement does not follow from the statutory language, as the HTSUS has a sequential and hierarchical structure that requires article description language to be considered and combined in order. ICP at 11–12.

[14]     The article description for 8-digit subheading 8708.99.16 and 10-digit SRN 8708.99.1600 are the same in the Government's view, given that the 8-digit subheading is not further subdivided. *See* HRL H303399 (Mar. 10, 2020) ("In this case, 8411.81.80 and 8411.82.80, the eight-digit was not subdivided for statistical purposes, and because this division is not further subdivided it automatically remains a basket residual provision, and substitution is prohibited under 19 U.S.C. § 1313(j)(5).").

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity |
|---|---|---|---|
| 8708 (con.) | | Parts and accessories of the motor vehicles of headings 8701 to 8705: (con.) | |
| 8708.99 | | Other parts and accessories: (con.)<br>Other:<br>Parts of tractors suitable for agricultural use: | |
| 8708.99.03 | 00 | Vibration control goods containing rubber...... | No. ............ |
| 8708.99.06 | 00 | Double flanged wheel hub units incorporating ball bearings.................................... | No. ............ |
| 8708.99.16 | 00 | Other parts for power trains............................ | No. ............ |

### C. While the Government's Interpretation May Be "Administratively Convenient" for CBP's Programming of the ACE Module, It Is Improper and Creates Uncertainty

Since the Government's interpretation of the Drawback Statute lacks support in the plain text of the statute or the application of the statutory canons of construction, it rests solely on CBP's preferred programming of the ACE drawback module (*i.e.*, "to reject drawback claims for unused merchandise if the first word in the "Article Description" column of the HTSUS that is aligned with a given 8-digit subheading number and 10-digit statistical reporting number is 'other.'"). Resp. at 9. Thus, the Government's interpretation appears to be based on "administrative convenience," an approach that has been rejected by the courts and should be rejected here as well. *See, e.g.*, *Genus Med. Techs. LLC.*, 994 F.3d at 645; *Mullins*, 664 F.2d at 309. Beyond this basic legal issue, the Government's approach is arbitrary and creates absurd results so it must be rejected.

Consider, for example, HTSUS heading 2204, which provides for "*Wine of fresh grapes, including fortified wines; grape must other than that of heading 2009.*" The article description language next to several statistical suffixes for the SRNs within this heading were changed from "Other" to "Not Certified Organic" in the 2021 HTSUS (*i.e.*, 10-digit SRNs 2204.21.5040 and 2204.21.5055), which makes them eligible for drawback under the Government's interpretation,

when previously they would not have been. A side by side comparison of the article description language in the 2020 HTSUS versus the 2021 HTSUS is included below:



This example shows the arbitrary nature of the Government's interpretation. While the context and scope of these SRNs has not changed, simply changing the language that appears next to the statistical suffix makes these SRNs eligible for drawback under the Government's approach. We note that these SRNs would have been eligible for substitution unused merchandise drawback under Spirit's interpretation without the language change since the "numerically unaligned" language above the numbered "Stat. Suffix" lines (*i.e.*, "Valued not over $1.05/liter:" and "Valued over $1.05/liter:") is the beginning of the article description for each of these SRNs. Therefore, under Spirit's interpretation the full 10-digit statistical article description for all of the SRNs under 8-digit subheading 2204.21.50 begin with the term "valued" both before and after the change.

## VI.    <u>The Canons of Statutory Interpretation Do Not Support the Government's Position</u>

Beyond its failure to provide any showing as to how its interpretation of the Drawback Statute aligns with plain language of the statute and is supported by the structure of the HTSUS, the Government, more broadly, fails to point to any canons of statutory construction that may

support its position. It is well-established that statutory interpretation within the *Tariff Act of 1930* is assisted by the canons of construction. *See Michael Simon Design, Inc. v. United States*, 452 F. Supp. 2d 1316, 1322 (Ct. Int'l Trade 2006) ("If the statutory language of a tariff classification is ambiguous, the court may use various aids in construing the statute and disclosing legislative intent," including "standard canons of statutory construction or legislative ratification of prior judicial construction.") (cleaned up) (citations omitted). Since the Government cites no canons that support its interpretation, the lack of support from a plain reading of the statute is all the more problematic given its interpretation falls apart when considering the canons of statutory construction cited and applied in support of Spirit's interpretation—none of which were meaningfully addressed in the Government's brief.

