UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| SPIRIT AEROSYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES; DEPARTMENT OF | ) Court No. 20-00094 |
| HOMELAND SECURITY; UNITED | ) |
| STATES CUSTOMS AND BORDER | ) |
| PROTECTION; MARK A. MORGAN, IN | ) |
| HIS OFFICIAL CAPACITY AS ACTING | ) |
| COMMISSIONER, UNITED STATES | ) |
| CUSTOMS AND BORDER PROTECTION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

ALEXANDER VANDERWEIDE
Senior Trial Counsel
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza
New York, New York 10278
Tel. (212) 264-9230 or 0482
Attorneys for Defendants

Dated: October 6, 2023

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................ 3

I.   CBP Has Implemented Section 1313(j)(5) Pursuant To Its Plain Terms ............................... 3

   A.  Statistical Reporting Numbers Include A Statistical Suffix ............................................ 5

   B.  The Terms "The", "For", And "Number" In Section 1313(j)(5) Have Specific
       Operative Meaning ......................................................................................... 6

   C.  Determining Drawback Eligibility Under Section 1313(j)(5) Is Not The Same As
       Classifying Imported Goods Under The HTSUS ........................................................ 8

   D.  CBP's Implementation Of The Drawback Statute Accords With Legislative Intent ...... 14

   E.  CBP's Implementation Of The Drawback Statute Produces Consistent Results ........... 15

CONCLUSION ........................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Bailey v. United States*,
   516 U.S. 137 (1995) ...................................................................................... 6

*BASF Corp. v. United States*,
   482 F.3d 1324 (Fed. Cir. 2007) ....................................................................... 9

*Hibbs v. Winn*,
   542 U.S. 88 (2004) ........................................................................................ 6

*Michigan v. EPA*,
   576 U.S. 743 (2015) .................................................................................... 14

*Orlando Food Corp. v. United States*,
   140 F.3d 1437 (Fed. Cir. 1998) ....................................................................... 9

*Welch v. United States*,
   578 U.S. 120 (2016) ...................................................................................... 6

**HTSUS**

GRI 3 ...................................................................................................... 10

GRI 6 ...................................................................................................... 10

Note 3(a) ................................................................................................................... 5, 6

Heading 1702

Subheading 1702.60.40.............................................................................. 17, 19

SRN 1702.60.4020 ........................................................................................... 18

SRN 1702.60.4050 ........................................................................................... 18

Heading 2204

SRN 2204.21.5040 ............................................................................... 15, 16, 17

SRN 2204.21.5055 ............................................................................... 15, 16, 17

SRN 2204.21.5060 ........................................................................................... 17

Chapter 88 ............................................................................................................... 11

Heading 8801 ................................................................................................ 2, 11, 12

Heading 8802 ................................................................................................ 2, 11, 12

Heading 8803 ....................................................................................................... 2, 12

Subheading 8803.30.00................................................................................ 2, 12, 19

SRN 8803.30.0015 ........................................................................................... 2, 8

SRN 8803.30.0030 ......................................................................................... passim

SRN 8803.30.0060 ................................................................................................ 2

Heading 8806 ........................................................................................................... 11

Heading 8807 ........................................................................................................... 11

## Statutes

19 U.S.C. § 1313(j)(5) ..................................................................................... passim

19 U.S.C. § 1313(j)(5)(A) ............................................................................. 1, 4, 6, 7

19 U.S.C. § 1313(j)(5)(B) .......................................................................... 4, 5, 6, 9, 18

19 U.S.C. § 1313(j)(5)(B)(ii) ............................................................................ 1, 6, 7, 15

19 U.S.C. § 1484(f) ............................................................................................ 18, 19

Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA),
   Pub. L. No. 114–125, 130 Stat. 122 (2016), ................................................ *passim*

**Rules and Regulations**

USCIT Rule 30(b)(6) ............................................................................................ 10

*Modernized Drawback,*
   83 FR 64942 (Dec. 18, 2018) ............................................................................ 15

**Other Authorities**

*2A N. Singer, Statutes and Statutory Construction § 46.06,*
   pp.181–186 (rev. 6th ed.2000) .......................................................................... 6

HQ H307063 ....................................................................................................... 4

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

_____
                                        )
SPIRIT AEROSYSTEMS, INC.,               )
                                        )
                 Plaintiff,             )
                                        )
           v.                           )
                                        )
UNITED STATES; DEPARTMENT OF            )          Court No. 20-00094
HOMELAND SECURITY; UNITED               )
STATES CUSTOMS AND BORDER               )
PROTECTION; MARK A. MORGAN, IN          )
HIS OFFICIAL CAPACITY AS ACTING         )
COMMISSIONER, UNITED STATES             )
CUSTOMS AND BORDER PROTECTION,          )
                                        )
                 Defendants.            )
_____)

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants, United States *et al.* (the Government), respectfully submit this memorandum in reply to plaintiff's, Spirit Aerosystems, Inc. (Spirit), opposition (ECF No. 48, Pl. Opp.) to our cross-motion for summary judgment.

