Slip Op. 24-10

# UNITED STATES COURT OF INTERNATIONAL TRADE

SPIRIT AEROSYSTEMS, INC.,

      Plaintiff,

v.

UNITED STATES ET AL.,

      Defendants.

Before: Claire R. Kelly, Judge

Court No. 20-00094

## OPINION AND ORDER

[Granting the U.S. Customs and Border Protection's motion for summary judgment on Spirit AeroSystems, Inc.'s claim for denial of substituted unused merchandise drawback claim.]

Dated: January 30, 2024

William Randolph Rucker, Faegre Drinker Biddle & Reath, LLP of Chicago, IL, for plaintiff Spirit AeroSystems, Inc.

Alexander Vanderweide, Senior Trial Counsel, and Patricia M. McCarthy, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY for defendant United States. Also on the brief was Brian M. Boynton, Principal Deputy Assistant Attorney General. Of counsel on the brief was Matt Rabinovitch, Attorney, Office of the Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection, and Justin R. Miller, Attorney-In-Charge for the International Trade Field Office, U.S. Department of Justice.

Kelly, Judge: Before the Court are cross-motions for summary judgment. Plaintiff Spirit AeroSystems, Inc. ("Spirit") seeks summary judgment on its claim contesting the United States Customs and Border Protection's ("CBP") denial of Spirit's protest for substituted unused merchandise drawback on imported civil aircraft parts under 19 U.S.C. § 1313(j). See Pl. Mot. Summ. J. at 1, Mar. 24, 2023,

ECF No. 39 ("Pl. Mot."). Defendant opposes Spirit's motion and cross-moves for

summary judgment in its favor. See Def. Cross-Mot. Summ. J., June 2, 2023, ECF

No. 42 ("Def. Mot."). For the following reasons, Defendant's motion is granted, and

Spirit's motion is denied.

## BACKGROUND

The Harmonized Tariff Schedule of the United States ("HTSUS")[1] is an

authoritative classification system that lays out the tariff rates and statistical

categories for all merchandise imported into the United States.[2] See U.S. Int'l Trade

Comm., Preface to the 30th Edition – Revision 1.1: Guide to the HTSUS and

Statistical Reporting, 1 (Feb. 8, 2018) ("Preface to the HTSUS"). Under each edition

of the HTSUS, the schedule's tabular format categorizes tariff rates on all commercial

goods according to their internationally agreed upon "structured product

nomenclature"—commonly referred to as the "Harmonized System" ("HS")—as set

forth by the World Customs Organization. See id. at 2. The HS organizes tariff rates

---

[1] All references to the HTSUS and Code of Federal Regulations refer to the 2020 edition, the most recent version of the HTSUS in effect at the time of Spirit's entries of subject merchandise. See Def. Statement of Material Facts Not In Issue at ¶ 1, June 2, 2023, ECF 42-1 ("Def. Stmt. Facts"); Pl. Resp. to Def.'s Statement of Material Facts Not In Issue at ¶ 1, Aug. 18, 2023, ECF No. 48-2 ("Pl. Resp. Def. Stmt."); Pl. Statement of Material Facts Not In Issue at ¶ 1, Mar. 24, 2023, ECF No. 39 ("Pl. Stmt. Facts"); Def's Resp. to Pl.'s Statement of Material Facts Not In Issue at ¶ 1, June 2, 2023, ECF No. 42-2 ("Def. Resp. Pl. Stmt.").

[2] The HTSUS is published by the U.S. International Trade Commission and subject to frequent revisions that reflect the global system of nomenclature applied to most world trade in goods. See U.S. Int'l Trade Comm., HTSUS Revision 11 (2023). The schedule was established at Congress' direction in accordance with section 1207 of the Omnibus Trade and Competitiveness Act of 1988. See 19 U.S.C. § 3007.

through a series of reporting numbers consisting of 4-digit "headings" and 6-digit subordinate "subheadings,"[3] depending upon the type of imported merchandise as classified in HTSUS chapters one through ninety-seven. See id. These category codes are often further broken down into 8-digit subheadings, comprising the narrowest legal category of the good that controls its rate of duty.[4] See id. An 8-digit subheading may contain a subordinate statistical provision appearing as a 10-digit statistical reporting number ("SRN"); however, such 10-digit numbers do not affect the legal classification of the good for purposes of its tariff rate. See id.

The United States implements the HS by statute through 19 U.S.C. § 1202. See 19 U.S.C. § 1202. Pursuant to the Omnibus Trade and Competitiveness Act of 1988, the United States International Trade Commission publishes the HTSUS containing the legal and non-legal provisions applicable to goods in trade. See 19 U.S.C. § 3007; Preface to the HTSUS at 1. The HTSUS's provisions include tables containing the legal 4-, 6-, and 8-digit headings and subheadings and the non-legal 10-digit SRNs. See Preface to the HTSUS at 2, 5. The tables also include a column titled "Article Description" that corresponds with each 4-, 6-, 8-, and 10-digit sublevel of the good's reporting number. U.S. Customs and Border Protection, What Every

---

[3]  The HTSUS emphasizes the importance of indentations when distinguishing between headings and subheadings: "[a] 'heading' is a provision whose article description is not indented, while a 'subheading' (6- or 8- digit) has an indented and subordinate description covering a subset of the heading's product scope." Preface to the HTSUS at 2 n.5.