Rather than providing affirmative support for its own interpretation, the Government focuses its attention on two canons cited by Spirit—*i.e.*, the Rule Against Surplusage and the Punctuation Canon. First, as to the Rule Against Surplusage, there is no dispute here that a court should "interpret [a] statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." *Motorola, Inc. v. United States*, 462 F. Supp. 2d 1367, 1381 (Ct. Int'l Trade 2006). "[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013). Implicitly acknowledging the potential conflict between the Rule Against Surplusage and its interpretation of the Drawback Statute, it appears the Government is asserting that the article description language at issue ("For use in civil aircraft:") is not rendered superfluous here because it is relevant to tariff classification. *See* Resp. 13, 26–27.

As discussed above there is no basis for a distinction in the article description for tariff classification under the HTSUS and drawback under § 1313(j)(5). In fact, the Government agrees

they should be the same. Exhibit B, Singh Dep. Tr. 103:7–103:10. However, while the Government acknowledges the "For use in civil aircraft:" text is part of the article description for tariff classification, the Government has rendered it surplusage for drawback. This interpretation must be rejected.

The Government also takes issue with Spirit's application of the Punctuation Canon to clarify the impact of the indentation within the HSTUS and use of a colon in the "For use in civil aircraft:" article description language. Without directly addressing this issue, the Government makes an argument based on a narrow reading of *United States v. UPS Customhouse Brokerage, Inc.*, 558 F. Supp. 2d 1331 (Ct. Int'l Trade 2008), *aff'd in part, vacated in part*, 575 F.3d 1376 (Fed. Cir. 2009), asserting the Court in that case did not expressly indicate a colon makes numerically unaligned article description language part of the article description for the subheadings or SRNs listed below it. Resp. at 28 (noting that the court in *UPS Customhouse* found the phrase "Not incorporating a cathode ray tube:" to "introduce" the language of the 10-digit SRNs indented thereunder). However, the Government provides no explanation why use of the term "introduce" forecloses Spirit's argument. Nor does the Government address the implicit structural concepts of the HTSUS that support Spirit's interpretation or the concept that the phrase "introduce" indicates the beginning point of the article description language indented under the phrase "Not incorporating a cathode ray tube:". Finally, the Government does not address that Spirit's interpretation of *UPS Customhouse* aligns with the way article description language is combined in the example found in CBP's ICP on Tariff Classification. *See supra* 38–39. Instead, the Government summarily concludes that *UPS Customhouse,* and similar decisions cited by Spirit (addressed by the Government only in a footnote), should be ignored wholesale. Resp. 29 (arguing

that application of the Punctuation Canon is unnecessary based on the "plain text of the drawback statute.").

Contrary to the Government's arguments, there is more meaning to be gleaned from the structure of the statistical language in the HTSUS (*i.e.*, indentations) and the inclusion of a colon after the article description text "For use in civil aircraft:". It is well-established that a semi-colon is used to indicate separate article descriptions. *See, e.g.*, *Com. Aluminum Cookware Co. v. United States*, 938 F. Supp. 875, 883 (Ct. Int'l. Trade 1996) (noting that "the semicolons dividing the classes of merchandise in Heading 7010 … create a wall around each grouping of items … consistent with grammatical rules on the principal use of the semicolon—to separate independent clauses of a sentence."). However, a colon generally indicates that there is additional relevant information to follow that is part of the article description of the merchandise. *See* Government of Canada, "Punctuation in the *Customs Tariff*, Memorandum D10-0-2" (Sept. 24, 2015) (https://www.cbsa-asfc.gc.ca/publications/dm-md/d10/d10-0-2-eng.html) (last visited Aug. 11, 2023).[15] Since the "For use in civil aircraft:" article description language at issue is followed by a colon, not a semi-colon, it is not a separate article description from the indented text that follows.