In our cross-motion, we demonstrated that U.S. Customs and Border Protection (CBP) correctly rejected Spirit's Drawback Claim No. AA6 03265726 as ineligible for unused substitution drawback under Statistical Reporting Number (SRN) 8803.30.0030 because the article description for this SRN begins with "Other," and provisions that begin with "other" at both the 8- and 10- digit levels of the Harmonized Tariff Schedule of the United States (HTSUS) are foreclosed from unused substitution drawback pursuant to 19 U.S.C. §§ 1313(j)(5)(A) and (B)(ii).  We also explained that, for purposes of determining the eligibility of unused substitution drawback, section 1313(j)(5) provides that the article description for an HTSUS subheading or

SRN is located at the 8- and 10-digit numbers respectively.  CBP's straightforward reading of section 1313(j)(5), as implemented and programmed in its Automated Commercial Environment (ACE) drawback module, accords with the goal of the Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114–125, 130 Stat. 122 (2016), to modernize the drawback statute.  This goal is achieved by standardizing the drawback process for both claimants and administrators in order to produce predictable outcomes, while also foreclosing unused substitution drawback abuse under "other" "other" basket provisions (*i.e.*, provisions that begin with "other" at both the 8- and 10-digit levels, so-called "other" "other" provisions).

We also showed that the drawback statute does not provide, as Spirit contends, for consideration of numerically-unaligned text between the 8- and 10-digit levels, such as "For use in civil aircraft" at issue here, to determine drawback eligibility under section 1313(j)(5).

| Heading/ Subheading | Stat. Suffix | Article Description | Rates of Duty |
|---|---|---|---|
| 8803 | | Parts of goods of heading 8801 or 8802:<br>*** | |
| 8803.30.00 | | Other parts of airplanes or helicopters………………<br>For use in civil aircraft: | Free |
| | 15 | For use by the Department of Defense or the United States Coast Guard…………………… | |
| | 30 | Other …………………………………………... | |
| | 60 | Other…………………………………………… | |

Spirit's interpretation finds no authority in the plain text of section 1313(j)(5), collapses separate and distinct 10-digit SRN categories of merchandise into a single all-consuming statistical annotation, and is an entirely subjective construction of the tariff, with unpredictable and often absurd results—an outcome that runs counter to the aims of TFTEA.

Spirit's opposition to our cross-motion largely retreads the same ground as its opening motion.  Mainly, Spirit contends that CBP's implementation of section 1313(j)(5) is not

supported by a plain reading of the statute.  Yet, as addressed below, in contending as much,

Spirit's misconstrues basic tariff terms, renders entire sections of the drawback statute

inoperative, and requires the omission of certain words from the drawback statute.  Spirit also

continues to maintain that the Government's adherence to the article description text next to the

8-digit HTSUS subheading number and 10-digit SRN ignores the full article description of

subheadings and SRNs for the sake of administrative convenience.  As discussed further below,

Spirit's argument fails to grasp that, because section 1313(j)(5) specifically locates drawback

eligibility at the 8-digit and 10-digit numerical levels only, its objection is with the language of

the drawback statute itself, and not with CBP's straightforward administration of such.  These

contentions, as well as sundry other arguments advanced by Spirit noted and responded to below,

all come up short.

## ARGUMENT

### I.   CBP Has Implemented Section 1313(j)(5) Pursuant To Its Plain Terms

The relevant portion of the drawback statute at issue here, 19 U.S.C. § 1313(j)(5),

provides as follows:

> (A) For purposes of paragraph (2) and except as provided in
> subparagraph (B), merchandise may not be substituted for
> imported merchandise for drawback purposes based on the 8-digit
> HTS subheading number if the article description for the 8-digit
> HTS subheading number under which the imported merchandise is
> classified begins with the term "other".
>
> (B) In cases described in subparagraph (A), merchandise may be
> substituted for imported merchandise for drawback purposes if—
>
>> (i) the other merchandise and such imported merchandise
>> are classifiable under the same 10-digit HTS statistical
>> reporting number; and
>>
>> (ii) the article description for that 10-digit HTS statistical
>> reporting number does not begin with the term "other".

3

19 U.S.C. § 1313(j)(5)(B) thus allows for unused substitution drawback when an imported and substitute good are both described by the same 10-digit SRN and "the article description for that 10-digit HTS statistical reporting number does not begin with the term 'other.'"  Similarly, the eligibility of unused substitution drawback under section 1313(j)(5)(A) is "based on the 8-digit HTS subheading number" and "the article description for the 8-digit HTS subheading number" not beginning with the term "other."  As made evident by the plain terms of the drawback statute, the eligibility of unused substitution drawback under section 1313(j)(5) is determined by the article description for the 8- and 10-digit *numbers* only.  As a result, CBP has implemented the terms of section 1313(j)(5) so that "article description" means the text in the "Article Description" column of the HTSUS, and "begins with" means the first word of text in the "Article Description" column that is next to, or aligns with, a particular 8-digit subheading number or 10-digit statistical reporting number.