[4]  Some goods, as classified in the HTSUS, do not contain subdivisions and instead end in zeroes, with their respective duty rates attached. See Preface to the HTSUS at 2.

Member of the Trade Community Should Know About: Tariff Classification, 34 (May 2004), https://www.cbp.gov/sites/default/files/assets/documents/2020-Feb/icp017r2_3_0.pdf (last visited Jan. 16, 2024) ("CBP Tariff Classification Compliance Publication").  Article descriptions classify a good based upon its material composition, intended functions, or product name.   U.S. Int'l Trade Comm., Harmonized Tariff Schedule System External User Guide, 1, 14 (2015), https://www.usitc.gov/documents/hts_external_guide.pdf (last visited Jan. 25, 2024) ("HTSUS User Guide").  Thus, each good falls into only one category at the 4-, 6-, 8-, or 10-digit level depending on the article description.[5]  HTSUS User Guide at 14. Moreover, to ensure that every good falls into one classification in the schedule, the HTSUS has catchall article descriptions with corresponding SRNs titled "Other," also known as "basket provisions."  EM Indus., Inc. v. United States, 999 F. Supp. 1473, 1480 (Ct. Int'l Trade 1998) (("'Basket' or residual provisions of HTSUS headings . . . are intended as a broad catch-all to encompass the classification of articles for which there is no more specifically applicable subheading"); CBP Tariff Classification Compliance Publication at 11.  These basket provisions can appear at the 6-, 8- and 10-digit levels.  See id. at 11–12.  The article descriptions correspond to each HTSUS classification number at each heading and subheading and delineate the items

---

[5] For example, the 8-digit classification for "copper cathodes" is subheading 7403.11.00, while the 8-digit classification for "cotton sewing thread put up for retail sale" is subheading 5204.20.00.  See generally Chapter 50, Revision 11, HTSUS (2023); HTSUS Ch. 70; Harmonized Tariff Schedule System External User Guide at 14.

included in each heading and subheading, creating an organized and uniform system that contains all relevant information on the tariff rate of duty on any given good. See Preface to the HTSUS at 1–3; CBP Classification Compliance Publication at 11–12, 33–34.

Imported merchandise not used within the United States before its exportation or destruction may be eligible for a refund of duties known as a drawback ("unused merchandise drawback"). See 19 U.S.C. § 1313(j)(2). Additionally, merchandise may be substituted for imported merchandise for drawback purposes under 19 U.S.C. § 1313(j)(5) ("substituted unused merchandise drawback") if certain conditions are met. Section 1313 allows for refund of duties when exported (or destroyed) merchandise is classifiable under the same 8-digit subheading as the imported merchandise. 19 U.S.C. § 1313(j)(2)(A). However, merchandise is ineligible if the article description for the 8-digit subheading begins with the term "other," unless the imported merchandise and the exported or destroyed merchandise are classified under the same 10-digit SRN, and the article description for that 10-digit SRN does not begin with the term "other." 19 U.S.C. § 1313(j)(5).

To identify substituted unused merchandise that is eligible for drawback under Section 1313(j)(5), CBP uses a software program called the "Automated Commercial Environment" ("ACE").[6] ACE and Automated Systems, U.S. Customs and Border

---

[6] The parties dispute whether ACE is properly programmed to "enforce the exclusion

(footnote continued)

Protection (Sept. 20, 2023), https://www.cbp.gov/trade/automated (last visited Jan.

12, 2023); Drawback in ACE, U.S. Customs and Border Protection (Oct. 6, 2022),

https://www.cbp.gov/trade/automated/news/drawback (last visited Jan. 12, 2023).

When the SRN of an unused good fails to conform to the statutory eligibility criteria

after an importer files a drawback claim, ACE returns a specific error code and

message signifying the goods ineligibility for substituted unused merchandise

drawback under 19 U.S.C. § 1313(j)(5)(A) that rejects the claim due to its status as a

basket provision.[7]  See Ace Drawback Error Dictionary, U.S. Customs and Border

Patrol (June 30, 2023), https://www.cbp.gov/document/guidance/ace-drawback-error-

dictionary (last visited Jan. 12, 2023); see Pl. Stmt. Facts at ¶ 19; Def. Resp. Pl. Stmt.

at ¶ 19.