Ultimately, any attempt by the Government to address the application of the canons of statutory construction in this case, is simply its "plain text" argument in disguise, namely that the article description language "For use in civil aircraft:" should be ignored for purposes of § 1313(j)(5) because it is only "relevant to the product coverage and ultimate classification of" imported aircraft parts. Resp at 13–14. However, absent a basis in the plain text of the statute—a basis that we assert does not exist and, even according to the Government's Rule 30(b)(6) witness,

---

[15]     Based on the international nature of the Harmonized System, guidance from "sister signatories" may be entitled to "respectful consideration." *See, e.g.*, *Cummins Inc. v. United States*, 454 F.3d 1361, 1366 (Fed. Cir. 2006).

is lacking here, *see* <u>Exhibit B</u>, Singh Dep. Tr. 40:19–25—the Government must point to *some* basis, via the canons of statutory construction or otherwise, to support its interpretation. Like its plain text argument, the Government has no support for its interpretation of § 1313(j)(5) within the canons of statutory construction.

**VII.**    **The Government's Interpretation of the Drawback Statute Does Not Align With Legislative Intent**

Another core defect in the Government's interpretation of the Drawback Statute is its failure to align with the Congressional intent of TFTEA; namely, Congress's aim to expand the availability of unused merchandise drawback. *See Modernized Drawback*, 83 Fed. Reg. 64942, 64959 (Dec. 18, 2018) ("CBP agrees that Congress has supported substitution drawback. In fact, the … statute expand[s] the availability of substitution for drawback claims."). Under the Government's interpretation, substitution unused merchandise drawback for airplane parts is narrower than Spirit's interpretation as the only parts of airplanes that are eligible for substitution unused merchandise drawback are "propellors and rotors and parts thereof," "undercarriages and parts thereof" and other parts "for use by the Department of Defense or the United States Coast Guard." Any other parts of airplanes are not eligible.

Aviation is a cornerstone industry in the United States. *See* Federal Aviation Administration ("FAA"), "The Economic Impact of U.S. Civil Aviation: 2020" (Aug. 2022) ([https://www.faa.gov/sites/faa.gov/files/2022-08/2022-APL-038%202022_economic%20impact_report.pdf](https://www.faa.gov/sites/faa.gov/files/2022-08/2022-APL-038%202022_economic%20impact_report.pdf)) (last visited Aug. 18, 2023). The Civil Aircraft Agreement ("CAA") sets duty free trade of civil aircraft and their parts as apriority. Agreement on Trade in Civil Aircraft, 31 U.S.T. 619, T.I.A.S. No. 9620 (Apr. 12, 1979) ("<u>Desiring</u> to achieve maximum freedom of world trade in civil aircraft, parts and related equipment, including elimination of duties, and to the fullest extent possible, the reduction or elimination of trade restricting or distorting effects"); *see also* Civil

Aircraft Agreement, Title VI of the Trade Agreements Act of 1979, Pub.L. No. 96-39, § 601, 93 Stat. 144, 267 (1979). The Government's interpretation frustrates the purpose of this international agreement.[16] *Id.*

The Government's interpretation of the Drawback Statute allows only a small portion of airplane parts to be eligible for substitution unused merchandise drawback. Resp. at 33. Many specific parts (*e.g.,* fuselages, wings, pylons, and nacelles) for civil aircraft are not eligible under the Government's interpretation unless "for use by the Department of Defense …." This makes no sense as civil aircraft parts are identical whether or not they are used by the Department of Defense, the United States Coast Guard, or some other non-military entity, so the distinction for drawback becomes even more arbitrary when this is considered.[17]

Spirit has shown that there is specific harm to Spirit and the aviation industry under the Government's interpretation. In contrast, Spirit's interpretation expands substitution unused merchandise drawback for airplane parts. Therefore, Spirit's interpretation in this case should be preferred as "[n]o regulation is 'appropriate' if it does significantly more harm than good." *Michigan v. EPA*, 576 U.S. 743, 752 (2015).