Before addressing Spirit's substantive arguments, we note that we have not requested that deference be afforded to any CBP rulings or that the presumption of correctness be applied to any factual determination made by CBP.  In fact, HQ H307063, discussed by Spirit, was never formally issued to Spirit.  *See* Pl. Opp. at 5, 7, 10, and Ex. A, ECF No. 48-2.  Rather, that unpublished ruling letter was the result of Spirit submitting a request for internal advice following the rejection of a 2019 drawback claim for aircraft parts under SRN 8803.30.0030.  Yet Spirit withdrew its request for internal advice before the ruling was issued.  HQ H307063, attached as Exhibit A to Spirit's response brief, is essentially a provisional draft exchanged during discovery and not reflective of a "specific argument" that is somehow at odds, or requires reconciliation, with the arguments set forth in our moving papers.  *See* Pl. Opp. at 10.

4

### A.      Statistical Reporting Numbers Include A Statistical Suffix

In its opposition, Spirit disagrees that CBP's implementation of section 1313(j)(5) accords with the plain meaning of the drawback statute.  Pl. Opp. at 11-17.  Specifically, Spirit posits that "{s}ince the Government's interpretation relies on the position of the statistical suffix number (rather the 10-digit SRN as referenced in the statute), it cannot be a proper interpretation based on the plain meaning of the terms of § 1313(j)(5)."  *Id*. at 14; *see also id*. at 13 ("CBP is improperly interpreting the phrase 'statistical reporting number' in § 1313(j)(5) as 'Stat. Suffix.'").  This is an artificial distinction without a difference as all 10-digit SRNs *include* a Statistical Suffix.

HTSUS General Statistical Note 3(a) (2023) defines "Statistical Reporting Number," in pertinent part, as follows: "…the statistical reporting number for an article consists of the 10-digit number formed by combining the 8-digit subheading number with the appropriate 2-digit statistical suffix…."  Thus, a 10-digit SRN requires, and always incorporates, a 2-digit statistical suffix.  Consequently, ascertaining section 1313(j)(5)(B) drawback eligibility based upon "the article description for that 10-digit HTS statistical reporting number" necessarily includes the article description text for the Statistical Suffix, *i.e.*, the text at the 10th digit numerical level.

Spirit, however, contends that because the 10-digit SRN is a combination of the 8-digit HTSUS subheading number and 2-digit statistical suffix "{i}t follows that the article description for the SRN may also be the result of 'combining.'"  Pl. Opp. at 16, fn. 5; *see also id.* at 34-35 (referencing a CBP Informed Compliance Publication on tariff classification to purportedly indicate that article description language should be "properly combined," at least at the 6-digit subheading level).  This contention is not supportable.

HTSUS General Statistical Note 3(a) defines a SRN as a 10-digit number only, the combined result of its 8-digit and 2-digit components; the Note does not speak to what constitutes the article description for a SRN.  Moreover, if "the article description for the SRN may also be the result of 'combining'", as Spirit advocates, then the article description for a 10-digit SRN would *always* begin with the text for the 8-digit HTSUS subheading number, and not with the 10th digit Statistical Suffix text.  This cannot be.  Such a "combining" interpretation, as advanced by Spirit, erases any distinctions and differences between the article description for an 8-digit HTSUS subheading and *all* 10-digit SRNs that follow that subheading.  Not only does this interpretation render the article description text at the 10-digit level meaningless and inoperative when determining unused substitution drawback eligibility, it also reads out the entirety of section 1313(j)(5)(B) ("the article description for that 10-digit HTS statistical reporting number"), leaving only section 1313(j)(5)(A) operative ("the article description for the 8-digit HTS subheading number").  Such an interpretation violates the fundamentals of statutory construction.  *See*, *e.g.*, *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant….") (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp. 181–186 (rev. 6th ed. 2000)); *Bailey v. United States*, 516 U.S. 137, 146 (1995), *superseded by statute*, as stated in *Welch v. United States,* 578 U.S. 120 (2016) ("We assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning.").

## B.    The Terms "The", "For", And "Number" In Section 1313(j)(5) Have Specific Operative Meaning

As recited above, the eligibility of drawback under section 1313(j)(5)(A) is "based on the 8-digit HTS subheading number" and "the article description for the 8-digit HTS subheading number…"  Section 1313(j)(5)(B)(ii) similarly concerns whether "the article description for that

10-digit HTS statistical reporting number does not begin with the term 'other.'"  As explained in our cross-motion, the term "for" in these provisions refers to the descriptive text that aligns with the "8-digit HTS subheading number" and the "10-digit HTS statistical reporting number."  *See* Defs.' Cross-Motion, Sec. II. B.  Likewise, the drawback statute's employment of the singular, definitive article ("the article description") provides that a particular 8-digit HTSUS subheading number or 10-digit SRN will only have one article description.