## UNDISPUTED FACTS

On January 29, 2018, Spirit, an aerostructure designer and manufacturer,

imported aircraft parts into the United States through the Los Angeles Port of Entry,

Am. Summons, Apr. 27, 2020, ECF No. 18, classifiable under HTSUS SRN

8803.30.0030.  Pl. Stmt. Facts at ¶¶ 23–24; Def. Resp. Pl. Stmt. at ¶ 24.  The full text

of the corresponding article description to 8803.30.0030 at the time of import read:

---

of tariff provisions that are not eligible for substituted unused merchandise drawback
under 19 U.S.C. § 1313(j)(5)." Def. Stmt. Facts at ¶1; Pl. Resp. Def. Stmt. at ¶ 1.
However, the parties do not dispute how ACE is currently programmed to work.  See
Pl. Stmt. Facts at ¶¶ 19–22; Def. Resp. Pl. Stmt. at ¶¶ 19–22.

[7] For example, an SRN inputted into ACE that yields the error code "F519" is
accompanied with the error message "HTS[US] NBR NOT ALLOWED UNDER
BASKET PROVISION."  See Pl. Stmt. Facts at ¶¶ 19-20; Def. Resp. Pl. Stmt. at ¶¶
19–20.

"Parts of goods of heading 8001 or 8002: [. . .] Other parts of airplanes or helicopters: For use in civil aircraft: [. . .] Other."  Pl. Stmt. Facts at ¶ 24; Def. Resp. Pl. Stmt. at ¶ 24.  All applicable duties and fees were paid by Spirit upon importation of the parts. Pl. Stmt. Facts at ¶ 25; Def. Resp. Pl. Stmt. at ¶ 25.

On January 29, 2020, Spirit used CBP's ACE drawback module to file a substituted unused merchandise drawback claim for the imported plane parts under Claim No. AA6 03265726.  Pl. Stmt. Facts at ¶ 26; Def. Resp. Pl. Stmt. at ¶ 26.  That same day, CBP's ACE drawback module rejected Spirit's drawback claim, resulting in error code "F519."  Pl. Stmt. Facts at ¶ 27; Def. Resp. Pl. Stmt. at ¶ 27.  Spirit filed an administrative protest, which was denied by CBP.  See Am. Summons.  Spirit then filed a summons under 28 U.S.C. § 1581(a), which was granted by the Court.  Spirit AeroSystems, Inc. v. United States, 468 F. Supp.3d 1349, 1352 (Ct. Int'l Trade 2020).

On April 27, 2020, Spirit filed the instant action against CBP.  See generally Compl., Apr. 27, 2020, ECF No. 6.  On March 24, 2023, Spirit filed its motion for summary judgment, to which Defendant responded to by filing a cross-motion for summary judgment on June 6, 2023.  See generally Pl. Mot.; Def. Mot.  On December 7, 2023, the Court heard oral arguments by the parties on the issues presented in the moving briefs.  See Digital Audio File re Courtroom Proceeding 55, Dec. 7, 2023, ECF No. 56.

The parties do not dispute that the imported and substituted aircraft parts at

issue are classifiable under SRN 8803.30.0030.  Pl. Mot. at 2; Def. Mot. at 3–4.

**Harmonized Tariff Schedule of the United States (2020)**
Annotated for Statistical Reporting Purposes

XVII
88-4

| Heading/ Subheading | Stat. Suf- fix | Article Description | Unit of Quantity | Rates of Duty | | |
|---|---|---|---|---|---|---|
| | | | | 1 | | 2 |
| | | | | General | Special | |
| 8803 8803.10.00 | | Parts of goods of heading 8801 or 8802: Propellers and rotors and parts thereof................... | | Free[2/] | | 27.5% |
| | 15 | For use in civil aircraft: For use by the Department of Defense or the United States Coast Guard[3/]........... | kg | | | |
| | 30 | Other[4/]........................... | kg | | | |
| | 60 | Other........................... | kg | | | |
| 8803.20.00 | | Undercarriages and parts thereof........... | | Free[2/] | | 27.5% |
| | 15 | For use in civil aircraft: For use by the Department of Defense or the United States Coast Guard[3/]........... | kg | | | |
| | 30 | Other[4/]........................... | kg | | | |
| | 60 | Other........................... | kg | | | |
| 8803.30.00 | | Other parts of airplanes or helicopters........... | | Free[2/] | | 27.5% |
| | 15 | For use in civil aircraft: For use by the Department of Defense or the United States Coast Guard[3/]........... | kg | | | |
| | 30 | Other[4/]........................... | kg | | | |
| | 60 | Other........................... | kg | | | |

Spirit believes it is entitled to summary judgment because 19 U.S.C. § 1313(j)(5)

renders SRN 8803.30.0030 eligible for substituted unused merchandise drawback as

it mandates that the preceding indented text to any 10-digit SRN be read as part of

the "article description" for that 10-digit number.  Pl. Mot. at 11, 18, 24–25.  Spirit

supports its argument with canons of statutory construction and legislative intent.