---

[16]     By frustrating the intent of the CAA, the Government's interpretation runs counter to the maxim that "[i]nternational trade prospers best when the participants can rely on established rules and regulations." *Home Depot, Inc. v. United States*, 427 F. Supp. 2d 1278, 1284 (Ct. Int'l Trade 2006), *aff'd*, 491 F.3d 1334 (Fed. Cir. 2007) (citing to *Hemscheidt Corp. v. United States*, 72 F.3d 868, 872 (Fed. Cir. 1995)).

[17]     To be classified as a part for use in civil aircraft, the part must be manufactured in accordance with a certification issued by the FAA or other airworthiness authority. *See* HTSUS, General Note 6. The CAA makes no distinction between aircraft parts imported for military use and aircraft parts imported for non-military use when this requirement is met. Thus, civil aircraft parts would be identical if based on the same certification.

**VIII.**   **The Issues in this Case Are Properly Addressed by this Court, Not the 484(f) Committee**

While the Government agrees that Congress intended to expand the availability of substitution for drawback claims when implementing TFTEA, it claims that a so-called "other-other" exception contained in § (j)(5) was intended to ensure that broad and undefined categories of products classified under a "basket" or "residual" provision are not eligible for unused merchandise drawback. Exhibit B, Singh Dep. Tr. 41:9–14; Resp. at 5, 32–34. However, the extent and application of this exception has been solely based on CBP's erroneous interpretation of the Drawback Statute resulting in the elimination of substitution unused merchandise drawback for airplane parts classified under SRN 8803.30.0030.

As detailed above, the Government's construction of the Drawback Statute ignores "numerically unaligned" article description text in the HSTUS. This results in the exclusion of certain specific, non-residual categories of merchandise from substitution unused merchandise drawback if the full article description for the merchandise at the 8-digit subheading or 10-digit SRN level is not properly considered. This is a perpetual issue that can be exacerbated as tariff language is changed, whether at the statutory or statistical level.

For example, certain statistical language was recently revised to obtain more detailed import statistics for organic syrup classified under HTSUS heading 1702. Prior to 2023, certain syrup classified under SRN 1702.60.4020 would be eligible for substitution unused merchandise drawback under the Government's interpretation. As shown in the excerpt from the HTSUS (2022) below, although the article description text next to 8-digit subheading 1702.60.40 is "Other," the article description next to the two-digit statistical suffix "20" was "Syrup":



The statistical language under 8-digit subheading 1702.60.40 was modified in HTSUS (2023) to create two specific categories of syrup, "Certified Organic" (statistical suffix "30") and "Other" (statistical suffix "50") resulting in the term "Syrup" becoming "numerically unaligned" under the 8-digit subheading (1702.60.40).

Under the Government's interpretation, imported syrup classified under HTSUS 8-digit subheading 1702.60.40 that is not "Certified Organic" is no longer eligible for substitution unused merchandise drawback (as it was before the change to the statistical language). This is the result even though the SRN under which it is classified (1702.60.4050) is narrower in scope than the prior SRN under which it was classified (1702.60.4020).[18] Thus, under the Government's interpretation, more specificity in article description language at the statistical level could

---

[18]     These circumstances are essentially the same as those arising in relation to the pre- and post-1998 statistical reporting language covering civil aircraft parts under 8-digit subheading 8803.30.00: *i.e.*, certain imported goods that would have been eligible for substitution unused merchandise drawback under prior language are excluded due to a change to the statistical reporting language that was intended to create more detailed import statistics. Pl.'s Br. at 37–39.

potentially lead to less eligibility for substitution unused merchandise drawback (*i.e.*, merchandise that was previously eligible for substitution unused merchandise drawback suddenly becomes *ineligible*, despite the fact the statistical category for this merchandise is more specific and *narrower* in scope as a result of the change). From both a practical and policy perspective, the Government's interpretation leads to absurd results, not to mention results that run directly counter to the legislative intent behind TFTEA.