Spirit disagrees with the precise, concrete roles the terms "the", "for", and "number" play in 19 U.S.C. § 1313(j)(5), as it vaguely posits that "we believe use of the word 'the' in § 1313(j)(5) is in its ordinary sense as a 'function word', generally indicating that 'article description' is specified by context."  Pl. Opp. at 14.  Spirit thus contends that "{w}hile the statutory text indicates that each 8-digit subheading and 10-digit SRN has its own identifiable article description, there is no further guidance to be gleaned from the words 'for' and 'the' found in § 1313(j)(5)."  *Id.* at 15.  Spirit also maintains that the Government is "fixating on language next to a number (*i.e.*, next to the 8th digit and next to the 10th digit) rather than the full article description for the 8-digit subheading or a 10-digit SRN, as required by § 1313(j)(5)."  *Id.* at 24-25 (emphasis omitted); *see also id.* at 15.  As such, Spirit declares that "§ 1313(j)(5) specifically references the HTSUS and article descriptions at the 8-digit and 10-digit level without limitation."  *Id.* at 26.

Try as it might to insert ambiguity into otherwise clear statutory terms, or to minimize their inclusion and effect, the terms "for," "the," "that," and "number" operate within their respective structural location of the statute—"*the* article description *for the* 8-digit HTS subheading *number*" and "*the* article description *for that* 10-digit HTS statistical reporting *number*."  19 U.S.C. §§ 1313(j)(5)(A) and (B)(ii) (emphasis added).  These terms specify (not

generally indicate) that, for purposes of section 1313(j)(5), a specific 8-digit number and a particular 10-digit number will each have one article description.  This "alignment approach," as Spirit describes the analysis, is nothing complicated or novel, but merely effects the plain meaning of each and every word in section 1313(j)(5).  Spirit's approach, in contrast, violates section 1313(j)(5)'s prescriptive directive by decoupling *the* singular, specific article description "For use by the Department of Defense or the United States Coast Guard" *for that* 10-digit SRN, 8803.30.0015, and "Other" *for that* 10-digit SRN, 8803.30.0030.  In place of these particularized 10-digit article descriptions, Spirit subsumes both SRNs under the same umbrella of numerically unaligned and superior text ("For use in civil aircraft").

### C.  Determining Drawback Eligibility Under Section 1313(j)(5) Is Not The Same As Classifying Imported Goods Under The HTSUS

Despite reading out the singular 10-digit article descriptions for SRNs 8803.30.0015 and 8803.30.0030 in favor of "For use in civil aircraft," Spirit contends that it is the Government's position that violates the "Rule of Surplusage," as according to Spirit, "while the Government acknowledges the 'For use in civil aircraft:' text is part of the article description for tariff classification, the Government has rendered it surplusage for drawback."  Pl. Opp. at 40; *see also id*. at 13, 39.  Spirit's contention is misplaced.

Spirit fails to appreciate that the issue before the Court is not the classification of its goods under a particular SRN or how the HTSUS is "structured" (as Spirit discusses frequently throughout its response brief, *see e.g.*, Pl. Opp. at 17-24), but how the subsections of 19 U.S.C. § 1313(j)(5) are to be given effect, *i.e.*, what the "article description for the 8-digit HTS subheading number" and "the article description for that 10-digit HTS statistical reporting number" "begins with."  Drawback eligibility under section 1313(j)(5)—and not the classification of imported merchandise in the HTSUS—thus centers on the article descriptions at

the statutory 8- and 10-digit numbered levels only; unnumbered and non-statutory article description text, which may be relevant when classifying imported merchandise, does not determine the eligibility of unused substitution drawback.  Seen in another light, the HTSUS is a table, with heading, subheading, and SRN numbers on one side, and descriptive text on the other.  Thus, following the passage of TFTEA, when ascertaining drawback eligibility under section 1313(j)(5), the specific terms of the drawback statute direct us to *the* HTSUS article description text *for the* (or *that*) 8- or 10-digit subheading *number*.  Under the provisions of 19 U.S.C. § 1313(j)(5), we are determining unused substitution drawback eligibility only; we are not classifying imported merchandise.

Relatedly, a sizeable portion of Spirit's response brief is devoted to the following mistaken contentions: "the Government's interpretation of § 1313(j)(5) does not align with the structure of the HTSUS and standard principles of tariff classification" and "there is no dispute that proper tariff classification under the HTSUS is the foundation of substitution unused merchandise drawback under the Drawback Statute."  Pl. Opp. at 17 (capitalization removed); *see also id., generally,* at 17-27.  Although there is no dispute that TFTEA directly incorporates the HTSUS's present codes and 8- and 10-digit numbers into the drawback statute to simplify and automate the drawback process, *see* Defs.' Cross-Motion, Sec. II. E, it does not follow that the principles of classifying goods under the HTSUS directly apply to determining drawback eligibility under section 1313(j)(5).