See id. at 2, 25–29.  Specifically, Spirit requests the Court to (1) order that

merchandise classifiable under SRN 8803.30.0030 of the HTSUS is eligible for

substituted unused merchandise drawback; (2) require CBP to reprogram ACE to

allow for substituted unused merchandise drawback claims classifiable for SRN

8803.30.0030; and (3) order CBP to approve Claim No. AA6 03265726 and refund

excess duties paid with interest.  Id. at 1–2.  Defendant argues it is entitled to
summary judgment and that ACE properly rejected Spirit's claim because drawback
eligibility under 19 U.S.C. § 1313(j) is determined by reading only the attached
description at the 8- and 10-digit numerical levels, therefore rendering SRN
8803.30.0030 an "other" category and thus ineligible for substituted unused
merchandise drawback.  Def. Mot. at 4–5, 6–35.  To support its position, Defendant
argues that Section 1313(j)(5) does not implicate the numerically unaligned text
between the 8- and 10-digit levels to determine substituted unused merchandise
drawback eligibility, and that Spirit's interpretation collapses distinct 10-digit SRNs
into broad categories and leads to inconsistent and absurd results.  Id. at 4–5.  For
the following reasons, Defendant's motion is granted, and Spirit's motion is denied.

## JURISDICTION AND STANDARD OF REVIEW

The Court has exclusive jurisdiction over "any civil action commenced to
contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act
of 1930."[8]  28 U.S.C. § 1581(a).  Denied protests are subject to de novo review "upon
the basis of the record made before the court."  See 28 U.S.C. § 2640(a)(1).

The Court will grant summary judgment when "the movant shows that there
is no genuine dispute as to any material fact and the movant is entitled to judgment
as a matter of law."  USCIT R. 56(a).  In order to raise a genuine issue of material

---

[8] Further citations to the Tariff Act of 1930, as amended, are to the relevant
provisions of Title 19 of the U.S. Code, 2018 edition.

fact, it is insufficient for a party to rest upon mere allegations or denials, but rather that party must point to sufficient supporting evidence for the claimed factual dispute to require resolution of the differing versions of the truth at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Processed Plastic Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006); Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 835–36 (Fed. Cir. 1984).

## DISCUSSION

Spirit argues the exception to 19 U.S.C. § 1313(j)(5)(B), stating that substituted unused merchandise drawback is available if "the article description for [imported merchandise and the substituted merchandise classifiable under the same 10-digit SRN] does not begin with the term 'other,'" renders the SRN 8803.30.0030 of the HTSUS eligible for substituted unused merchandise drawback because it begins with the phrase "For use in civil aircraft[.]" Pl. Mot. at 2. Spirit supports its reading with invocations of statutory interpretation canons and legislative history. Id. at 11–31. Defendant contends that Spirit's reading of the statute fails to implement the plain meaning and purpose of the statute. Def. Mot. at 4–5. More specifically, Defendant argues that the text of 19 U.S.C. § 1313(j)(5) stating substituted unused merchandise drawback is "based on the 8-digit [HTSUS] subheading number," "the article description for the 8-digit [HTSUS] subheading number," and the "article description for that 10-digit [HTSUS] [SRN]" do not implicate unattached HTSUS language. Id. at 11. Rather, Defendant argues substituted unused merchandise drawback eligibility under 19 U.S.C. §§ 1313(j)(2) and (5) is determined by looking at the text

directly aligned with the 8- and 10-digit numerical level because "the term 'for' refers

to the descriptive text that aligns with 'the 8-digit HTSUS subheading number' and

'10-digit [HTSUS] [SRN].'"  Id.  Under Defendant's reading of 19 U.S.C. § 1313(j)(5),

SRN 8803.30.0030 begins with the word "other" in its article description and

therefore is ineligible for substituted unused merchandise drawback.  Id. at 4–5.

Unused merchandise drawback eligibility is governed by 19 U.S.C. § 1313(j),

allowing for the refund of duties paid upon importation under certain conditions if

merchandise is unused and subsequently exported or destroyed.[9]  19 U.S.C. § 1313(j).

Subsection 1313(j)(2) allows for refund of duties when exported (or destroyed)

merchandise classified under the same 8-digit subheading as the imported

merchandise is exported or destroyed.[10]  19 U.S.C. § 1313(j)(2).

---

[9] The unused merchandise drawback portion of 19 U.S.C. § 1313(j) reads in relevant part:

> (1) if imported merchandise, on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation--
> (A) is, before the close of the 5-year period beginning on the date of importation and before the drawback claim is filed--
> (i) exported, or
> (ii) destroyed under customs supervision; and
> (B) is not used within the United States before such exportation or destruction;
> then upon such exportation or destruction an amount calculated pursuant to regulations prescribed by the Secretary of the Treasury under subsection (l) shall be refunded as drawback.  The exporter (or destroyer) has the right to claim drawback under this paragraph, but may endorse such right to the importer or any intermediate party.