On this issue, the Government has no answer and again reverts back to its "plain meaning" argument. Resp. at 33–34. Ultimately, the Government is asserting that any absurdities resulting from its interpretation of § 1313(j)(5) (including those arising from the examples described above) is of no consequence for purposes of statutory interpretation. But as explained above, this argument—even if it was backed by the plain text (which it is not)—fails as a matter of law. *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940) (explaining that a reading of a statute that "would lead to absurd results is to be avoided when [it] can be given a reasonable application consistent with [its] words and with the legislative purpose.").

Rather than acknowledging its erroneous interpretation of the statistical annotations under subheading 8803.30.00 for substitution unused merchandise drawback purposes, the Government asserts Spirit has an issue with the present statistical annotation language and should seek a remedy through the 484(f) Committee. Since a change to statistical language is based on a variety of factors, there is no guarantee that a change requested by an importer would be approved by the 484(f) Committee. Resp. at 6–7, n. 2 (recognizing changes are within the judgment of the 484(f) Committee); *see also* Exhibit 12, Pl. MSJ at ITC0063-0066 (identifying "[t]hree basic criteria that must be satisfied in order for the Committee to approve a new statistical annotation"). Thus, this proposed remedy is not the solution the Government claims it to be.

Further, this case concerns a statutory interpretation issue, which is not a matter that can be addressed by the 484(f) Committee. As discussed above, based on the Government's incorrect interpretation of § 1313(j)(5), the actions of the 484(f) Committee could lead to further confusion and eliminate drawback eligibility in some cases. As a result of the Government's interpretation, the 484(f) Committee would have the ability to alter the customs treatment of goods which is beyond the 484(f) Committee's statutory authority granted in 19 U.S.C. § 1484(f). This cannot be a correct interpretation. *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1112 (9th Cir. 2020) ("Agencies cannot exceed the scope of their authority as circumscribed by Congress.") (citing *City of Arlington v. FCC*, 569 U.S. 290, 297–98 (2013)).

If the Government's interpretation is upheld, there is significant risk of manipulation or unintended results based on a change to statistical language that creates "numericaly unaligned" article description language. The changes to the subheading 8803.30.00 SRNs in the 1998 HTSUS and the change to the syrup SRNs of heading 1702 in the 2023 HTSUS show exactly how this could happen when a once eligible statistical category is split into two or more specific sub-categories under "numerically unaligned" language, with one being "other." While the final category is a smaller, more specific part of the larger statistical group (defined by the "numerically unaligned" language), it would now be ineligible for substitution unused merchandise drawback based on the Government's interpretation. This is an absurd result. In contrast, such products would remain eligible under Spirit's interpretation if the first word of the "numerically unaligned" text is not "other." In fact, any time a statistical annotation is further subdivided and the existing article description becomes "numerically unaligned," it is only under Spirit's interpretation that there is no impact on substitution unused merchandise drawback eligibility.

For the reasons above, the Government's interpretation runs directly afoul of Congress's intent to expand unused merchandise drawback under TFTEA. It also results in the Section 484(f) Committee wielding (intentionally or not) authority to determine substitution unused merchandise drawback eligibility that extends far beyond anything Congress would have contemplated when it passed TFTEA. The Government has improperly interpreted the language of the Drawback Statute by not following the plain meaning of the text and ignoring relevant language in the HTSUS, thereby undermining the intent of both statutes. Therefore, the Government's interpretation of the Drawback Statute is incorrect as a matter of law and must be rejected.