Tariff classification principles under the HTSUS are governed by the General Rules of Interpretation (GRIs), which are made part of the tariff statute itself.  *See, e.g., Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998); *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007).  In contrast, 19 U.S.C. § 1313(j)(5) neither adopts nor

incorporates the GRIs.  Moreover, tariff classification under the HTSUS involves the application of legal provisions and principles to the factual particulars of the imported merchandise, whereas here, we are concerned with the meaning and effect of terms that Congress selected when it amended the drawback statute.  By way of example, the GRIs contemplate that when classifying imported merchandise, goods may be *prima facie* classifiable in two or more headings or subheadings, and articulable classification rules will be required to "break the tie," so to speak. *See* GRIs 3 and 6.  In contrast here, the drawback statute presumes the classification of a substitute good in a particular 8-digit subheading number and 10-digit SRN—each of which has their own singular article description.  Simply put, classifying merchandise under the HTSUS is an entirely different undertaking than determining the eligibility of unused substitution drawback.

Despite these differences, Spirit often cites or quotes the deposition testimony of CBP's USCIT Rule 30(b)(6) designated agent, Sarita Singh, in an attempt to convey that the Government confirms or admits to Spirit's understanding that "{a}rticle description is the same for tariff classification and drawback purposes."  Pl. Opp. at 19, fn. 7; *see also id*. at 18, 25-26, 39-40.  As we readily recognize, the "Article Description" text of the HTSUS describes imported merchandise classified under the HTSUS, as well as those 8- and 10-digit provisions that may be eligible for unused substitution drawback.  However, as discussed herein (and in our moving papers), drawback eligibility under 19 U.S.C. § 1313(j)(5) concerns what "the article description for the 8-digit HTS subheading number" and "the article description for that 10-digit HTS statistical reporting number" "begins with"—which is an inquiry that simply is not the same as classifying imported merchandise according to the GRIs.

But Spirit routinely conflates the two endeavors, resulting in erroneous conclusions.  For

instance, Spirit points to its Statement of Fact (SMF) No. 24, and the Government's response

thereto, *see* Pl. Opp. at 8-9, which are both set forth as follows:

> 24.    On January 29, 2018, Spirit imported aircraft parts classifiable
> under HTSUS statistical reporting number 8803.30.0030, which
> provides for "*Parts of goods of heading 8801 or 8802: Other parts
> of airplanes or helicopters: For use in civil aircraft: Other*" (the
> "Subject Merchandise"). ECF No. 18, Am. Summons; Compl. at ¶
> 9; Answer at ¶ 9.)

ECF No. 39 at SMF p. 7.

Government's Response:

> Admits, but clarifies that, at the time of the filing of the drawback
> claim at issue, the article description for merchandise described in
> statistical reporting number 8803.30.0030 was "Parts of goods of
> heading 8801 or 8802: . . . Other parts of airplanes or helicopters:
> For use in civil aircraft: . . . Other. "  Avers that on January 27,
> 2022, heading 8806 was added to the HTSUS and heading 8803
> was transferred to heading 8807. See Chapter 88, HTSUS (2022).

ECF No. 42-2.  Based upon the above response, Spirit asserts that "this Court should grant

summary judgment in favor of Spirit as the Government has now admitted that "*For use in civil*

*aircraft: Other*" is the article description at the 10-digit level for SRN 8803.30.0030, which

begins with the term 'For,' not 'other.'"  Pl. Opp. at 8-9.  There is no basis for this argument.

First, our response to the statement in no way abandons our defenses to Spirit's central

claim.  Our response is an anodyne clarification that, as of January 27, 2022, the quoted SRN,

8803.30.0030, was transferred to HTSUS heading 8807.  *See* Chapter 88, HTSUS (2022).

Further, Spirit's assertion is premised on the incorrect assumption that the "article description"

provided in response to SMF No. 24 exactly matches the format of the tariff language as it exists

in the HTSUS.  The Government and the trade routinely use ellipsis to mark gaps, indentations,

and other structural differences that exist in the tabled layout of the tariff schedule, but that are

11

not easily transposed into a sentence and paragraph format generally used for Word documents. But those gaps, indentations, etc. are critical to interpreting HTSUS subheading 8803.30.00 and SRN 8803.30.0030, at issue here, in order to ascertain what "the article description" for the 8-digit subheading and 10-digit SRN "begins with," and thus, whether these provisions are eligible for unused substitution drawback under section 1313(j)(5).  Determining what these provisions "begin with" must be read in conjunction with the directives of the drawback statute and the actual HTSUS, not our quotations of it.