19 U.S.C. § 1313(j)(1).

[10] Section § 1313(j)(2) states:

(footnote continued)

Congress limited the availability of substituted unused merchandise drawback:

> (5)(A) For purposes of paragraph (2) and except as provided in subparagraph (B), merchandise may not be substituted for imported merchandise for drawback purposes based on the 8-digit [HTSUS] subheading number if the article description for the 8-digit [HTSUS] subheading number under which the imported merchandise is classified begins with the term "other".
> (B) In cases described in subparagraph (A), merchandise may be substituted for imported merchandise for drawback purposes if--
> (i) the other merchandise and such imported merchandise are classifiable under the same 10-digit [HTSUS] [SRN] and
> (ii) the article description for that 10-digit [HTSUS] [SRN] does not begin with the term "other".

19 U.S.C. § 1313(j)(5).  Thus, if the "article description for the 8-digit [HTSUS] subheading number under which the imported merchandise is classified begins with

---

> Subject to paragraphs (4), (5), and (6), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that--
> (A) is classifiable under the same 8-digit [HTSUS] subheading number as such imported merchandise;
> (B) is, before the close of the 5-year period beginning on the date of importation of the imported merchandise and before the drawback claim is filed, either exported or destroyed under customs supervision; and
> (C) before such exportation or destruction--
>     (i) is not used within the United States, and
>     (ii) is in the possession of . . . the party claiming drawback under this paragraph, if that party--
>         (I) is the importer of the imported merchandise, or
>         (II) received the imported merchandise, other merchandise classifiable under the same 8-digit [HTSUS] subheading number as such imported merchandise . . .
> then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise . . . shall be refunded as drawback.

the term 'other'", substituted unused merchandise drawback is inapplicable unless the imported merchandise and the exported or destroyed merchandise are classified in the same 10-digit HTSUS SRN, and the article description for that 10-digit HTSUS SRN does not begin with the term "other."  <u>Id.</u>

The plain meaning of the phrase "article description for that 10-digit [HTSUS] [SRN]" refers to the words describing the article adjacent to the 10-digit number. 19 U.S.C. § 1313(j)(5)(B)(ii).  The words "for that 10-digit SRN" necessarily limit the description to the words adjacent to the numbers.[11]  The preposition "for" operates as a functional word to indicate purpose.  <u>For</u>, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/for (last visited Jan. 8, 2024) ("1 a : used as a function word to indicate purpose").  The pronoun "that" refers to the kind or thing specified as follows in the preceding clause.  <u>That</u>, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/that (last visited Jan. 8, 2024) ("1 c : the kind or thing specified as follows | the purest water is *that* produced by distillation").  The pronoun "that" is singular, meaning it refers to only one item.  <u>See id.</u> (identifying the plural of "that" is "those").  Unattached unifying language in the HTSUS, as prefatory language, necessarily refers to more than one 10-digit SRN

---

[11] When referring to the article description at the 8-digit level, Congress spoke of the article description for "the" 8-digit HTSUS subheading. 19 U.S.C. § 1313(j)(5)(A). However, when referring to the article description at the 10-digit level, Congress referenced the article description for "that" 10-digit HTSUS number.  19 U.S.C. § 1313(j)(5)(B)(ii).

where there are multiple preceding 10-digit SRNs.  See, e.g., HTSUS 4418.50.00.[12]

Thus, the plain language of the statute indicates the term "for that article

description" can refer only to the description attached to one "10-digit [HTSUS]

[SRN]."  19 U.S.C. § 1313(j)(5)(B)(ii).  Accordingly, the HTSUS article descriptions

attached to the 10-digit SRN, meaning the descriptions on the same line and level of

the statutory suffices, control substituted unused merchandise drawback eligibility

under 19 U.S.C. § 1313(j)(5)(B).  So long as the article description adjacent to the 10-

digit SRN does not begin with the term "other," drawback for substituted unused

merchandise is available.

      The plain reading of Section 1313(j)(5) is consistent with its legislative history.

In February of 2016, Congress enacted the Trade Facilitation and Trade Enforcement

Act of 2015 ("TFTEA").  See P.L. 114-125.  In drafting and implementing the TFTEA,

Congress intended to simplify laborious and time-consuming drawback procedures

under the "commercially interchangeable" standard that previously governed

---

[12] For example, the article description for the 8-digit HTSUS subheading 4418.50.00 is "Shingles and shakes."  In between the 8- and 10-digit levels, there is the indented unifying heading "Shingles:"—unattached from any 8-digit subheading number and 10-digit SRN.  Directly underneath this unifying heading, there are two further indented subheadings at the 10-digit level, which read "Of western red cedar" and "Other."  Therefore, the two 10-digit SRNs and their article descriptions under the 8-digit HTSUS subheading 4418.50.00 "Shingles and shakes" are: (1) 4418.50.0010 "Of western red cedar;" and (2) "Other."  The two 10-digit SRNs are unified under the prefatory, unattached subheading "Shingles" to distinguish between shingles that might fall into the HTSUS heading and shakes that might fall into the HTSUS heading.

drawback eligibility by tying eligibility to HTSUS numbers.[13]   See Modernized

Drawback, 83 Fed. Reg. 37886-01, 37889 (Aug. 2, 2018);[14] S. Rep. No. 114-45 at 53

(2015).[15]  Consequently, eligibility could be assessed through an automated process