## CONCLUSION

For the reasons set forth above, Spirit respectfully asserts that it has met its burden of showing that CBP's denial of Spirit's claim for substitution unused merchandise drawback (Drawback Claim No. AA6 03265726) is incorrect. Therefore, Spirit respectfully requests that the Court issue summary judgment in its favor and (1) order CBP to declare that merchandise classifiable under 10-digit HTSUS statistical reporting number 8803.30.0030 is eligible for substitution unused merchandise drawback under 19 U.S.C. § 1313(j)(5) (2018); (2) order CBP to correct its ACE Drawback Module to allow for substitution unused merchandise drawback claims where the imported and exported merchandise are classifiable under HTSUS statistical reporting number 8803.30.0030; (3) order CBP to approve Spirit's Drawback Claim No. AA6 03265726 and refund excess duties paid, with interest as provided by law; and (4) grant any other just and proper relief.

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Spirit AeroSystems, Inc.
320 South Canal Street
Suite 3300
Chicago, IL 60606
Telephone (312) 569-1000

By:    /s/ Wm. Randolph Rucker

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: HON. CLAIRE R. KELLY, *JUDGE*

| | | |
|---|---|---|
| SPIRIT AEROSYSTEMS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Court No.  20-00094 |
| UNITED STATES; DEPARTMENT OF | ) | |
| HOMELAND SECURITY; UNITED | ) | |
| STATES CUSTOMS AND BORDER | ) | |
| PROTECTION; MARK A. MORGAN, | ) | |
| IN HIS OFFICIAL CAPACITY AS | ) | |
| ACTING COMMISSIONER, UNITED | ) | |
| STATES CUSTOMS AND BORDER | ) | |
| PROTECTION, | ) | |
| Defendants. | ) | |

## PLAINTIFF'S CERTIFICATION OF COMPLIANCE

I, Wm. Randolph Rucker, counsel for Plaintiff, Spirit AeroSystems, Inc., certify that the foregoing brief complies with the type-volume limitation set forth in the *Standard Chambers Procedures* and USCIT Rules 56 and 81. Specifically, this brief contains 13,537 words (excluding the parts of the brief exempted by *Standard Chambers Procedures* 2(C)) as determined by the word count feature of the word processing program used to create this brief.

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff
Spirit AeroSystems, Inc.
320 S. Canal Street, Suite 3300
Chicago, IL 60606
Telephone (312) 569-1000

By:    /s/ Wm. Randolph Rucker
        Wm. Randolph Rucker

Dated: August 18, 2023

## CERTIFICATE OF SERVICE

Wm. Randolph Rucker certifies that he is an attorney with the law firm of Faegre Drinker

Biddle & Reath LLP, with offices located at 320 S. Canal Street, Suite 3300, Chicago, Illinois

60606, and that on August 18, 2023 on behalf of the Plaintiff herein, he served the attached on:

Alexander J. Vanderweide
U.S. Department of Justice
Commercial Litigation Branch, Civil Division
26 Federal Plaza
Suite 346
New York, NY 10278
Email: alexander.vanderweide@usdoj.gov

the attorney for the Defendant herein, by electronic service in the CM/ECF System of the Court of

International Trade.

/s/ Wm. Randolph Rucker

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. CLAIRE R. KELLY, *JUDGE***

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES; DEPARTMENT OF | )   Court No.  20-00094 |
| HOMELAND SECURITY; UNITED | ) |
| STATES CUSTOMS AND BORDER | ) |
| PROTECTION; MARK A. MORGAN, | ) |
| IN HIS OFFICIAL CAPACITY AS | ) |
| ACTING COMMISSIONER, UNITED | ) |
| STATES CUSTOMS AND BORDER | ) |
| PROTECTION, | ) |
| Defendants. | ) |

**TABLE OF CONTENTS FOR EXHIBITS**

| Exhibit | Full Citation | Confidential |
|---------|---------------|--------------|
| A | Headquarters Ruling Letter H307063 (Mar. 10, 2020) (Resp. to Spirit Internal Advice Request) | No |
| B | Transcript of 30(b)(6) Deposition of Sarita Singh | No |