Spirit seems to understand this concept, as it states that "{b}ased on the above admission, this matter should be at an end since the article description for the 10-digit SRN at issue begins with the term 'Parts,'" before immediately backtracking in the next sentence: "However, this is the *full article description* including the heading, subheading, and statistical article description language and § 1313(j)(5) directs us to review the 8-digit subheading and 10-digit SRN article descriptions, so more analysis is required."  Pl. Opp. at 7 (emphasis added).  To that end, Spirit "{b}reak[s] the *full article description* language for 10-digit SRN 8803.30.0030 apart into the 4-, 6-, 8-, and 10-digit levels," and allocates the numerically-unaligned "For use in civil aircraft" text to the 10-digit level grouping, joining "Other."  *Id*. at 24, 28-29; *see also id.* at 23 ("Only if merchandise meets the 'For use in civil aircraft:' article description can one proceed to the next indented level to determine the *full article description* for the 10-digit level.") (emphasis added).

Spirit quickly realizes that, of course, SRN 8803.30.0030 cannot "begin with" the first word of HTSUS heading 8803, "Parts of goods of heading 8801 or 8802," because if such were the case, every subheading and SRN under the heading would also begin with "Parts," rendering the entirety of the statute unworkable.  But Spirit's backtracking points to a more central truth when establishing "the article description" for 19 U.S.C. § 1313(j)(5) drawback: that all article

description text under a HTSUS heading may pertain or be relevant to the subheadings and SRNs that follow, especially when classifying merchandise under the HTSUS, but identifying the precise and complete article description at the 8- and 10-digit numbered levels is necessary to determine unused substitute merchandise drawback eligibility.  In other words, all "Article Description" text maybe relevant to a good's classification, but not all "Article Description" text is operative when determining the drawback eligibility of that good under section 1313(j)(5).

In this way, despite Spirit's grouping exercise and efforts to assign "For use in civil aircraft" to the 10th digit level, all article description text that precedes the HTSUS text provided at the 8-digit numerical level incompletely describes an 8-digit HTSUS subheading, just as all article description text that precedes the HTSUS text provided at the 10-digit numerical level, such as "For use in civil aircraft" here, incompletely describes a 10-digit SRN.  "{T}he article description for the 8-digit HTS subheading number" and "the article description for that 10-digit HTS statistical reporting number," as 19 U.S.C. § 1313(j)(5) specifies, surely should include and reflect the actual descriptive text at those numbered levels.  As a result, for purposes of determining drawback eligibility under section 1313(j)(5), we submit that "the article description" does not "begin with" any text that precedes the text "for the 8-digit HTSUS number" and "for that 10-digit HTS statistical reporting number."  A "full," accurate, and operative article description for the 8- and 10-digit numbered provisions "begins with" the HTSUS text for those numbers only.[1]

---

[1] Spirit also comments that "there are dots that provide guidance on where the 8-digit and 10-digit article descriptions end.  The Government does not address the relevance of these dots."  Pl. Opp. at 33, fn. 11.  As can readily be seen in any chapter of the tariff statute, the dots merely follow the text in the "Article Description" column of the HTSUS for 8-digit HTSUS subheading numbers and 10-digit SRNs.  The dots are not relevant to determining drawback eligibility under section 1313(j)(5).

**D.     CBP's Implementation Of The Drawback Statute Accords With Legislative Intent**

Despite effecting the plain terms of 19 U.S.C. § 1313(j)(5), Spirit reduces CBP's implementation of the drawback statute to little more than "administrative convenience."  Pl. Opp. at 10, 37.  Spirit discounts any merit to administrability, disregarding CBP's efforts to program and routinely update the ACE drawback module in order to implement the everchanging HTSUS provisions in compliance with the dictates of the drawback statute.[2]  *See* ECF No. 39-5, Pl. Ex. 5, 33rd Preface at ITC0039 ("The Commission publishes annual editions of the HTS on January 1. On-line revisions are used during the calendar year to keep the annual edition current. ***Twenty-eight online revisions*** were posted to update the 2020 schedule.") (emphasis added).  Even though administrative simplicity is a clear benefit of the Government's implementation of the drawback statute, its approach still accords with the text and purpose of the statute, as explained above and throughout our moving papers.  *See* Defs.' Cross-Motion, Sec. II. E.