---

[13]   The Court of Appeals for the Federal Circuit held that the commercially interchangeable standard, which CBP used to determine drawback eligibility under 19 U.S.C. § 1313(j) prior to enactment of the TFTEA, was "determined objectively from the perspective of a hypothetical reasonable competitor; if a reasonable competitor would accept either the imported or the exported good for its primary commercial purpose, then the goods are 'commercially interchangeable' according to 19 U.S.C. § 1313(j)(2)."  See Texport Oil Co. v. United States, 185 F.3d 1291, 1295 (Fed. Cir. 1999); see also 19 C.F.R. § 191.2.  Thus, prior drawback determinations focused on a case-by-case examination of the imported merchandise that was not susceptible to automation.  See S. Rep. 114-45 at 53 (2015) ("Drawback is currently a paper-based labor intensive process for both the government and private sector. [The TFTEA] reflects the view . . . that drawback needs to be simplified and automated. . . .").

[14]   The proposed rules by the Department of Homeland Security, CBP, and the Department of the Treasury for 19 C.F.R. part 113, 181, 190, and 191 reveal intentions to streamline substituted unused merchandise drawback eligibility determinations:

> [TFTEA § 906(b)] provides a new standard for determining which merchandise may be substituted for imported merchandise as the basis for a substitution claim. . . . This standard replaces the "same kind and quality" and "commercially interchangeable" standards that were applied, respectively, to substitution manufacturing drawback claims and substitution unused merchandise drawback claims. . . . The new standard will reduce much of the [] burdens by generally eliminating uncertainty as to whether the standard for substitution has been met.

Modernized Drawback, 83 Fed. Reg. 37886-01, 37889 (Aug. 2, 2018).

[15]  The Senate Report for the TFTEA identifies Congress' desire to simplify drawback determinations through an automation by ACE:

> Drawback is currently a paper-based labor intensive process . . . [t]his section reflects the view of this Committee that drawback needs to be simplified and automated by (1) allowing drawback claimants to generally use the 8-digit [HTSUS]number in lieu of obtaining a ruling prior to submitting a drawback claim with CBP; (2) allowing claims to be submitted in the Automated Commercial Environment.

S. Rep. No. 114-45 at 53 (2015).

Court No. 20-00094                                                          Page 16

in which HTSUS numbers are compared at the 10-digit level.[16]  Indeed, any given

dutiable good has exactly one specific corresponding 10-digit HTSUS number.  See

HTSUS User Guide at 14 ("The [HTSUS] is designed so that each article falls into

only one category"); Harmonized System (HS) Codes, Int'l Trade Admin.,

https://www.trade.gov/harmonized-system-hs-codes (last visited Jan. 9, 2024) ("The

United States uses a 10-digit code to classify products . . . There is a [10-digit code]

for every physical product, from paper clips to airplanes").  Using HTSUS numbers

ensures merchandise is similar enough to warrant substituted unused merchandise

drawback except when the description of the HTSUS number begins with "other."

"Other" signifies a basket category which may include dissimilar items.  See R.T.

Foods, Inc. v. United States, 757 F.3d 1349, 1354 (Fed. Cir. 2014) ("A basket provision

is not a specific provision . . . classification of imported merchandise in a basket

provision is only appropriate if there is no tariff category that covers the merchandise

more specifically"); EM Indus., Inc., 999 F. Supp. at 1480 ; Nat'l Presto Indus., Inc. v.

United States, 783 F. Supp. 2d 1287, 1292 (Ct. Int'l Trade 2011) (explaining that

merchandise falls within a basket provision if it is "not specific or included elsewhere

[in the HTSUS]"); CBP Tariff Classification Compliance Publication at 11.  Excluding

article descriptions that begin with the word "other" from substituted unused

---

[16]  As of February 24, 2019, all drawback claimants must file drawback claims
through ACE.  See Drawback in ACE, U.S. Customs and Border Protection (Oct. 6,
2022), https://www.cbp.gov/trade/automated/news/drawback (last visited Jan. 12,
2023); 19 C.F.R. § 190.32.  Thus, the ACE system is intended to implement the
purposes of the TFTEA to automate drawback eligibility under 19 U.S.C. § 1313(j)
based on the 8-digit subheading numbers and 10-digit SRNs of the HTSUS.

merchandise drawback eliminates the need for CBP to investigate on a case-by-case basis whether merchandise is sufficiently similar to be eligible for drawback.  Thus, a plain reading of the statute which disallows merchandise that may contain dissimilar items is consistent with the legislative history of the TFTEA.  Here, in light of the plain reading of the statute and congressional intent, Defendant's interpretation must prevail.