Nonetheless, Spirit contends that the Government's implementation of the drawback statute frustrates legislative intent.  Pl. Opp. at 42-43.  In particular, Spirit asserts that "{t}he Government's interpretation of the Drawback Statute allows only a small portion of airplane parts to be eligible for substitution unused merchandise drawback."  *Id*. at 43.  Spirit's argument, however, overlooks one of the aims of the amended drawback statute under TFTEA, namely, to foreclose the use of basket provisions for unlimited drawback.  As explained in detail in our

---

[2] Relatedly, Spirit maintains that its "interpretation in this case should be preferred as '[n]o regulation is 'appropriate' if it does significantly more harm than good.'"  Pl. Opp. at 43 (quoting *Michigan v. EPA*, 576 U.S. 743, 752 (2015)).  In making this argument, Spirit ascribes no value to regulatory standardization or federal and domestic industry revenue protection, but rather, focuses narrowly on the harm that only Spirit may suffer as a result of CBP's implementation of the drawback statute.

moving papers, absent the restriction of section 1313(j)(5)(B)(ii), any number of different articles—here, myriad airplane parts—could be made eligible for unused substitution drawback under "other" "other" SRNs.  *See* Defs.' Cross-Motion, Sec. II. E.  Spirit forgets to acknowledge this important anti-abuse provision in the amended drawback statute by focusing on TFTEA's "liberalization" of substitution standards.  *See Modernized Drawback,* 83 FR 64942 (Dec. 18, 2018) (Final Rule).  Notwithstanding the fact that TFTEA did not open up the floodgates for claimants to use the HTSUS to obtain unrestricted unused substitution drawback, "liberalizing" the substitution standards is not what Spirit believes it to be.  Rather, as explained in our moving papers, "liberalization" means employing the existing codes and numbers in the HTSUS to simplify and automate the drawback process—which has the benefit of eliminating uncertainty about which provisions are eligible for drawback, and eases the administrative burdens for both drawback claimants and agencies.  *See* Defs.' Cross-Motion, Sec. II. E.

**E.    CBP's Implementation Of The Drawback Statute Produces Consistent Results**

Spirit also contends that the Government's implementation of section 1313(j)(5) is "arbitrary and creates absurd results."  Pl. Opp. at 37, *see also id*. at 17, 46-47.  As a purported example of this contention, Spirit points to SRNs 2204.21.5040 and 2204.21.5055, and highlights that, under the Government's approach to drawback eligibility, the article descriptions for these SRNs switched from "Other" in the 2020 HTSUS to "Not Certified Organic" in the 2021 HTSUS, as seen in the table provided by Spirit below:

| 2020 HTSUS | | | 2021 HTSUS | | |
|---|---|---|---|---|---|
| 2204.21.50 | | Other......... | 2204.21.50 | | Other......... |
| | | Valued not over $1.05/liter: | | | Valued not over $1.05/liter: |
| | 05 | Red......... | | 05 | Red......... |
| | 15 | White......... | | 15 | White......... |
| | 25 | Other......... | | 25 | Other......... |
| | | Valued over $1.05/liter: | | | Valued over $1.05/liter: |
| | 28 | Icewine......... | | 28 | Icewine......... |
| | | Other: | | | Other: |
| | | Red: | | | Red: |
| | 35 | Certified Organic......... | | 35 | Certified organic......... |
| | 40 | Other......... | | 40 | Not certified organic......... |
| | | White: | | | White: |
| | 50 | Certified Organic......... | | 50 | Certified organic......... |
| | 55 | Other......... | | 55 | Not certified organic......... |
| | 60 | Other......... | | 60 | Other......... |

Pl. Opp. at 37-38. Spirit represents that its interpretation of the drawback statute avoids this switch, as both SRNs would still begin with the term "valued" ("Valued over $1.05/liter").

First, there is nothing arbitrary or absurd when the drawback eligibility of certain SRNs changes as a result of the terms of SRNs themselves changing. The HTSUS is not a static statute, but rather, is updated annually and revised constantly. *See* ECF No. 39-5, Pl. Ex. 5, 33rd Preface at ITC0039. CBP must give effect to those changes at the 8- and 10-digit numerical levels when programming ACE to accord with the eligibility requirements specified in the drawback statute. That is how Congress saw fit to craft the eligibility for unused substitution drawback. We note, however, that under both the Government's and Spirit's approach to section 1313(j)(5), wine described by the 2021 HTSUS SRNs 2204.21.5040 and 2204.21.5055 is eligible for unused substitution drawback.

We also stress that, even under Spirit's incorrect approach to section 1313(j)(5), one can readily imagine an annual change to the statistical annotations, where "Valued over $1.05/liter" or some other numerically unaligned phrase changes to "Other", thus affecting the drawback eligibility of all subsequent SRNs. Regardless of Spirit's interpretation or the Government's,

drawback eligibility may invariably shift whenever the language following an "other" 8-digit HTSUS subheading is revised.