Moreover, Spirit's reading would render illogical results.  For example, consider the 4-digit HTSUS heading 8504:

| Heading/ Subheading | Stat. Suffix | Article Description |
|---|---|---|
| 8504 (con.) | | Electrical transformers, static converters (for example, rectifiers) and inductors; parts thereof: (con.) |
| 8504.90 | | Parts: |
| | | *** |
| | | Other: |
| | | *** |
| 8504.90.96 | | Other:........................................................... |
| | | Ferrites: |
| | 10 | For transformers............................................. |
| | 30 | Other........................................................ |
| | | Other Parts: |
| | | Of transformers: |
| | 34 | Laminations for incorporation into stacked cores.......................................... |
| | 38 | Stacked cores for incorporation into transformers............................................ |
| | 42 | Wound cores for incorporation into transformers............................................ |
| | 46 | Other........................................................ |
| | 50 | Of static converters..................................... |
| | 90 | Other........................................................ |

Under Spirit's reading, 8-digit subheading numbers 8504.90.96 that end at the 10-digit level with the statutory suffices -34, -38, -42, -46, -50 would all be ineligible for substituted unused merchandise drawback due to the superior, unattached heading

"Other Parts" directly underneath SRN 8504.90.9630.  The article description for SRN 8504.90.9634 would read "Other Parts: Of transformers: Laminations for incorporation into stacked cores," which would be precluded for substituted unused merchandise drawback because its article description begins with the word "other" in violation of 19 U.S.C. § 1313(j)(5)(B)(ii).  The article description for SRN 8504.90.9638 would be "Other Parts: Of transformers: Stacked cores for incorporation into transformers," and would similarly be ineligible for substituted unused merchandise drawback due to the article description beginning with the word "other."  But such a reading would appear to violate the 484(f) Committee's decision to begin the article descriptions at the 10-digit SRN level with specific and detailed descriptive language that explicitly do not begin with the word "other."[17]   See 19 U.S.C. § 1484(f) (establishing the committee to provide for the "enumeration of articles in such detail as in their judgment may be necessary"); Preface to the HTSUS at 2.

Plaintiff makes a number of arguments to refute this plain meaning interpretation that fail to persuade.  Spirit contends that canons of statutory construction support its determination that SRN 8803.30.0030 begins with the words "For use in civil aircraft[.]" Pl. Mot. at 11–12.  As a preliminary matter, use of canons of statutory construction are subordinate to the plain meaning and text of an authority.  See Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253–54 (1992)

---

[17] The interagency committee formulates nonlegal statistical elements of the HTSUS at the 10-digit level as authorized under 19 U.S.C. § 1484(f).  See 19 U.S.C. § 1484(f); Preface to the HTSUS at 2.

("When words of a statute are unambiguous, then, [the plain text of the statute] canon is also the last: 'judicial inquiry is complete'").  Because the Court has discerned its interpretation from the plain text of the drawback statute, Spirit's use of canons of constructions is inapposite.

Nonetheless, Spirit's resort to these canons would be of no avail.  First, Spirit invokes in para materia—meaning statutes dealing with related subjects must be read together—to argue that Section 1313(j) must be read in conjunction with the HTSUS because they relate to the same subject matter.  Pl. Mot. at 12–13.  But the plain meaning of 1313(j)(5) does not violate this canon.  The two statutes at issue are the HTSUS—19 U.S.C. § 1202—and the substituted unused merchandise drawback statute—19 U.S.C. § 1313(j)(2) and (5).  Within the HTSUS are the General Rules of Interpretation ("GRIs"), which provide for a set of numerical principles that govern the reading of the HTSUS.  See Victoria's Secret Direct, LLC v. United States, 769 F.3d 1102, 1106 (Fed. Cir. 2014) (explaining and applying the GRIs); see also CBP Tariff Classification Compliance Publication at 13–24, 26.  CBP classifies imports to determine the rate of duty applicable to the merchandise.  See Preface to the HTSUS at 2 ("The HTS contains the internationally agreed structured product nomenclature commonly known as the Harmonized System (HS), whose numbered provisions appear in the schedule as 4-digit headings and subordinate 6-digit subheadings in chapters 1 through 97.  The narrowest legal categories appear as 8-digit U.S. subheadings together with their rates of duty"); CBP Tariff Classification Compliance Publication at 1.  By contrast, the purpose of 19 U.S.C. § 1313(j) implements Congress'

intent to identify substituted unused goods that are sufficiently similar to the levied merchandise so that they are eligible for drawback.  See 19 U.S.C. § 1313(j)(5)(B) ("merchandise may be substituted for imported merchandise drawback purposes if— (i) the other merchandise and such imported merchandise are classifiable under the same 10-digit [SRN]; and (ii) the article description for that 10-digit [SRN] does not begin with the term 'other'").  The GRIs are just that: interpretive rules to be applied to classify goods.  They do not shed light on the meaning of 19 U.S.C. § 1313(j).