Of significance, in the above example, there are *three* levels of numerically unaligned text that supersede the text for SRNs 2204.21.5040 and 2204.21.5055: "Red" or "White" at the first level above the SRNs, "Other" at the second, and "Valued over $1.05/liter" at the third. Under the Government's approach, it is not necessary to divine or guess which of these three phrases determines the eligibility of the SRNs that follow. Whereas under Spirit's approach, all three levels of text contribute to the article description for each 10-digit SRN that follows, yet it is the third-level text that begins the article description for all *six* SRNs that follow, regardless of the continuing and complete descriptions for each of the SRNs. Again, in this way, Spirit collapses and ignores all distinguishing, distinctive, and specific text for the six 10-digit SRNs under one numerically unaligned phrase. Moreover, as a result of Spirit's approach, a clear "other" "other" basket provision in both the 2020 and 2021 HTSUS—SRN 2204.21.5060— specifically barred by 19 U.S.C. § 1313(j)(5), is now rendered eligible for drawback. This interpretation is wholly at odds with the directives of the drawback statute, as amended by TFTEA.

As another example of the purported absurdity that results from the Government's approach to drawback eligibility, Spirit points to the below changes that were made between 2022 and 2023 to the SRNs that follow HTSUS subheading 1702.60.40, itself an "Other" provision. Pl. Opp. at 44-46. The 2022 HTSUS for this provision is as follows:

And the 2023 HTSUS is as follows:



Pl. Opp. at 44-45.  Spirit argues that the above example evidences the absurdity of the Government's approach insofar as syrup previously eligible for unused substitution drawback (HTSUS 2022 SRN 1702.60.4020) may "suddenly" become ineligible if now described by HTSUS 2023 SRN 1702.60.4050.  *Id*.  This example misses the mark.

One can readily speculate on the rationale behind these particular changes: "Other" "Syrup" may have become too general a statistical annotation to reflect actual syrup imports, and more specificity was required to account for the variety of syrups being imported.  In this way, the SRNs for imported syrup required further detail, and as a result of the changes to the SRNs, "Other" "Certified organic" syrup remains eligible for unused substitution drawback, while the basket provision, "Other" "Other" syrup, is no longer eligible.  This would be perfectly in keeping with the aims of TFTEA, as discussed above.

Regardless of the rationale, there is nothing in TFTEA that forecloses this result.  Indeed, Congress empowered the section 484(f) committee to "establish from time to time for statistical purposes an enumeration of articles in such detail as in their judgment may be necessary...."  19 U.S.C. § 1484(f).  And Congress also provided that drawback eligibility under section 1313(j)(5)(B) is predicated on "the article description for that 10-digit HTS statistical reporting number."  Thus, despite Spirit's protestations otherwise, *see* Pl. Opp. at 47, we can readily conclude that Congress anticipated that drawback eligibility under section 1313(j)(5)(B) would

change "from time to time," in accordance with the section 484(f) committee's "judgment" in establishing SRNs.  *See, e.g.*, Pl. Opp. at 18, fn. 6 (discussing cases that stand for the proposition that multiple statutes dealing with a related subject must be considered together).  In any event, in the above example, only the Government's approach to drawback eligibility under section 1313(j)(5) reflects the 2023 changes that the section 484(f) committee made to the SRNs under subheading 1702.60.40.  Spirit's approach, in contrast, ignores the revised operative SRNs and attempts to turn the clock back to 2022.

Finally, as noted in our moving papers, Defs.' Cross-Motion, Sec. II. E, Spirit is free to petition the section 484(f) committee to change the statistical annotations to HTSUS subheading 8803.30.00.  Spirit asserts that "this proposed remedy is not the solution the Government claims it to be."  Pl. Opp. at 46.  But Spirit's assertion is undercut by the fact that it has apparently made no attempt to avail itself of this potential administrative remedy.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court grant our cross-motion for summary judgment and deny Spirit's motion for summary judgment.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:      /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Alexander Vanderweide
ALEXANDER VANDERWEIDE
Senior Trial Counsel

Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza
New York, New York 10278
Tel. (212) 264-9230 or 0482
Attorneys for Defendants

Dated: October 6, 2023

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. CLAIRE R. KELLY, JUDGE

———————————————————————

|  |  |  |
|---|---|---|
| SPIRIT AEROSYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES; DEPARTMENT OF | ) | Court No. 20-00094 |
| HOMELAND SECURITY; UNITED | ) | |
| STATES CUSTOMS AND BORDER | ) | |
| PROTECTION; MARK A. MORGAN, IN | ) | |
| HIS OFFICIAL CAPACITY AS ACTING | ) | |
| COMMISSIONER, UNITED STATES | ) | |
| CUSTOMS AND BORDER PROTECTION, | ) | |
| | ) | |
| Defendants. | ) | |

———————————————————————

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT<br>STANDARD CHAMBER PROCEDURE 2(B)</u>

I, Alexander Vanderweide, a Senior Trial Counsel in the Office of the Assistant Attorney

General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is

responsible for the foregoing reply brief, relying upon the word count feature of the word

processing program used to prepare this brief, certify that this reply brief complies with the type-

volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 5525 words.


<u>/s/ Alexander Vanderweide</u>