Next, Spirit invokes the scope-of-the-subparts canon, which generally requires that "[m]aterial within an indented subpart relates only to that subpart; material contained in unindented text relates to all the following or preceding indented subparts."  Pl. Mot. at 25–27; see Dong-A Steel Co. v. United States, 475 F.Supp.3d 1317, 1338 n.15 (Ct. Int'l Trade 2020) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts xii (2012)).  Spirit argues that this canon requires the article description for SRN 8803.30.0030 to include superior indented but unattached subheadings, thus beginning SRN 8803.30.0030 with "For use in civil aircraft."  Pl. Mot. at 26.  Spirit's use of the canon is inapposite because it is inapplicable to the context of substituted unused merchandise drawback eligibility. The text of Section 1313(j)(5)(B)(ii) contradicts Spirit's position, stating substituted unused merchandise may be eligible for drawback if "the article description for that 10-digit [SRN] does not begin with the term 'other.'" 19 U.S.C. § 1313(j)(5)(B)(ii).

Spirit next turns to the punctuation canon, which provides that "punctuation is a permissible indicator of meaning."  Pl. Mot. at 26; see Antonin Scalia & Bryan A.

Garner, Reading Law: The Interpretation of Legal Texts 161 (2012; U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 454 (1993) ("the meaning of a statute will typically heed the commands of its punctuation"). Spirit claims the canon supports its reading because the colon after "For use in civil aircraft" indicates a continuation of the preceding clause. Pl. Mot. at 26–29. Spirit's interpretation is correct that the colon indicates a continuation of the preceding clause, but it does not mean that the unifying text serves as the language that begins the article description for the preceding SRNs. As explained above, the text instructs which preceding 10-digit SRNs fall within that prefatory subheading. Here, "For use in civil aircraft:" guides correct SRN placement between civil aircraft parts that are used by the Department of Defense or Coast Guard—thus falling with SRN 8803.30.0015—and those used by all others, including Spirit—thus falling within SRN 8803.30.0030. Accordingly, the canon does not support Spirit's interpretation.

Finally, Spirit alleges Defendant's interpretation violates the canon against surplusage, which requires that all provisions in a statute be given effect so that no provision has no consequence. See Pl. Mot. at 33–34; Nielsen v. Preap, 139 S. Ct. 954, 969 (2019). Spirit argues that reading SRN 8803.30.0030 to begin with the term "other" rather than "For use in civil aircraft:" would render the latter term superfluous. Pl. Mot. at 33. However, as described above, "For use in civil aircraft:" is a unifying, prefatory clause that draws distinction between the 10-digit SRNs that fall underneath the 8-digit HTSUS subheading 8803.30.00. The unifying clause instructs where a good falls within the 8-digit subheading number 8803.30.00

relating to "Other parts of airplanes or helicopters" depending upon its use: either (1) "For use in civil aircraft," or (2) "Other." A good used in civil aircraft under 8803.30.00 must then further be distinguished by whether it is used by the Department of Defense or the United States Coast Guard under SRN 8803.30.0015 or if it is used by anyone else under SRN 8803.30.0030. Thus, the prefatory language directs classification where the HTSUS requires categorical breakdown in order to classify merchandise within the system. That it is not included in a discrete SRN's article description does not mean the language is ignored.

Spirit also suggests that Defendant's reading conflicts with the 1997 and 1998 changes to the HTSUS and prior agency decisions. Pl. Mot. at 37–38. Spirit argues that changes in 1997 and 1998 narrowed the scope of goods covered by SRNs under the 8-digit subheading 8803.30.00, and that Defendant's reading impermissibly broadens this narrowed scope. Id. at 39. Furthermore, Spirit asserts that Defendant's interpretation conflicts with past rulings by CBP, including various ruling letters. Id. at 40–41. Spirit's arguments are inapposite. Changes to the HTSUS that occurred over two decades before the 2020 iteration of the schedule governing Spirit's substituted unused merchandise drawback claim are irrelevant. The HTSUS is updated numerous times each year, with eleven revisions in 2023 alone. See [HTSUS] Download Archive, Int'l Trade Comm'n, https://hts.usitc.gov/download/archive (last visited Jan. 9, 2024). Spirit's reference to the previous versions of the HTSUS and statistical number 8803.30.00 are not helpful because the 8-digit subheadings and 10-digit SRNs involved separate and distinct

Court No. 20-00094                                                                    Page 23

classifications that are not at issue.  Indeed, the 1997 version of the HTSUS that

Spirit cites did not make a distinction between parts used by the Department of

Defense or United States Coast Guard and all other users, and therefore was a

distinct subheading with its own 10-digit SRNs and tariff rates.  Pl. Mot. at 38–39.

Moreover, Spirit's reliance on past classification rulings by CBP continues to conflate

HTSUS classification considerations with drawback determinations under 19 U.S.C.

§ 1313(j).  Accordingly, Spirit's arguments are unpersuasive, and its motion for

summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Defendant's interpretation of 19 U.S.C. § 1313(j) is

correct, and it properly rejected Spirit's substituted unused merchandise drawback

Claim No. AA6 03265726.  Therefore, Defendant's cross-motion for summary

judgment is granted, and Spirit's motion for summary judgment is denied.  Judgment

will enter accordingly.


                                                           /s/ Claire R. Kelly
                                                           Claire R. Kelly, Judge

Dated:         January 30, 2024
               New York, New York